Stephen G. Larson (SBN 145225)
slarson@larsonllp.com
Jerry A. Behnke (SBN 180462)
jbehnke@larsonllp.com
Daniel R. Lahana (SBN 305664)
dlahana@larsonllp.com
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, CA 90071
Tel.:   (213) 436-4888
Fax:   (213) 623-2000

Attorneys for Plaintiff
JEFF T. GRANGE, M.D.

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| JEFF T. GRANGE, M.D. | CASE NO.  5:22-cv-00340 |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| vs. | |
| LORI POZUELOS, in her individual and official capacity; JASON WESSELY, in his individual and official capacity; CALIFORNIA DEPARTMENT OF INSURANCE; and DOES 1-10, individuals. | (1) CONSPIRACY (42 U.S.C. § 1983); (2) UNREASONABLE SEIZURE OF PERSON (42 U.S.C. § 1983); (3) EXCESSIVE BAIL(42 U.S.C. § 1983); (4) UNREASONABLE SEIZURE OF PROPERTY (42 U.S.C. § 1983); (5) DELIBERATE FABRICATION OF EVIDENCE AND WITHHOLDING OF MATERIAL INFORMATION (42 U.S.C. § 1983); (6) MALICIOUS PROSECUTION (42 U.S.C. § 1983); (7) RETALIATION (42 U.S.C. § 1983); (8) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; (9) MALICIOUS PROSECUTION |
| Defendants. | |
| | DEMAND FOR JURY TRIAL |

LARSON
LOS ANGELES

COMPLAINT

# I.   <u>INTRODUCTION</u>

1.     Plaintiff Jeff T. Grange, M.D. ("Plaintiff" or "Dr. Grange"), brings this action seeking compensatory and punitive damages against Defendants Lori Pozuelos, in her individual capacity, Jason Wessely, in his individual capacity, and DOES 1-10 for violations of Dr. Grange's civil rights under the United States Constitution and federal law.  Dr. Grange also seeks compensatory and punitive damages from the Defendants Lori Pozuelos, in her individual and official capacity, Jason Wessely, in his individual and official capacity, DOES 1-10, and the California Department of Insurance ("CDI") for tort violations under California state law.

2.     Dr. Grange's claims are based on an unlawful and retaliatory investigation of Dr. Grange, an unlawful and warrantless arrest of Dr. Grange, the wrongful detention of Dr. Grange without bail, the unreasonable seizure of Dr. Grange's property, and the wrongful and malicious criminal prosecution of Dr. Grange all caused or conducted by Defendants without probable cause and with the intent to harass and intimidate Dr. Grange and to interfere with and retaliate against Dr. Grange's exercise of his constitutional rights, including his right to access and defend himself in court.

3.     At the time of the unlawful arrest and the filing of the baseless criminal charges against Dr. Grange, Dr. Grange was engaged in a civil jury trial against the CDI based on the CDI's allegations that Dr. Grange had committed insurance fraud.  Testimony from the state's own witnesses in the civil trial directly refuted CDI's key claims.  Faced with the inevitability that CDI would lose the civil trial, Defendants conspired and agreed to deprive Dr. Grange of his constitutional rights to access the courts and continue defending himself in the civil trial, and to retaliate against Dr. Grange for his exercise of constitutional rights, by, among other things, arresting him in the middle of the civil trial and, based on a retaliatory, reckless, and false investigation, causing the San Bernardino County District Attorney's Office to

file a baseless criminal complaint against Dr. Grange that was not supported by probable cause and was predicated on false and misleading information. In fact, the criminal complaint included the very same allegations that were at issue in the ongoing civil trial that was only days away from concluding and that was, at that time, known by CDI to be itself predicated on false and misleading allegations.

4.     To prevent Dr. Grange from preparing for and appearing at trial to exercise his constitutional right to testify on his own behalf, which testimony would further expose the false and misleading allegations against Dr. Grange, Defendant Pozuelos unlawfully and intentionally caused Dr. Grange to be held in jail for five days without the ability to post bail and caused Dr. Grange's assets, including bank accounts and real property, to be frozen.

5.     Attorneys representing the State of California in the civil trial, including CDI attorneys, then attempted to extract a settlement from Dr. Grange and offered to purportedly get the newly filed and baseless criminal complaint "dropped" if Dr. Grange would immediately agree to their settlement terms. The CDI further attempted to obtain a mistrial and stay of the civil matter based on the newly-filed and baseless criminal complaint. Dr. Grange refused the State's settlement demands and the court declined to declare a mistrial. Thus, the jury trial resumed.

6.     Notwithstanding the Defendants' callous, despicable, and unlawful attempts to derail the civil jury trial, the trial proceeded to its conclusion and the jury ultimately returned a complete defense verdict in Dr. Grange's favor. The criminal case was subsequently dismissed on motion by the San Bernardino County District Attorney's Office based on the lack of sufficient evidence to sustain the charges against Dr. Grange.

7.     The complete defense verdict in the civil trial and dismissal of the criminal complaint, coupled with other information learned by CDI prior to and during the civil trial, conclusively establishes that the CDI's criminal investigation

of Dr. Grange was entirely pretextual, that the allegations against Dr. Grange were knowingly false, misleading, and not credible, and that, furthermore, the Defendants did not have probable cause to arrest Dr. Grange.  In conducting the reckless and unfounded investigation in support of the criminal charges, in arresting Dr. Grange without an arrest warrant, in seeking and obtaining a knowingly baseless criminal complaint against Dr. Grange, and in obtaining his detention without bail, the Defendants acted for the sole purpose of retaliating against Dr. Grange and unlawfully and improperly interfering with Dr. Grange's exercise of his constitutional right to access the courts and defend himself in the civil trial.

8.     As a result of the Defendants' illegal conduct, Dr. Grange was forced to expend enormous resources to defend against the unlawful arrest and the baseless criminal charges as well as the attendant consequences, his reputation has been severely tarnished, he lost multiple contracts and other business opportunities, and he has suffered extreme emotional distress and related physical health consequences.

9.     Defendants' wanton disregard of Dr. Grange's constitutional rights violates the United States Constitution, 42 U.S.C. § 1983, and California law.  As a direct and proximate result of Defendants' actions, Dr. Grange has suffered and will continue to suffer damages.  For these reasons, and as set forth below, Dr. Grange is entitled to compensatory damages, punitive damages, attorneys' fees and costs, pre-judgment interest, and all other relief provided by law.

## II.    <u>JURISDICTION AND VENUE</u>

10.     This case arises under 42 U.S.C. § 1983.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367(a).

11.     Pursuant to California Government Code §§ 810 et seq., Dr. Grange has filed notice with the State of California stating his intent to bring claims under the California Tort Claims Act.  Dr. Grange timely provided notice of his state law

claims with the State of California on January 13, 2022. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear the state law claims.

### III.    THE PARTIES

12.    Plaintiff, Jeff T. Grange, is a medical doctor licensed to practice medicine in the state of California since 1995. Dr. Grange is certified by the American Board of Emergency Medicine in Emergency Medical Services and Emergency Medicine. Dr. Grange resides in Riverside County, California.

13.    At all relevant times, Defendant Lori Pozuelos was an investigator employed by CDI and assigned to the CDI Fraud Division in Rancho Cucamonga, California. Defendant Pozuelos is sued in her individual and official capacity.

14.    At all relevant times, Defendant Wessely was an investigator employed by CDI and assigned to the CDI Fraud Division in Rancho Cucamonga, California. Defendant Wessely is identified as "J. Wessely" in various reports. On information and belief, Defendant Wessely is Jason Wessely. Defendant Wessely is sued in his individual and official capacity.

15.    Defendant California Department of Insurance is a duly established state administrative agency exercising administrative and executive powers in the State of California.

16.    Dr. Grange is ignorant of the true names and capacities of Defendants sued herein as Does 1-10 ("DOES 1-10"), inclusive, and therefore sues these Defendants by fictitious names. Dr. Grange is informed and believes, and therefore alleges, that DOES 1 through 10 are in some manner responsible for the acts and occurrences set forth herein and are legally liable to Dr. Grange. Dr. Grange will seek leave to amend this Complaint to allege the true names and capacities of these fictitiously named Defendants, together with the appropriate allegations, when ascertained.

17.    On information and belief, at all relevant times, each Defendant was the agent, servant, and/or employee of each and every other Defendant, and the acts of

1   such Defendants were within the course and scope of said agency and/or

2   employment.  Furthermore, on information and belief, each Defendant conspired

3   and acted jointly with each and every other Defendant.

4       18.    On information and belief, at all relevant times, each Defendant was

5   acting under color of law or conspired with others acting under color of law.

6                        **IV.    FACTUAL ALLEGATIONS**

7       19.    CDI's investigation of Dr. Grange related to Dr. Grange's work at

8   Symons Emergency Specialties, Inc., dba Symons Ambulance ("Symons").  Symons

9   was incorporated in California in 1995.  Symons is engaged in the business of

10  providing emergency medical services, interfacility and critical care transport, and

11  special event services, including medical care at mass gathering events.  Symons

12  operates throughout Southern California and in Bishop, California.  Symons'

13  corporate office is located in San Bernardino County, California.  Since

14  approximately 2010, Dr. Grange has been one of several shareholders and a member

15  of the Board of Directors of Symons.  Between approximately 2012 and 2019, Dr.

16  Grange also served as the President of Symons.

17  **A.    Dispute Between Symons and SIMNSA Health Plan Related to**

18          **Billing for Emergency Medical Care and Air Ambulance Service**

19          **for Patient J.M.**

20      20.    Between June 5 and 8, 2014, as it had done for many years, Symons

21  provided medical staff and equipment to be on standby during an off-road race

22  known as the "Baja 500."  The Baja 500 took place in the Baja California, Mexico

23  desert.  The race promotors provided a helicopter and pilot for Symons to use for air

24  rescue operations during the race.  Symons equipped the helicopter with medical

25  equipment and medical staff.

26      21.    On June 7, 2014, Dr. Grange and a nurse from Symons (collectively,

27  the "Symons personnel") responded to a request for emergency medical assistance

28  after a driver, J.M., had gone off the race course, down an embankment, and

crashed.  The Symons personnel and their emergency medical equipment traveled by helicopter to the crash site in the desert of Baja California, Mexico.  There was no place to land near the crash site other than on the racecourse.  The helicopter landed on the racecourse, the Symons personnel got out, and the helicopter lifted off again to avoid being struck by race vehicles.

22.    Dr. Grange climbed down the embankment to the crash site.  J.M. was bleeding from his airway and had severe lower extremity pain.  Dr. Grange placed J.M. on a backboard and stabilized him for transport.  With the assistance of bystanders, the Symons personnel then lifted J.M. up the embankment and loaded him onto the helicopter.

23.    The Symons personnel treated J.M. on the helicopter during the flight to the airport at Ensenada, Mexico.  At the Ensenada airport, the Symons personnel transferred J.M. to another ambulance, operated by a different company, that then transported J.M. to San Diego, California.

24.    On or about July 9, 2014, an ambulance billing specialist prepared a Health Insurance Claim form that was submitted to J.M.'s health insurance carrier, Sistemas Medicos Nacionales S.A. de C.V. dba SIMNSA ("SIMNSA") for the services Symons provided to J.M. in Baja California, Mexico, on June 7, 2014. Among other things, the claim sought payment for the air ambulance service Symons provided to J.M.

25.    Between about August 2014 and March 2015, Symons or its billers corresponded with SIMNSA about the claim.  Symons provided SIMNSA with a copy of the Critical Care Transport, Patient Care Record ("PCR") which described the treatment and transport of J.M.  Symons also submitted a corrected Health Insurance Claim form and a Provider Dispute Resolution Form to SIMNSA showing that the end location of the helicopter transport was the Ensenada Airport.  None of the documents submitted to SIMNSA by or on behalf of Symons contained any

1  representation as to ownership of the helicopter used during the air ambulance

2  transport of J.M.

3      26.    By letter dated March 23, 2015, SIMNSA notified Symons that

4  coverage for the care rendered to J.M. was denied because, "Member left Plan's

5  Service Area in Mexico to pursue care in the United States, SIMNSA is an HMO in

6  Mexico."

7      27.    On May 4, 2015, Symons filed a civil complaint in the San Diego

8  County Superior Court against SIMNSA for claims arising from SIMNSA's denial

9  of coverage for the emergency services Symons provided to J.M.

10      28.    On August 22, 2016, pursuant to a settlement agreement, Symons

11  dismissed its complaint against SIMNSA with prejudice.  SIMNSA never filed a

12  cross-complaint in that action.

13      **B.**    **The *Qui Tam* Matter**

14      29.    On May 18, 2016, while the *Symons v. SIMNSA* lawsuit was pending in

15  San Diego County and unbeknownst to Dr. Grange or Symons, SIMNSA, as a

16  Relator and on behalf of the State of California, filed a civil *qui tam* complaint

17  against Symons and Dr. Grange in San Bernardino County Superior Court, Case No.

18  CIVDS1607744 ("*qui tam* complaint" or "*qui tam* matter").  The *qui tam* complaint

19  was sealed.

20      30.    The *qui tam* complaint alleged that bills Symons had submitted to

21  insurance companies for air ambulance services were fraudulent because Symons

22  did not own or lease the helicopters used in the transports.

23      31.    On information and belief, on or about May 18, 2016, the *qui tam*

24  complaint was referred to the CDI.

25      **C.**    **CDI's Investigation of Dr. Grange**

26      32.    By July 2016, Defendants CDI and Pozuelos had initiated an

27  investigation of Dr. Grange related to allegations that bills for air and ground

28  ambulance services submitted to insurance companies by or on behalf of Symons

were fraudulent.  The allegations related to air ambulance bills were the same as the allegations underlying the civil *qui tam* complaint.  The CDI alleged that ground ambulance bills were fraudulent because Symons' medical personnel treated patients on site and did not transport the patients.

33.    During the CDI's investigation, Defendant Pozuelos received materially exculpatory evidence that, on information and belief, she later intentionally concealed from the court, including but not limited to the following:

a.    On September 13, 2017, Defendant Pozuelos interviewed a representative from a third-party claims administrator that processes ambulance claims for Kaiser Permanente ("Kaiser").  Kaiser was an insurance company to which Symons had submitted claims for air and ground ambulance services that CDI alleged were fraudulent.  The claims administrator's representative explained to Defendant Pozuelos that, contrary to the gravamen of the CDI's allegations, Kaiser does routinely pay ground ambulance claims where the patient was not transported, which is called a "treat no transport" situation.  The representative also explained to Defendant Pozuelos that the claim form submitted by Symons for one of the allegedly fraudulent ground transport claims indicated that the patient "was not transported anywhere."  In other words, Symons and Dr. Grange did not deceive, nor attempt to deceive, Kaiser.

b.    On September 20, 2017, a representative from Kaiser told Defendant Pozuelos that Kaiser will pay ground ambulance claims when the patient is not transported.  In those cases, "The bill is submitted as a basic response code with the lowest level for transport, such as a BLS (basic life support) transport." Again, this evidence was contrary to the gravamen of the CDI's allegation that Symons' ground ambulance claims were fraudulent.

c.    On August 28, 2019, Defendant Pozuelos interviewed the owner of a helicopter company that had provided helicopters for race events in Baja, California, who explained to Defendant Pozuelos that Symons had paid his company

1   for the flight time for two emergency rescues involving his helicopters.  This

2   evidence was contrary to the gravamen of the CDI's allegations that Symons' air

3   ambulance claims were fraudulent.

4           d.      On January 16, 2020, Defendant Pozuelos interviewed the

5   former Vice President of Operations for Score International ("Score"), which

6   organized and promoted the Baja 500 races.  He told Defendant Pozuelos the

7   following:  (1) He worked with Dr. Grange between about 2002 and November

8   2012; (2) Dr. Grange volunteered as the medical director for Score, however, Dr.

9   Grange was not an employee of Score; (3) During race events, Dr. Grange came up

10  with the medical plan including ground units, medical personnel, and helicopter

11  rescues; (4) Dr. Grange provided medical equipment and medical personnel to be

12  used in helicopters that Score had leased from a private helicopter company for the

13  air rescues; (5) Dr. Grange would set up the helicopters the way he felt was

14  necessary; (6) Dr. Grange was responsible for stabilizing and treating injured racers

15  before and during the helicopter transports; (7) Dr. Grange was not compensated by

16  Score for his services; (8) He gave permission to Dr. Grange to bill insurance

17  companies for his services, including the helicopter transports; and (9) He believed

18  Dr. Grange was entitled to bill for his services.  This evidence was contrary to the

19  gravamen of the CDI's allegations that Symons' air ambulance claims were

20  fraudulent and showed that Symons did provide the air ambulance services even

21  though Symons did not own or lease the helicopters involved.

22          34.     At some point, on or before January 2020, it became clear that CDI's

23  allegations against Dr. Grange were baseless and that Dr. Grange's exercise of his

24  constitutional right to access the courts and defend himself in the civil *qui tam*

25  matter was a substantial or motivating factor in Defendant Pozuelos and CDI's

26  investigation of Dr. Grange.

27  ///

28  ///

**D.   CDI Intervenes in the *Qui Tam* Matter**

35.   On July 18, 2017, the California Insurance Commissioner for CDI on behalf of the State of California intervened in the *qui tam* matter and filed a complaint in intervention against Dr. Grange and Symons.  The complaint in intervention was based on the same allegations as the original *qui tam* complaint, namely, that claims submitted to insurance companies on behalf of Symons for air ambulance services were fraudulent because Symons did not own or lease the helicopter used in the transports.  After July 18, 2017, the State was jointly represented in the *qui tam* matter by attorneys for CDI and SIMNSA.

**E.   The *Qui Tam* Trial Reveals Defendants' Motive For Retaliating Against Dr. Grange**

36.   On January 28, 2020, the State deposed the defense's expert witness in the field of ambulance billing.  The deposition was recorded by video.  Among other things, the expert testified that, contrary to one of the critical claims upon which the complaint was predicated, there is no requirement of ownership or leasing of an aircraft as a precondition of billing an insurance company for air ambulance services.  The witness further stated that he was personally aware of situations where providers that billed for ambulance services did not own or lease the vehicle used for the transports.  On information and belief, a transcript of the deposition and copy of the video were provided to the CDI.

37.   On or about February 19, 2020, jury trial in the *qui tam* matter began in San Bernardino County Superior Court.  Dr. Grange was represented by counsel and also personally attended the trial.

38.   Early in the trial, the State's own witnesses provided testimony favorable to Symons and Dr. Grange.  For example, insurance company representatives as well as the State's own expert testified that there is no statute, rule, or regulation that requires a provider to own or lease the helicopter in order to bill for air ambulance services.  One of the State's witnesses also confirmed that the

1  billing code used for the Symons air ambulance claims did not contain any

2  representation that Symons owns or leases the helicopter.  Insurance company

3  representatives, including a representative from SIMNSA, also testified that they

4  had no reason to believe that any of the information contained in Symons' PCRs

5  was false.  Another witness called by the State, one of the persons who prepared and

6  submitted bills to insurance companies on behalf of Symons, testified that Dr.

7  Grange did not direct or even suggest that any bill should be submitted and that it

8  was up to the billing manager to make sure appropriate claims were submitted for

9  services rendered.  Such testimony directly refuted the core allegations of the *qui*

10 *tam* complaint.  In other words, it was clear before the defense even started

11 presenting its case that the CDI's claims against Dr. Grange were baseless, that the

12 principal allegations upon which the complaint was predicated were false, and that

13 Dr. Grange was prevailing.

14     **F.**     **The Unlawful Investigation, Arrest, Detention, and Malicious**

15              **Criminal Prosecution of Dr. Grange**

16     39.     On information and belief, in retaliation against Dr. Grange for

17 exercising his constitutional rights and in a blatant attempt to prevent Dr. Grange

18 from proceeding with his defense in the *qui tam* trial, Defendants conducted an

19 unlawful and retaliatory criminal investigation of Dr. Grange based on knowingly

20 fabricated and untruthful allegations, unlawfully arrested Dr. Grange outside the

21 courthouse, and caused Dr. Grange to be held in jail without bail the court-day

22 before he was set to testify.  Defendants also caused the San Bernardino County

23 District Attorney's Office to file a frivolous and false criminal complaint against Dr.

24 Grange based on allegations they knew to be fabricated and false.  The criminal

25 complaint included the very same meritless factual allegations underlying the *qui*

26 *tam* complaint—allegations that were by this time established as false and only days

27 away from being submitted to a jury for resolution.

28 ///

40.    On February 27, 2020, while Dr. Grange and his attorney were leaving court after that day of the civil trial, Defendant Wessely and other CDI investigators unlawfully arrested Dr. Grange without a warrant and without probable cause outside the courthouse and in full view of other persons leaving the courthouse, including, on information and belief, jurors in the *qui tam* matter.  Defendant Wessely recorded the arrest on his department issued digital recorder.

41.    On information and belief, Defendants Pozuelos and Wessely and DOES 1-10 coordinated the arrest, including the timing and location of the arrest, as *inter alia*, Defendant Wessely and other CDI investigators knew when Dr. Grange was leaving the courthouse and were waiting for him outside.

42.    After Dr. Grange was arrested, one of the CDI investigators stated he was told that Dr. Grange's bail would be $4 million, but the judge was "in the middle of signing" the warrant now and may change the bail amount.  When asked which judge was reviewing the warrant, a CDI investigator stated he was not sure and that other unidentified persons were with the judge "right now."  Thus, when Defendant Wessely and other CDI investigators arrested Dr. Grange outside the courthouse, it was clear that they did not have a valid arrest warrant or probable cause as they could hardly articulate the most basic of information that would form the basis of *any* arrest warrant.  In other words, it was a wholly unlawful arrest.

43.    On information and belief, on or about February 27, 2020, Defendant Pozuelos caused the San Bernardino County District Attorney's Office, who relied on the Defendant's false, fabricated, and retaliatory criminal investigation, to file a baseless criminal complaint against Dr. Grange alleging 44 counts of insurance fraud that allegedly occurred between about July 14, 2011, and May 9, 2017.  The criminal complaint was not supported by probable cause and was predicated on false and fabricated information knowingly provided by the Defendants to the District Attorney's Office.

///

44.     Counts one through thirty-one of the criminal complaint were based on the very same allegations as the claims in the *qui tam* complaint, namely, that bills submitted to insurance companies for air ambulance services were fraudulent because Symons did not own or lease the helicopters used for the transports, allegations known at that time by the Defendants to be false.  Counts thirty-two through forty-four were based on the allegation that bills submitted to insurance companies for ground ambulance services were fraudulent because the patients were treated by Symons medical personnel on site and were not transported, an allegation known at that time by the Defendants to be false.

45.     On information and belief, Defendant Pozuelos conducted her criminal investigation, which led to the filing of the baseless criminal complaint, in a manner that was in intentional and reckless disregard for the truth.  For example, on information and belief, Defendant Pozuelos failed to interview key witnesses, including the persons at the insurance companies who actually processed the Symons claims and the billing persons who prepared and submitted claims on behalf of Symons.  On information and belief, such investigation would have produced exculpatory evidence showing that the insurance companies were not defrauded. For example, Defendant Pozuelos stated in her narrative report that Symons had submitted a ground ambulance claim for patient D.N. two times to Kaiser and that Kaiser had denied the claim.  Defendant Pozuelos and CDI falsely alleged that these claims were fraudulent and they were included in the criminal complaint against Dr. Grange.  However, on information and belief, if Defendant Pozuelos had conducted a reasonable investigation and had interviewed the persons at Kaiser who actually processed these claims and the billers who prepared and submitted them for Symons, she would have learned that (1) The billers who submitted the claim for Symons spoke to a Kaiser representative by telephone and explained to Kaiser that Symons "did not transport" the patient; (2) The Kaiser representative told the billers that they would have to resubmit the claim and use the Advanced Life Support

("ALS") transport code; (3) The billers complied with Kaiser's instructions and resubmitted the claim using the ALS code; and (4) Kaiser then paid the claim.

46.    On information and belief, Defendant Pozuelos also intentionally and in reckless disregard of the truth omitted and withheld materially exculpatory evidence from the San Bernardino County District Attorney's Office, including but not limited to the following:  (1) At the time the criminal complaint was filed, Dr. Grange was defending himself in a civil trial against CDI based on identical allegations as the criminal complaint; (2) The defense expert witness on ambulance billing had testified that there is no requirement of ownership or leasing of an aircraft as a precondition of billing an insurance company for air ambulance services; (3) Insurance company representatives and the State's proffered expert witness on ambulance billing testified that there is no rule or regulation requiring that a provider own or lease the vehicle used in the transport in order to bill for air ambulance services; (4) A witness for the State testified that the billing code used for the Symons air ambulance claims did not contain any representation that Symons owns or leases the helicopter; (5) Insurance company representatives, including a representative from SIMNSA, testified that they had no reason to believe the information contained in Symons' PCRs was false; and (6) One of the persons who prepared and submitted bills to the insurance companies on behalf of Symons testified that Dr. Grange did not direct or even suggest that any bill should be submitted and that it was up to the billing manager to make sure appropriate claims were submitted for services rendered.

**G.    The Arrest Warrant Was Not Supported by Probable Cause and Was Signed After Dr. Grange Had Already Been Arrested**

47.    On February 27, 2020, Defendant Pozuelos signed a Declaration in Support of Arrest Warrant and/or Misdemeanor Confinement ("Declaration for Arrest Warrant") for the purported purpose of obtaining an arrest warrant for Dr. Grange for alleged violations of California Penal Code section 550.  A copy of the

Declaration for Arrest Warrant is attached hereto as Exhibit 1.  A copy of the arrest warrant is attached hereto as Exhibit 2.

48.    The Declaration for Arrest Warrant did not contain any facts establishing probable cause.  The Declaration for Arrest Warrant purported to incorporate "pertinent parts" of law enforcement reports, but no such reports were attached.  Because the Declaration for Arrest Warrant failed to establish probable cause, the subsequent arrest warrant was invalid.

49.    On information and belief, Defendant Pozuelos also intentionally and in reckless disregard of the truth omitted material facts, including exculpatory information, from the Declaration for Arrest Warrant, including but not limited to (1) the facts described in Paragraphs 33 and 46 of this Complaint; (2) the claim forms and supporting documents submitted to insurance companies by or on behalf of Symons accurately described the care provided by Symons and did not contain any false statements; (3) the claim forms and supporting documents submitted to insurance companies in support of the ground ambulance claims informed the insurance companies that the patients were not transported; (4) insurance companies, including Kaiser Permanente (one of the alleged victim insurance companies) routinely pay ground ambulance claims where the patient was not transported; and (5) insurance companies had paid Symons for ground ambulance claims knowing that the patients were not transported.  These falsifications and omissions were material to any finding of probable cause.  Thus, the arrest warrant was not valid.

50.    The arrest warrant was signed by a Superior Court Judge only *after* Defendants had already unlawfully arrested Dr. Grange in full public view as retaliation against Dr. Grange for exercising his constitutional rights, to unlawfully influence his exercise of his constitutional rights, and for the purpose of unlawfully influencing the jurors in the civil case.

///

**H.** **Defendant Pozuelos Unlawfully Caused Dr. Grange to be Held in Jail Without Bail**

51.    On February 27, 2020, Defendant Pozuelos signed a Probable Cause Declaration in Support of Motion to Place a Hold on the Release of Defendant/s from Custody ("Declaration for Bail Hold") in support of a request for an order preventing Dr. Grange from posting bail.  The Declaration for Bail Hold was submitted to the court in conjunction with a Motion for the Examination of Bail under Penal Code section 1275.1.  The Motion sought an order from the court that any bail proffered by Dr. Grange not be accepted until after a hearing to determine whether the bail was feloniously obtained and whether the "source of the proffered bail is consistent with the intent of the court to assure that [Dr. Grange] makes future court appearances."  However, as Defendant Pozuelos knew, there was no reason to believe that Dr. Grange was a flight risk and the requested bail hold was merely an unlawful attempt  by the Defendants to manipulate the criminal justice system to prevent Dr. Grange from defending himself in the civil trial.

52.    Defendant Pozuelos falsely asserted in the Declaration for Bail Hold that there was "probable cause to believe that the source of any consideration, pledge, security, deposit or indemnification paid, given, made or promised for the execution of bail was feloniously obtained."  In support of this false assertion, the Declaration for Bail Hold contained numerous false and misleading statements which, on information and belief, Defendant Pozuelos knew to be false and misleading when she signed the Declaration, including but not limited to the following:

a.    "[Dr. Grange] has improperly billed or caused to be billed many insurance companies for both ground and air ambulance transports."  In fact, as Defendant Pozuelos then knew, Dr. Grange did not direct or even suggest that any bill be submitted to insurance companies.  The bills were prepared and submitted to insurance companies on behalf of Symons by persons specializing in ambulance

billing.  Whether a bill should be submitted and how such bills should be submitted was determined by the billing manager.  Also, as described in this Complaint, the bills submitted to insurance companies were not improper.

              b.    "As to the ground transports, [Dr. Grange] never provided the service to the patients."  In fact, as Defendant Pozuelos then knew, Symons did provide the services described, including medical care, to each patient.

              c.    "[Dr. Grange] billed or caused to be billed for helicopter ambulance transports he did not provide[.]"  In fact, as Defendant Pozuelos then knew, Dr. Grange did not direct or even suggest that any bill be submitted to insurance companies.  The bills were prepared and submitted to insurance companies on behalf of Symons by persons specializing in ambulance billing.  Whether a bill should be submitted and how such bills should be submitted was determined by the billing manager.  Also, Symons did in fact provide the services described in the bills.

       53.    On information and belief, Defendant Pozuelos also intentionally, or in reckless disregard of the truth, omitted material information from the Declaration for Bail Hold, including but not limited to (1) the facts described in Paragraphs 33, 46, and 49 of this Complaint; (2) the payments from insurance companies to Symons occurred between nearly three and seven or more years prior; and (3) during the period covered by the criminal complaint, Symons had several shareholders, officers, and directors—in fact, Symons's Board of Directors has been as large as nine directors.

       54.    There was no valid basis to believe Dr. Grange was a flight risk and to prohibit Dr. Grange from posting bail given that, *inter alia*:  (1) the timing of the arrest was in the middle of Dr. Grange's civil trial when Defendants knew Dr. Grange had been attending the trial and was set to testify the next court day after his arrest; (2) there was no exigency—the last alleged act in the criminal complaint was nearly three years prior—on May 9, 2017; (3) CDI's criminal investigation was

more than three years old, again demonstrating no exigency; and (4) Dr. Grange had resided in Southern California since 1990 and at the same residence in Riverside County since 2017.

55.     The court marked the arrest warrant as a "no bail" warrant.  On information and belief, the decision to issue a "no bail" warrant was based on the materially false and misleading information contained in the declaration signed by Defendant Pozuelos.  As a result of the "no bail" warrant, Dr. Grange was not able to post bail and was unlawfully held in custody for five days, and consequently was unable to meet with his civil attorneys or prepare for his defense in the *qui tam* trial.

I.     **Defendant Pozuelos Unlawfully Caused Dr. Grange's Assets to be Frozen in the Middle of the Civil Jury Trial**

56.     In addition to unlawfully arresting Dr. Grange, Defendants also improperly caused Dr. Grange's assets to be frozen in retaliation for his exercising his constitutional rights and for the purpose of unlawfully influencing his exercise of his constitutional rights.  On February 26, 2020, Defendant Pozuelos signed a Declaration in Support of Temporary Restraining Order and Preliminary Injunction which was submitted to the Court to support a request for an order freezing and restraining assets related to Dr. Grange including bank accounts and real property. Defendant Pozuelos' declaration contained false statements which, on information and belief, Defendant Pozuelos knew to be false when she signed the Declaration, including but not limited to the following:

a.     Defendant Pozuelos falsely stated that Dr. Grange billed the insurance companies.  In fact, as Defendant Pozuelos then knew, Dr. Grange did not prepare or submit any of the insurance claims.  The billing for Symons was handled by billers with expertise in ambulance billing.  Many of the bills referenced in Defendant Pozuelos' declaration were prepared and submitted by third-party billing companies.

///

b. Defendant Pozuelos falsely stated that Dr. Grange intentionally deceived insurance providers by submitting claims for ambulance transports that did not occur. In fact, as Defendant Pozuelos then knew, Dr. Grange did not prepare or submit any claim forms to insurance providers. Also, the insurance providers were not deceived. The claim forms and other documents submitted to the insurance providers clearly informed the insurance providers that no transport occurred. Defendant Pozuelos also knew that Kaiser Permanente did routinely pay ground ambulance claims where the patients were not transported, which Kaiser representatives referred to as "treat no transport" situations.

57. Defendant Pozuelos also intentionally and in reckless disregard of the truth omitted material facts from the declaration, including but not limited to the facts described in Paragraphs 33, 46, and 49 of this Complaint.

58. On February 28, 2020, relying on these materially false statements and omissions, the San Bernardino County Superior Court issued a Temporary Restraining Order restraining Dr. Grange's assets, including bank accounts and real property.

**J.** **Dr. Grange's Release from Jail and Continuation of the *Qui Tam* Trial**

59. On March 2, 2020, Dr. Grange appeared for his arraignment on the criminal case and, after hearing argument from Dr. Grange's attorney, San Bernardino County Superior Court Judge R. Glenn Yabuno ordered Dr. Grange released on his own recognizance. In other words, the judge did not require Dr. Grange to post any bail to secure his release—a far cry from the no-bail warrant that Defendant Pozuelos caused to be signed based on false and misleading information. Dr. Grange was released from jail on the night of March 2, 2020.

60. Following Dr. Grange's release from jail, attorneys for the State in the *qui tam* matter told Dr. Grange's attorney that the State would dismiss the *qui tam* complaint and that they would speak with the San Bernardino County District

Attorney's Office about dismissing the criminal complaint if Dr. Grange gave up his right to see his civil trial through conclusion, falsely conceded liability, and agreed to pay a settlement in the *qui tam* matter.

61.    On the morning of March 3, 2020, well knowing the State was about to lose the civil trial, the CDI attempted to obtain a mistrial and stay of the *qui tam* matter based on the new and baseless criminal complaint that CDI knew had been unlawfully procured based on a false and misleading information.  Before the jury returned to the courtroom, the CDI informed the judge that it had doubts as to whether the *qui tam* trial could continue as to Dr. Grange in light of the new criminal case.  After Dr. Grange's attorney stated that Dr. Grange wanted the trial to proceed, the CDI argued that the law provides for a stay of the civil trial to protect the new criminal case from interference by the civil case.  The judge declined to order a mistrial or stay and the jury trial resumed.

62.    On March 3, 2020, after the judge declined to declare a mistrial or stay the case the State called Dr. Grange as a witness in the civil trial despite knowing he had spent the previous five days in jail without the ability to meet with counsel, review discovery, and prepare for trial.

63.    On March 16, 2020, the jury in the *qui tam* matter returned a complete defense verdict in favor of Dr. Grange and the other defendants on all claims.

64.    Unsurprisingly, on July 16, 2021, the San Bernardino County District Attorney's Office moved to dismiss the criminal complaint against Dr. Grange, in its entirety, based on lack of evidence.  The court granted that motion, dismissed the case, and discharged Dr. Grange.  The court also released Dr. Grange's bank accounts and real property that had been frozen since February 28, 2020.

65.    Dr. Grange has suffered greatly from the Defendants' unlawful and retaliatory conduct.  He had to expend significant monetary resources defending against the retaliatory investigation, unlawful arrest, malicious criminal prosecution, and the attendant consequences.  The reputational harm to him and his business

interests as a direct result of Defendants' conduct has cost Dr. Grange millions of dollars in lost business opportunities and other serious and irreparable financial harm.  Dr Grange has also suffered severe and lasting emotional distress, pain, and suffering.

## FIRST CLAIM

### (Conspiracy – 42 U.S.C. § 1983)

### Against All Defendants Except CDI

66.    Dr. Grange re-alleges and incorporates each of the allegations in the above paragraphs in this Complaint as though fully set forth herein.

67.    On information and belief, Defendant Pozuelos and DOES 1-10 conspired and agreed with each other to deprive Dr. Grange of his constitutional rights, including his right to be free from a unconstitutional, retaliatory investigation, his right to be free from unreasonable searches and seizure, right to access the courts, his right to defend himself in the *qui tam* trial, and his right to due process.  The object of the conspiracy was to be carried out by unlawfully investigating and arresting Dr. Grange in the middle of the civil trial, unlawfully causing a baseless criminal complaint to be filed against Dr. Grange, causing Dr. Grange to be held in jail without the ability to post bail, and unlawfully causing Dr. Grange's assets to be frozen, all in violation of Dr. Grange's constitutional rights.

68.    Defendants had an agreement and/or meeting of the minds to violate Dr. Grange's constitutional rights as demonstrated by the following facts, among others:

a.    During the days leading up to the arrest, the State's own witnesses in the *qui tam* trial had given testimony favorable and exculpatory to Dr. Grange and that refuted the CDI's core allegations against Dr. Grange.

b.    The unlawful arrest occurred on the court day before Dr. Grange was to testify in the *qui tam* trial.

///

c.      On information and belief, Defendant Pozuelos and DOES 1-10 coordinated the unlawful criminal investigation and arrest, including the timing and location of the arrest, as *inter alia*, Defendant Wessely and other CDI investigators knew when Dr. Grange was leaving the courthouse and were waiting for him outside.

d.      Defendant Pozuelos caused the San Bernardino County District Attorney's Office to file a knowingly false, fabricated, and baseless criminal complaint against Dr. Grange and caused Dr. Grange to be held in jail without the ability to post bail, thereby preventing Dr. Grange from meeting with his civil attorney, reviewing discovery, and preparing his defense in the *qui tam* trial.

e.      CDI then attempted to capitalize on the unlawful arrest and baseless criminal complaint by unlawfully extracting a settlement from Dr. Grange or obtaining a mistrial or stay of the *qui tam* matter, using the knowingly false, fabricated, and baseless criminal complaint as leverage.

69.    Defendants' conspiracy caused Dr. Grange's injuries.  As a result of their misconduct, Defendants Pozuelos and Wessely and DOES 1-10 are liable for Dr. Grange's injuries because they knowingly and intentionally joined the conspiracy and the retaliatory criminal investigation, unlawful arrest, detention without bail, and malicious criminal prosecution were carried out or caused by one or more co-conspirators during and in furtherance of the conspiracy.

70.    Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for Dr. Grange's rights, therefore warranting the imposition of exemplary and punitive damages as to each of them.

71.    At all relevant times, Defendants Pozuelos, Wessely and DOES 1-10 were acting under the color of law or conspired with others who were acting under color of law.

///

///

## SECOND CLAIM

### (Unreasonable Seizure of Person – 42 U.S.C. § 1983)

### Against All Defendants Except CDI

72.    Dr. Grange re-alleges and incorporates each of the allegations in the above paragraphs in this Complaint as though fully set forth herein.

73.    Defendants Pozuelos and Wessely and DOES 1-10 unlawfully arrested Dr. Grange and/or caused him to be arrested without probable cause and without a valid warrant.

74.    Defendants Pozuelos and Wessely and DOES 1-10 violated Dr. Grange's right to be secure in his person against unreasonable searches and seizures as guaranteed to Dr. Grange under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

75.    The conduct of Defendants Pozuelos and Wessely and DOES 1-10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Dr. Grange, and therefore warrants the imposition of exemplary and punitive damages.

76.    This unreasonable and retaliatory investigation, detention, arrest, and restraint caused Dr. Grange's injuries.  As a result of their misconduct, Defendants Pozuelos and Wessely and DOES 1-10 are liable for Dr. Grange's injuries, either because they were integral participants in the wrongful detention and arrest, because they failed to intervene to prevent these violations, or because they were co-conspirators and the wrongful detention and arrest of Dr. Grange was carried out in furtherance of the conspiracy.

77.    At all relevant times, Defendants Pozuelos and Wessely and DOES 1-10 were acting under the color of law or conspired with others who were acting under color of law.

///

///

# THIRD CLAIM

## (Excessive Bail - 42 U.S.C. § 1983)

### Against Defendant Pozuelos and DOES 1-10

78.    Dr. Grange re-alleges and incorporates each of the allegations in the above paragraphs in this Complaint as though fully set forth herein.

79.    Defendant Pozuelos, acting with deliberate falsehood or reckless disregard for the truth, caused Dr. Grange to be held in custody without bail by presenting false and misleading information and omitting material facts in the Declaration in Support of Arrest Warrant and/or Misdemeanor Confinement and the Probable Cause Declaration in Support of Motion to Place a Hold on the Release of Defendant/s from Custody.  The false statements and omissions were material to the court's determination whether to allow Dr. Grange to post bail.

80.    There was no valid basis to believe Dr. Grange was a flight risk or danger to the community.  Thus, there was no valid reason to prevent Dr. Grange from posting bail.

81.    Defendant Pozuelos violated Dr. Grange's right against excessive bail as guaranteed to Dr. Grange under the Eighth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

82.    The conduct of Defendant Pozuelos was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Dr. Grange, and therefore warrants the imposition of exemplary and punitive damages.

83.    This unreasonable detention caused Dr. Grange's injuries.  As a result of their misconduct, Defendant Pozuelos and DOES 1-10 are liable for Dr. Grange's injuries.  At all relevant times, Defendant Pozuelos and DOES 1-10 were acting under the color of law or conspired with others who were acting under color of law.

///

///

///

## FOURTH CLAIM

### (Unreasonable Seizure of Property – 42 U.S.C. § 1983)

### Against Defendant Pozuelos and DOES 1-10

84.    Dr. Grange re-alleges and incorporates each of the allegations in the above paragraphs in this Complaint as though fully set forth herein.

85.    Defendant Pozuelos, acting with deliberate falsehood or reckless disregard for the truth, caused the unreasonable and unlawful seizure of Dr. Grange's property by presenting false and misleading information and omitting material facts in a Declaration in Support of Temporary Restraining Order and Preliminary Injunction which was submitted to the Court to support a request for an order freezing and restraining assets related to Dr. Grange.

86.    Defendant Pozuelos violated Dr. Grange's right to be secure in his property against unreasonable seizures as guaranteed to Dr. Grange under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

87.    The conduct of Defendant Pozuelos was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Dr. Grange, and therefore warrants the imposition of exemplary and punitive damages.

88.    This unreasonable seizure caused Dr. Grange's injuries.  As a result of their misconduct, Defendant Pozuelos and DOES 1-10 are liable for Dr. Grange's injuries.

89.    At all relevant times, Defendant Pozuelos and DOES 1-10 were acting under the color of law or conspired with others who were acting under color of law.

///
///
///
///
///

## FIFTH CLAIM

**(Deliberate Fabrication of Evidence and Withholding of Material Information – 42 U.S.C. § 1983)**

**Against Defendant Pozuelos and DOES 1-10**

90.    Dr. Grange re-alleges and incorporates each of the allegations in the above paragraphs in this Complaint as though fully set forth herein.

91.    Defendant Pozuelos unlawfully continued her investigation of Dr. Grange and initiated and conducted a criminal investigation of Dr. Grange, despite the fact that she knew Dr. Grange was innocent or was deliberately indifferent to Dr. Grange's innocence and the results of Defendant Pozuelos' investigation were used to criminally charge Dr. Grange.

92.    Defendant Pozuelos, acting with deliberate falsehood or reckless disregard for the truth, made false and misleading statements and withheld material information from the prosecutor while urging the prosecutor to file criminal charges against Dr. Grange.

93.    Defendant Pozuelos violated Dr. Grange's right against being subjected to criminal charges without probable cause and on the basis of false or misleading evidence or material omissions as guaranteed to Dr. Grange under the Fourteenth Amendment to the United States Constitution.

94.    The conduct of Defendant Pozuelos was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Dr. Grange, and therefore warrants the imposition of exemplary and punitive damages.

95.    This unlawful conduct caused Dr. Grange's injuries.  As a result of their misconduct, Defendant Pozuelos and DOES 1-10 are liable for Dr. Grange's injuries.

96.    At all relevant times, Defendant Pozuelos and DOES 1-10 were acting under the color of law or conspired with others who were acting under color of law.
///

## SIXTH CLAIM

### (Malicious Prosecution – 42 U.S.C. § 1983)

### Against Defendant Pozuelos and DOES 1-10

97.    Dr. Grange re-alleges and incorporates each of the allegations in the above paragraphs in this Complaint as though fully set forth herein.

98.    Defendant Pozuelos, with malice and without probable cause, caused the San Bernardino County District Attorney's Office to initiate a criminal prosecution of Dr. Grange.  The criminal complaint lacked probable cause for the reasons set forth above, including but not limited to the following: (1) The claim forms and supporting documents submitted to insurance companies by or on behalf of Symons accurately described the care provided by Symons, which was confirmed by CDI's own investigation and witnesses during the *qui tam* trial; (2) None of the claim forms or other documents submitted to insurance companies by or on behalf of Symons contained false statements, which was also confirmed by CDI's own investigation and witnesses during the *qui tam* trial; and (3) Dr. Grange did not intend to deceive the insurance companies, which was confirmed by CDI's own investigation and witnesses during the *qui tam* trial.

99.    Defendant Pozuelos did so for the purpose of retaliating against Dr. Grange and denying Dr. Grange his constitutional right to access the court and defend himself in the pending *qui tam* matter.

100.    Defendant Pozuelos, acting with deliberate falsehood or reckless disregard for the truth, made false and misleading statements and withheld material information from the prosecutor while urging the prosecutor to file criminal charges against Dr. Grange.

101.    Defendant Pozuelos violated Dr. Grange's right against being subjected to malicious prosecution as guaranteed to Dr. Grange under the Fourteenth Amendment to the United States Constitution.

///

LARSON
LOS ANGELES

102.   The conduct of Defendant Pozuelos was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Dr. Grange, and therefore warrants the imposition of exemplary and punitive damages.

103.   This unlawful conduct caused Dr. Grange's injuries.  As a result of their misconduct, Defendant Pozuelos and DOES 1-10 are liable for Dr. Grange's injuries.

104.   At all relevant times, Defendant Pozuelos and DOES 1-10 were acting under the color of law or conspired with others who were acting under color of law.

## SEVENTH CLAIM

### (Retaliation – 42 U.S.C. § 1983)

### Against Defendants Pozuelos and DOES 1-10

105.   Dr. Grange re-alleges and incorporates each of the allegations in the above paragraphs in this Complaint as though fully set forth herein.

106.   At all relevant times, Dr. Grange was engaged in constitutionally protected activities, including defending himself in court in the civil *qui tam* trial.

107.   Defendants Pozuelos and DOES 1-10 retaliated against Dr. Grange for exercising his constitutional right to access the courts and defend himself by conducting, in an unlawful and retaliatory manner, a criminal investigation against Dr. Grange, by causing Dr. Grange's unlawful arrest, by causing Dr. Grange to be held in custody without the ability to post bail—which is typically reserved for the most dangerous of offenders, and by causing the filing of a baseless criminal complaint against Dr. Grange.  Defendants' actions caused Dr. Grange to spend five days in jail whilst in the middle of the civil trial and right before Dr. Grange was to testify.

108.   Dr. Grange's constitutionally protected activity was a substantial or motivating factor in the Defendants' conduct as it was clear Dr. Grange was prevailing in the civil trial against CDI in the *qui tam* matter.

///

109.    Defendants' actions would chill a person of ordinary firmness from engaging in the constitutionally protected use of the courts.

110.    This unlawful conduct caused Dr. Grange's injuries.  As a result of their misconduct, Defendant Pozuelos and DOES 1-10 are liable for Dr. Grange's injuries.

111.    The conduct of Defendant Pozuelos and DOES 1-10 was willful, wanton, malicious, and done with reckless disregard for Dr. Grange's rights, therefore warranting the imposition of exemplary and punitive damages as to each of them.

112.    At all relevant times, Defendant Pozuelos and DOES 1-10 were acting under the color of law or conspired with others who were acting under color of law.

## EIGHTH CLAIM

### (Intentional Infliction of Emotional Distress)

### Against All Defendants

113.    Dr. Grange re-alleges and incorporates each of the allegations in the above paragraphs in this Complaint as though fully set forth herein.

114.    Defendants Pozuelos and Wessely and DOES 1-10, as employees and agents of Defendant CDI and acting on behalf of Defendant CDI, unlawfully and intentionally arrested or caused the arrest of Dr. Grange without a valid warrant and without probable cause and intentionally caused the filing of the baseless criminal action against Dr. Grange.  Defendant Pozuelos also caused Dr. Grange to be unlawfully held in jail without bail for five days on the eve of testifying in the civil trial.  This callous and depraved conduct is extreme and outrageous and was done with the intent of causing, or reckless disregard of the probability of causing, emotional distress to Dr. Grange.

115.    As a result of the above, Dr. Grange suffered severe and extreme emotional distress which was caused by the intentionally intrusive, outrageous, and

traumatic behavior of Defendants Pozuelos and Wessely and DOES 1-10 acting as agents and employees and on behalf of Defendant CDI.

116.    The outrageous actions by Defendants Pozuelos, Wessley, and DOES 1-10, acting on behalf of CDI, were the actual and proximate cause of Dr. Grange's emotional distress and other damages.

117.    The conduct of Defendants Pozuelos and Wessely and DOES 1-10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Dr. Grange, and therefore warrants the imposition of exemplary and punitive damages.

## NINTH CLAIM

### (Malicious Prosecution)

### Against Defendants Pozuelos, CDI, and DOES 1-10

118.    Dr. Grange re-alleges and incorporates each of the allegations in the above paragraphs in this Complaint as though fully set forth herein.

119.    Defendant Pozuelos, acting as an agent and employee and on behalf Defendant CDI, and DOES 1-10 intentionally caused the criminal complaint against Dr. Grange to be filed.  The criminal complaint lacked probable cause for the reasons set forth above, including but not limited to the following: (1) The claim forms and supporting documents submitted to insurance companies by or on behalf of Symons accurately described the care provided by Symons, which was confirmed by CDI's own investigation and witnesses during the *qui tam* trial; (2) None of the claim forms or other documents submitted to insurance companies by or on behalf of Symons contained false statements, which was also confirmed by CDI's own investigation and witnesses during the *qui tam* trial; and (3) Dr. Grange did not intend to deceive the insurance companies, which was confirmed by CDI's own investigation and witnesses during the *qui tam* trial.

120.    Defendant Pozuelos, acting with deliberate falsehood or reckless disregard for the truth, made false and misleading statements and withheld material

1  information from the prosecutor while urging the prosecutor to file criminal charges

2  against Dr. Grange.

3       121.   Defendant Pozuelos, acting as an agent and employee and on behalf of

4  Defendant CDI, acted with malice.  Defendant Pozuelos acted for the purpose of

5  retaliating against Dr. Grange and denying Dr. Grange his constitutional right to

6  access the court and defend himself in the pending *qui tam* matter.

7       122.   The criminal action was dismissed because there was insufficient

8  evidence and thus was terminated in Dr. Grange's favor.

9       123.   The malicious prosecution was the actual and proximate cause of Dr.

10  Grange's emotional distress and other damages.

11       124.   The conduct of Defendant Pozuelos and DOES 1-10 was willful,

12  wanton, malicious, and done with reckless disregard for the rights and safety of Dr.

13  Grange, and therefore warrants the imposition of exemplary and punitive damages.

## **PRAYER FOR RELIEF**

15       WHEREFORE, Dr. Grange demands judgment against Defendants for the

16  following relief:

17       A.    Compensatory damages in an amount to be proven at trial;

18       B.    Punitive damages in an amount to be proven at trial;

19       C.    An award of reasonable attorneys' fees, costs, and expenses to Dr.

20  Grange, pursuant to 42 U.S.C. § 1988, in an amount to be proven at trial;

21       D.    For costs of suit herein incurred;

22       E.    Pre-judgment interest;

23       F.    Such other and further relief as this Court shall find just and proper.

24  ///

25  ///

26  ///

27  ///

28  ///

1  Dated:  February 24, 2022          LARSON LLP

2

3

4                                        By:  /s/ Stephen G. Larson

5                                             Stephen G. Larson
                                              Jerry A. Behnke
                                              Daniel R. Lahana
6
                                         Attorneys for Plaintiff
7                                        JEFF GRANGE, M.D.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DEMAND FOR JURY TRIAL

In accordance with Local Rule 38-1, Plaintiff Jeff Grange, M.D. demands a trial by jury on all claims for which a jury trial is provided under law.

Dated:  February 24, 2022            LARSON LLP


By:  /s/ Stephen G. Larson
_____
Stephen G. Larson
Jerry A. Behnke
Daniel R. Lahana

Attorneys for Plaintiff
JEFF GRANGE. M.D.