ROB BONTA
Attorney General of California
ELIZABETH S. ANGRES
Supervising Deputy Attorney General
THOMAS M. MCMAHON
Deputy Attorney General
State Bar No. 106074
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013-1230
 Telephone:  (213) 269-6616
 Fax:  (916) 731-2120
 E-mail:  Thomas.McMahon@doj.ca.gov
*Attorneys for Defendants*
*Lori Pozuelos and Jason Wessely*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JEFF T. GRANGE, M.D.,**<br><br>Plaintiff,<br><br>v.<br><br>**LORI POZUELOS AND JASON WESSELY,**<br><br>Defendants. | 5:22-cv-00340 DSF (AGRx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:        July 25, 2022<br>Time:        1:30 p.m.<br>Courtroom:   7D<br>Judge:       Hon. Dale S. Fischer<br>Trial Date:  TBD<br>Action Filed: 2/24/2022 |

**TO PLAINTIFF JEFF T. GRANGE, M.D., AND HIS COUNSEL OF RECORD**:

Come now Defendants Lori Pozuelos and Jason Wessely ("Defendants"), in the above-entitled matter, who move the Court for an order dismissing the action for failure to state a claim upon which relief can be granted. The Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that: (i) the First and Second Claims against Wessely, for civil rights violations, are barred by the doctrine of qualified immunity, (ii) the Eighth claim against Wessely,

for intentional infliction of emotional distress, fails to allege extreme and outrageous conduct, (iii) the Eighth Claim against both Defendants, for intentional infliction of emotion distress, is barred by the failure to submit a timely claim pursuant to the California Government Claims Act, (iv) the Fifth Claim against Pozuelos, for "deliberate fabrication of evidence and withholding of material information," is duplicative of the other civil rights claims, (v) the Second Claim against Defendants, for unreasonable seizure of person, is subsumed within the Sixth Claim for malicious prosecution, and (vi) the First Claim against Defendants, for conspiracy, is not pleaded with the required particularity.

The Motion will be based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, and all pleadings and papers on file herein.

Pursuant to Local Rule 7-3, counsel for Plaintiff and Defendants met and conferred on the issues raised by Plaintiff's Complaint by telephone on April 28, May 6, May 20, and June 9, 2022, and through a series of email communications. They reached agreement on some of the issues, resulting in the parties' stipulation for the filing of the First Amended Complaint. This Motion now addresses the issues in Plaintiff's pleading upon which the parties were unable to reach agreement.

Dated:  June 15, 2022                          Respectfully submitted,

                                                ROB BONTA
                                                Attorney General of California
                                                ELIZABETH S. ANGRES
                                                Supervising Deputy Attorney General


                                                /s/ Thomas M. McMahon
                                                THOMAS M. MCMAHON
                                                Deputy Attorney General
                                                *Attorneys for Defendants*
                                                *Lori Pozuelos and Jason Wessely*

# TABLE OF CONTENTS

**Page**

Introduction..................................................................................................... 1

Background Facts .............................................................................................. 2

Argument ......................................................................................................... 5

    I.    The Standards Governing a Motion to Dismiss.................................... 5

    II.   The Standards Governing a Claim Under 42 U.S.C. Section
        1983.................................................................................................. 6

    III.  Plaintiff's Civil Rights Claims Against Defendant Jason
        Wessely Are Barred by the Doctrine of Qualified Immunity.............. 7

    IV.  Plaintiff's State Law Claim Against Defendant Jason Wessely
        for Intentional Infliction of Emotional Distress Fails to Allege
        Extreme and Outrageous Conduct ................................................... 11

    V.   Plaintiff's State Law Claim for Intentional Infliction of
        Emotional Distress Is Barred by His Failure to Submit a Timely
        Government Claim.............................................................................. 12

    VI.  The Court Should Dismiss Plaintiff's Section 1983 Claim for
        "Deliberate Fabrication of Evidence and Withholding of
        Material Information" Because It Is Duplicative................................ 14

    VII. The Court Should Dismiss the Section 1983 Claim for
        Unreasonable Seizure of Person Because It Is Subsumed Within
        the Section 1983 Claim for Malicious Prosecution ........................... 15

    VIII. The Court Should Dismiss Plaintiff's Conspiracy Claim Because
        It Is Not Pleaded with the Required Specificity ................................ 16

Conclusion ...................................................................................................... 19

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

**CASES**

5

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ........................................................................*passim*

6

7

*Balistreri v. Pacifica Police Department*
   901 F.2d 696 (9th Cir. 1990) ............................................................... 5

8

9

*Beck v. City of Upland*
   527 F.3d 853 (9th Cir. 2008) ............................................................. 15

10

11

*Bell Atlantic Corp. v. Twombly.*
   550 U.S. 544 (2007) .................................................................... 5, 17

12

13

*Buckey v. Cty. of Los Angeles*
   968 F.2d 791 (9th Cir. 1992) ............................................................. 16

14

15

*Cabrera v. City of Huntington Park*
   159 F.3d 374 (9th Cir. 1998) ............................................................. 13

16

17

*Cahill v. Liberty Mut. Ins. Co.*
   80 F.3d 336 (9th Cir. 1996) ................................................................. 5

18

*Denton v. Hernandez*
   504 U.S. 25 (1992) ............................................................................. 6

19

20

*Dyess ex rel. Dyess v. Tehachapi Unified Sch. Dist.*
   2010 U.S. Dist. LEXIS 82659 (E.D. Cal. Aug. 6, 2010) ............................ 16, 17

21

22

*Guerra v. Sutton*
   783 F.2d 1371 (9th Cir. 1986) ........................................................... 10

23

24

*Hoffman v. Jourdan*
   2015 U.S. Dist. LEXIS 143922 (E.D. Cal. October 22, 2015) ........................ 13

25

26

*Holden v. Hagogian*
   978 F.2d 1115 (9th Cir. 1992) ............................................................. 6

27

*Jones v. Keitz*
   2017 U.S. Dist. LEXIS 125492 ............................................................. 16

28

ii

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Karim-Panahi v. Los Angeles Police Dep't*
    839 F.2d 621 (9th Cir. 1988)...............................................................18

*Lockary v. Kayfetz*
    587 F.Supp. 631 (N.D. Cal. 1984)........................................................17

*Mabe v. San Bernardino Dep't of Pub. Soc. Servs*.
    237 F.3d 1101 (9th Cir. 2001)..............................................................12

*Mangold v. California Pub. Utils. Comm'n*.
    67 F.3d 1470 (9th Cir. 1995)................................................................13

*Manriquez v. Town of Superior*
    No. CV-18-02026-PHX-DWL, 2020 WL 5544407 (D. Ariz. Sept.
    16, 2020)............................................................................................10

*Mendocino Environmental Center v. Mendocino Cty.*
    192 F.3d 1283 (9th Cir. 1999)..............................................................17

*Messerschmidt v. Millender*
    565 U.S. 535 (2012) ..........................................................................8, 9

*Miller v. Schmitz*
    No. 1:12-CV-00137-LJO, 2012 U.S. Dist. LEXIS 64526 (E.D. Cal.
    May 8, 2012)..................................................................................15, 16

*Monroe v. Pape*
    365 U.S. 167 (1961) .............................................................................6

*Mosher v. Saalfeld*
    589 F.2d 438 (9th Cir. 1979)................................................................17

*Moss v. U.S. Secret Service*
    572 F.3d 962 (9th Cir. 2009).................................................................5

*Parks School of Business, Inc. v. Symington*
    51 F.3d 1480 (9th Cir. 1995)..................................................................6

*Pearson v. Callahan*
    555 U.S. 223 (2009) ..............................................................................8

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Powell v. Cty. of Solano*
  2020 U.S. Dist. LEXIS 70226 (E.D. Cal. Apr. 21, 2020)...................................18

*Ramirez v. Butte-Silver Bow County*
  298 F.3d 1022 (9th Cir. 2002)...........................................................................10

*Reichle v. Howards*
  566 U.S. 658 (2012) ...................................................................................*passim*

*Reynaga Hernandez v. Skinner*
  969 F.3d 930 (9th Cir. 2020)...............................................................................8

*Sarver v. Chartier*
  813 F. 3d 891 (9th Cir. 2016) ............................................................................12

*Shirk v. Vista Unified Sch. Dist.*
  42 Cal. 4th 201 (Cal. 2007) ..............................................................................12

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) ...............................................................................5

*Sykes v. California*
  497 F.2d 197 (9th Cir. 1974) .............................................................................17

*Wallace v. Kato*
  549 U.S. 384 (2007) ...........................................................................................15

*Wang v. Toyed*
  944 F.2d 476 (9th Cir. 1991)................................................................................7

*Wilkins v. DeReyes*
  528 F.3d 790 (10th Cir. 2008) ...........................................................................15

**STATUTES**

United States Code, Title 42
  § 1983 ....................................................................................................*passim*
  § 1985 .............................................................................................................16

California Government Claims Act ...............................................................12, 13

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

California Government Code

§ 905.2 ........................................................................................... 12
§ 910 .............................................................................................. 12
§ 911 .............................................................................................. 12
§ 911.4(b) ....................................................................................... 14
§ 945.4 ........................................................................................... 12
§ 950-950.2 .................................................................................... 12

**CONSTITUTIONAL PROVISIONS**

United States Constitution

Fourth Amendment ................................................... 7, 14, 15, 16
Eighth Amendment ................................................................... 7
Fourteenth Amendment ............................................ 7, 14, 15

**COURT RULES**

Federal Rules of Civil Procedure

Rule 12(b)(6) ............................................................................ 1, 5

v

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The First Amended Complaint contains several defects that require dismissals pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Court should dismiss the two civil rights claims alleged against Defendant Jason Wessely ("Wessely") pursuant to the doctrine of qualified immunity. According to the Complaint, Wessely's only conduct was to make the arrest. He is not alleged to have participated in the investigation by the California Department of Insurance, or in the pursuit of the criminal complaint and arrest warrant. The arrest warrant was issued by the San Bernardino Superior Court on February 27, 2020, and the arrest took place at the end of trial that day in the *qui tam* litigation. An officer executing an arrest warrant is entitled to qualified immunity from suit, where, as here, he had no basis upon which to conclude that probable cause was lacking.

Plaintiff's counter argument that the arrest was not made pursuant to a warrant is unsupported by his pleading, which attaches the signed arrest warrant. The mere allegation that another officer, in response to a question about the bail amount, was unsure and suggested that the judge was still working on the matter, does not support Plaintiff's bizarre conclusion that Wessely actually arrested him ***without*** a warrant.

The Court should also dismiss the state law claim for intentional infliction of emotional distress. As to Wessely, the claim fails to allege any extreme and outrageous conduct, since he was merely executing a warrant. As to both Defendants, Plaintiff must also plead and prove that he submitted a government claim form within six months of the incident in question. Although the Complaint alleges compliance with this requirement, the conduct and injury took place in late February of 2020, but no government claim was filed until January 13, 2022, almost two years later.  Accordingly, the Court should dismiss the claim for

intentional infliction of emotional distress. Leave to amend should be denied, because it would be futile. Plaintiff cannot contradict the dates that have already been alleged. Moreover, the deadline for seeking any relief for a late-filed government claim – one year after the incident – has also expired.

Several of the civil rights claims against Defendant Lori Pozuelos ("Pozuelos") should also be dismissed. The claim for "deliberate fabrication of evidence and withholding of material information" is not based upon any established constitutional right, and is duplicative of the other civil rights claims. In addition, because the arrest was made pursuant to a criminal complaint, the civil rights claim for unreasonable seizure of person is subsumed within the claim for malicious prosecution. Finally, the conspiracy claim is conclusory, and lacks the required factual specificity concerning who was involved in the alleged conspiracy, how, when and where the participants communicated and took action, and what each participant agreed to and did in furtherance of the conspiracy.

## BACKGROUND FACTS[1]

The Complaint alleges that Plaintiff is a medical doctor, and a shareholder and officer of Symons Emergency Specialties, Inc., dba Symons Ambulance ("Symons"). (First Amended Complaint, "FAC," Dkt. 14, ¶ 18.) Symons is engaged in the business of providing emergency medical services, inter-facility critical care transport and special event services. (*Id*.)

Plaintiff alleges that in 2014, Symons provided emergency medical transport services for a driver in the "Baja 500" road race in Mexico. (FAC ¶¶ 19-22.) Symons billed the driver's health insurer, SIMNSA, for air ambulance services. (*Id*. ¶¶ 23-24.) SIMNSA disputed the billing, which resulted in a lawsuit that was later resolved. (*Id*. ¶¶ 25-27.)

/ / /

---

[1] Solely for the purposes of the Motion, Defendants assume that the facts alleged in the First Amended Complaint are true.

On May 28, 2016, SIMNSA filed a *qui tam* lawsuit against Symons in the Superior Court for San Bernardino County, alleging that Symons fraudulently billed for air ambulance services because it did not own or lease the transport helicopters. (FAC ¶¶ 28-29.)

Plaintiff alleges that the *qui tam* complaint was referred to the California Department of Insurance ("CDI"), and that an investigation was commenced by Pozuelos, a CDI investigator in the Fraud Division of the Rancho Cucamonga office. (FAC ¶¶ 30-31.) In addition to the fraudulent billing for air ambulance services alleged in the *qui tam* complaint, CDI investigated fraudulent billing for ground ambulance services that were not provided. (*Id*.) Plaintiff alleges that during the investigation, Pozuelos received information from third parties that Symons' billing for air and ground ambulance services were not improper. (*Id.* ¶ 32.)

On July 18, 2017, CDI intervened in the *qui tam* lawsuit (FAC ¶ 34.) Plaintiff alleges that Symon's expert later gave deposition testimony that air ambulance service can be billed to an insurer even though the provider does not own or lease the helicopter. (*Id.* ¶ 35.)

On February 19, 2020, the trial began in the *qui tam* lawsuit. (FAC ¶ 36.) Plaintiff alleges that witnesses called by SIMNSA and CDI provided testimony that was favorable to Symons on the billing for air ambulance services, and that Symons was prevailing in the case. (*Id.* ¶ 37.)

On February 27, 2020, the District Attorney for San Bernardino County filed a criminal complaint against Plaintiff for fraudulent billing in connection with air and ground ambulance services, including allegations also contained in the *qui tam* lawsuit. (FAC ¶¶ 42-43.) Plaintiff alleges that Pozuelos caused the criminal complaint to be filed by deliberately making false statements to the District Attorney and withholding material exculpatory information. (*Id.* ¶¶ 44-45.)

A judge of the Superior Court for the County of San Bernardino issued a warrant for the arrest of Plaintiff on the same day, February 27, 2020. (FAC ¶ 46

and Ex. 2 thereto.) Plaintiff alleges that Pozuelos' declaration in support of the issuance of the arrest warrant did not establish probable cause, contained false statements and intentionally omitted material exculpatory information. (*Id*. ¶¶ 47-48 and Ex. 1 thereto.)

On the same date, February 27, 2020, at the **end** of the day of trial in the *qui tam* lawsuit, Wessely and other CDI investigators arrested Plaintiff as he was leaving the courthouse. (FAC ¶ 39.)  Plaintiff alleges that after he was arrested, one of the CDI investigators stated that he was told Plaintiff's bail would be $4 million, but the judge was "in the middle of signing" the warrant now and may change the bail amount. (*Id*. ¶ 41.) When asked which judge was reviewing the warrant, a CDI investigator stated he was not sure and that other unidentified persons were with the judge "right now." (*Id*.) The Complaint offers the **conclusion** that the arrest warrant was not signed until after the arrest was made, but alleges no supporting **facts**, other than these post-arrest statements by the other officer. (*Id*. ¶¶ 49, 41.)

Plaintiff alleges that Pozuelos had actually caused the judge to mark the arrest warrant as a "no bail" warrant by submitting a declaration which contained false statements and withheld material information. (FAC ¶¶ 50-54.) As a result, Plaintiff alleges that he was held in custody for five days. (*Id*. ¶ 54.)

Plaintiff also alleges that Pozuelos caused some of his assets to be frozen during the *qui tam* trial by submitting a declaration which contained false statements and withheld material information. (FAC ¶¶ 55-57.)

On March 2, 2020, at his arraignment, Plaintiff was released from custody. (FAC ¶ 58.)

Plaintiff alleges that, in light of the criminal proceedings, CDI attempted to settle the *qui tam* lawsuit, or obtain a mistrial or a stay. (*Id*. ¶¶ 59-60.) Plaintiff alleges that he refused, and the *qui tam* trial continued. (*Id*. ¶ 60.) On March 3, 2020, Plaintiff testified at the *qui tam* trial. (*Id*. ¶ 63.) The jury returned a verdict in Plaintiff's favor on March 16, 2020. (*Id*. ¶ 64.)

On July 26, 2021, the San Bernardino County District Attorney's Office
moved to dismiss its criminal complaint against Plaintiff. (FAC ¶ 63.)

Plaintiff alleges that he sustained injuries as a result of Defendants' conduct.
(FAC ¶ 64.)

## ARGUMENT

### I.    THE STANDARDS GOVERNING A MOTION TO DISMISS

A motion to dismiss under the Federal Rules of Civil Procedure, Rule 12(b)
(6), for failure to state a claim upon which relief may be granted is proper where
there is either a "lack of a cognizable legal theory or the absence of sufficient facts
allege under a cognizable legal theory." *Balistreri v. Pacifica Police Department*,
901 F.2d 696, 699 (9th Cir. 1990). A motion to dismiss should be granted if the
complaint fails to contain "enough facts to state a claim to relief that is plausible on
its face." *Bell Atlantic Corp. v. Twombly*. 550 U.S. 544, 570 (2007). "A claim has
facial plausibility when plaintiff pleads factual content that allows the court to draw
the reasonable inference that defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Allegations of material fact are accepted as true and construed in the light
most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d
336, 337-38 (9th Cir. 1996). However, the Court need not accept as true generic
legal conclusions, unwarranted deductions of fact or unreasonable inferences.
*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal*, 566
U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid
of 'further factual enhancement'" *Iqbal*, 566 U.S. at 678 (quoting *Twombly*, 550
U.S. at 577). "In sum, for a complaint to survive motion to dismiss, the non-
conclusory factual content, and reasonable inferences [drawn] from that content,
must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S.
Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009).

/ / /

Accordingly, the court may reject completely baseless allegations, including those which the court finds fanciful, fantastic, or delusional. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). The Court will "examine whether conclusory allegations follow from the description of the facts as alleged by the plaintiff." *Holden v. Hagogian*, 978 F.2d 1115, 1121 (9th Cir. 1992).

When a plaintiff has attached exhibits to the complaint, those exhibits may be considered in determining whether dismissal is proper without converting the motion to one for summary judgment. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

## II. THE STANDARDS GOVERNING A CLAIM UNDER 42 U.S.C. SECTION 1983.

The federal Civil Rights Act of 1871, 42 U.S.C. Section 1983, permits an individual to maintain a cause of action against a person acting under color of state law who violates the individual's constitutional rights. In pertinent part, the statute reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges and immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. Section 1983.

Thus, the threshold question in a Section 1983 action is whether the Defendant was "acting under color of" state law. The purpose of the statute is to allow redress for injuries inflicted by an official acting on behalf of the state government. *Monroe v. Pape*, 365 U.S. 167 (1961), *overruled on other grounds*, *Monell v. Department of Soc. Services*, 436 U.S. 658 (1978). Generally, a public employee acts under color

of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Wang v. Toyed,* 944 F.2d 476, 479 (9th Cir. 1991), quoting *West v. Adkins,* 487 U.S. 42, 50 (1988).

The second question arising in an action pursuant to Section 1983 is whether the alleged conduct violates the plaintiff's rights under the United States Constitution. In this case, Plaintiff alleges violations of his rights under the Fourth, Eighth and Fourteenth Amendments of the Constitution. (FAC ¶¶ 73, 80, 85, 92 and 100.) The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the places to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The relevant portion of the Eighth Amendment states, in pertinent part that "[e]xcessive bail shall not be required…". U.S. Const. Amend. VIII. The pertinent provision of the Fourteenth Amendment states that no State shall "deprive any person of life, liberty or property without due process of law …". U.S. Const. Amend. XIV.

## III. PLAINTIFF'S CIVIL RIGHTS CLAIMS AGAINST DEFENDANT JASON WESSELY ARE BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY

Plaintiff alleges two claims against Wessely for violating his constitutional rights, Conspiracy (FAC, First Claim) and Unreasonable Seizure of Person (FAC, Second Claim). However, because Wessely is a line officer who is only alleged to have made the arrest, and did not participate in the criminal investigation or the warrant application, he is entitled to qualified immunity as a matter of law.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based

on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Public officials -- including arresting officers -- are qualifiedly immune from suit under Section 1983 except where the violation should have been obvious to the official because the right at issue was "clearly established." *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941-42 (9th Cir. 2020) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). "To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658 (2012) (citations omitted).

An officer who acts pursuant to a warrant issued by a neutral magistrate is entitled to qualified immunity. As the Supreme Court observed in *Messerschmidt v. Millender*, 565 U.S. 535 (2012):

> Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in "objective good faith." *United States v. Leon*, 468 U.S. 897, 922-923, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). Nonetheless, under our precedents, the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness. Rather, we have recognized an exception allowing suit when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). The "shield of immunity" otherwise conferred by the warrant, 475 U.S. at 345, will be lost, for example, where the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence

/ / /

entirely unreasonable," *Leon*, 468 U.S., at 923 (internal quotation marks omitted).

Our precedents make clear, however, that the threshold for establishing this exception is a high one, and it should be. As we explained in *Leon*, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination" because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.*, at 921, 104 S. Ct. 3405, 82 L. Ed. 2d 677; see also *Malley*, 475 U.S., at 346, n. 9 ("It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable" (internal quotation marks and citation omitted).)

*Messerschmidt*, 565 U.S. at 546-48.

In this case, the only conduct by Wessely that is alleged in the Complaint is that he made the arrest of Plaintiff outside the courthouse, at the end of the day of trial in the *qui tam* lawsuit on February 27, 2020, and that he recorded it. (FAC ¶¶ 39-40.) Plaintiff does not allege, nor could he truthfully do so by amendment, that Wessely had any knowledge of, or participation in, the CDI investigation or the pursuit of a criminal complaint and an arrest warrant. Accordingly, Wessely had no basis upon which he could have believed that the arrest warrant, issued by a neutral magistrate, was so lacking in probable cause that no reasonable officer would execute it. The exception to qualified immunity, when acting upon a warrant, simply does not apply in this case.

As a line officer, executing a warrant, Wessely did not even have to read or see the warrant, and could accept the word of his superiors that they had a warrant and that it was valid. *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1028 (9th Cir. 2002); *Guerra v. Sutton*, 783 F.2d 1371, 1375 (9th Cir. 1986). The knowledge or conduct of other public officers, such as Pozuelos, cannot be imputed to Wessely to establish a lack or reasonable belief in the existence of probable cause on his part. See, e.g., *Manriquez v. Town of Superior*, No. CV-18-02026-PHX-DWL, 2020 WL 5544407 (D. Ariz. Sept. 16, 2020) (finding that a Section 1983 claim for an illegal search was barred by qualified immunity because the plaintiff did not establish that a specific officer's role went beyond mere participation in a search led by others).

During meet and confer, Plaintiff's counsel refused to dismiss Wessely from this action on the ground that Wessely did ***not*** arrest Plaintiff pursuant to a warrant. This argument is belied by the allegations of the Complaint. A warrant for the arrest of Plaintiff, signed by a neutral magistrate on February 27, 2020, is attached to the Complaint. (FAC, Ex. 2 thereto.) The Complaint further alleges that, at the ***end*** of the day of trial in the *qui tam* litigation, on the same date, February 27, 2020, Wessely and other CDI investigators arrested him as he was leaving the courthouse. (FAC ¶ 39.) The only reasonable inference that can be drawn from these allegations is that the warrant was issued before the arrest was made. It strains credulity to suppose that Wessely, who was not involved in the investigation of Plaintiff, decided to arrest him outside a courthouse one day, for no reason whatsoever. Plainly, Wessely believed that he was acting pursuant to a valid warrant, and is therefore entitled to qualified immunity.

Plaintiff's conclusion, or inference, that the warrant had not yet been issued when Wessely made the arrest, is not supported by sufficient factual allegations. Accordingly, the Court is not required to accept it as true. *Iqbal*, 566 U.S. at 678. Plaintiff's only factual allegation in support of his conclusion is that, after he was

arrested, one of the CDI investigators stated that he was told Plaintiff's bail would be $4 million, but the judge was "in the middle of signing" the warrant now and may change the bail amount. (*Id.* ¶ 41.) When asked which judge was reviewing the warrant, a CDI investigator stated he was not sure and that other unidentified persons were with the judge "right now." (*Id.*)

These factual allegations are insufficient to establish the conclusion that the arrest occurred before the warrant was issued because: (i) the alleged statements were not made by Wessely, (ii) the alleged statements of others do not impact Wessely's belief that he was acting on the basis of an issued warrant, (iii) the alleged statements do not indicate that the arrest of Plaintiff had not been approved by the magistrate, and (iv) the alleged statements, fairly construed, only concern whether the amount of bail had yet been decided by the magistrate. Plaintiff is asking the Court to make an "unwarranted deduction" or an "unreasonable inference," that is lacking in sufficient "factual enhancement." *Iqbal*, 566 U.S. at 678. Indeed, it would be nonsensical for Wessely to make such an arrest, resulting from a criminal investigation with which he was not involved, unless he had been told that the warrant had been issued by the magistrate.

Accordingly, pursuant to the doctrine of qualified immunity, the Court should dismiss the two civil rights claims against Wessely. Because Plaintiff cannot truthfully allege that Wessely did anything more than carry out the arrest called for by the warrant, leave to amend would be futile and should be denied.

## IV. PLAINTIFF'S STATE LAW CLAIM AGAINST DEFENDANT JASON WESSELY FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS TO ALLEGE EXTREME AND OUTRAGEOUS CONDUCT

Plaintiff alleges a third claim against Wessely, pursuant to state law, for intentional infliction of emotional distress. (FAC, Eighth Claim.) To state such a claim, a plaintiff must allege that the defendant intentionally or recklessly caused him to suffer "severe or extreme emotional distress" as a result of that defendant's

/ / /

"***extreme and outrageous conduct***." *Sarver v. Chartier*, 813 F. 3d 891, 906 (9th Cir. 2016) (emphasis added) (citing *Hughes v. Pair*, 46 Cal. 4th 1035 (Cal. 2009)).

The Complaint fails to allege "extreme and outrageous conduct" on the part of Wessely. The Eighth Claim, as to Wessely, merely alleges that he arrested Plaintiff on February 27, 2020, outside the courthouse, at the end of the day of trial in the *qui tam* lawsuit, and that he recorded the event. (FAC ¶¶ 113, 39.) Although Plaintiff argues that this arrest was not made pursuant to a warrant, as noted above, a signed warrant is attached to the Complaint. (FAC, Ex. 2 thereto.) As also noted, the Court is not required to accept as true Plaintiff's bizarre conclusion that the warrant had not been issued at the time of the arrest, because it is an "unwarranted deduction" or an "unreasonable inference," not supported by sufficient "factual enhancement." *Iqbal*, 566 U.S. at 678.

A line officer who believes that an arrest warrant has been issued by a neutral magistrate, and who makes the arrest called for by that warrant, has not engaged in "extreme and outrageous conduct," as a matter of law. Accordingly, the Court should also dismiss the Eighth Claim against Wessely, with prejudice.

## V.    PLAINTIFF'S STATE LAW CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS BARRED BY HIS FAILURE TO SUBMIT A TIMELY GOVERNMENT CLAIM

The claim for intentional infliction of emotional distress is alleged against both Pozuelos and Wessely. (FAC, Eighth Claim.)

California's Government Claims Act requires that a tort claim against a public entity or its employees for personal injury be presented to the California Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911, 945.4, 950-950.2. Presentation of a written claim and action on or rejection of the claim are conditions precedent to suit. *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 208-09, 69 Cal. Rptr. 210, 164 P.3d. 630 (Cal. 2007); *Mabe v. San Bernardino Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001). Where compliance with the California

1    Government Claims Act is required, the plaintiff has the burden of pleading and

2    proving compliance with its provisions. *Mangold v. California Pub. Utils.*

3    *Comm'n.*, 67 F.3d 1470, 1477 (9th Cir. 1995); *Hoffman v. Jourdan*, 2015 U.S. Dist.

4    LEXIS 143922 at *12 (E.D. Cal. October 22, 2015).

5        Although the Complaint alleges compliance with the Government Claims Act,

6    it states that Plaintiff submitted a government claim on January 13, 2022. (FAC ¶

7    11.) However, all of the allegedly extreme and outrageous conduct by Defendants,

8    as well as the severe emotional distress that allegedly resulted to Plaintiff, had

9    occurred by February 27, 2020. (FAC ¶¶ 113-115.) Plaintiff had six months from

10   that point in time to submit a government claim, yet failed to do so. The

11   government claim that Plaintiff finally did submit, on January 13, 2022, was over

12   one and a half years too late.

13       In meet and confer, Plaintiff denied that he was late in submitting his

14   government claim. He argued that his claim for intentional infliction of emotional

15   distress did not accrue until the criminal charges brought by the San Bernardino

16   County District Attorney's Office were dismissed on July 16, 2021 (FAC ¶ 63), and

17   that his government claim submission on January 13, 2022 therefore fell within the

18   six-month limitation period. This argument is untenable, however. A cause of

19   action accrues, for the purposes of a limitation period, on the date of the alleged

20   injury, or on the date when the plaintiff had reason to know of the alleged injury.

21   *Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir. 1998).  Plaintiff

22   knew on February 27, 2020 that he had been arrested, and believed that it had been

23   done without probable cause and with the intent to interfere with his constitutional

24   rights. Whatever emotional distress he may have sustained manifested itself then.

25   Plaintiff knew everything he needed to know to bring a claim for intentional

26   infliction of emotional distress against Defendants in late February of 2020. The

27   later dismissal of the criminal charges against him, on January 16, 2021, was totally

28   irrelevant to the accrual of his claim for intentional infliction of emotional distress.

It would be futile for the Court to grant Plaintiff leave to amend on this issue. Plaintiff cannot contradict his own factual allegations that Defendants participated in a malicious prosecution on February 27, 2020 and that he did not file a government claim until January 13, 2022. Nor can he allege that he will pursue relief from the filing of a late government claim, because an application for such relief must be made ***no later than*** one year after the injury occurred. Gov't Code § 911.4 (b). More than one year has already elapsed since Defendants' alleged conduct and Plaintiff's alleged injury. Late claim relief is no longer available.

## VI. THE COURT SHOULD DISMISS PLAINTIFF'S SECTION 1983 CLAIM FOR "DELIBERATE FABRICATION OF EVIDENCE AND WITHHOLDING OF MATERIAL INFORMATION" BECAUSE IT IS DUPLICATIVE

The Complaint alleges that Pozuelos deliberately fabricated evidence and withheld material information, in violation of Plaintiff's rights under the Fourteenth Amendment. (FAC, Fifth Claim.) However, the Fourteenth Amendment does not state that a person has a right to be free from "deliberate fabrication of evidence and withholding of material information." Although the Fourteenth Amendment guarantees "due process of law," the cases interpreting that right do not establish a separate and independent right to be free from "deliberate fabrication of evidence or withholding of material information." Rather, the right to be free from malicious prosecution pursuant to the Fourteenth Amendment, including unreasonable seizures of person or property under the Fourth Amendment, govern allegations of fabricated evidence and withheld information. Plaintiff has separately alleged a Section 1983 claim for malicious prosecution (FAC, Sixth Claim.) The Sixth Claim incorporates by reference, and then re-states, the alleged fabrication of evidence and withholding of evidence by Pozuelos. (FAC ¶¶ 96-97). The Fifth Claim, for "Deliberate Fabrication of Evidence and Withholding of Material Information," does not allege any new or different instances. Accordingly, the Fifth Claim is superfluous. It is either duplicative of the Sixth Claim, or is subsumed within it. Maintenance of the Fifth Claim may confuse the legal standard that should be

1  applied to Pozuelos' conduct. Since the Fourteenth Amendment and the cases

2  interpreting it do not recognize a separate and independent right to be free from

3  "fabrication of evidence or withholding of material information," the Court should

4  dismiss the Fifth Claim.

5  **VII. THE COURT SHOULD DISMISS THE SECTION 1983 CLAIM FOR
   UNREASONABLE SEIZURE OF PERSON BECAUSE IT IS SUBSUMED**

6  **WITHIN THE SECTION 1983 CLAIM FOR MALICIOUS PROSECUTION**

7          The Complaint alleges that Defendants violated his constitutional right under

8  the Fourth Amendment by arresting him without probable cause. (FAC, Second

9  Claim.) Where an arrest occurs after the filing of criminal charges, as Plaintiff

10 alleges here (FAC ¶ 42), the arrest necessarily took place pursuant to legal process

11 and therefore was not a "false" arrest. *See Wallace v. Kato*, 549 U.S. 384, 389

12 (2007). As the court explained in *Miller v. Schmitz*, No. 1:12-CV-00137-LJO, 2012

13 U.S. Dist. LEXIS 64526, 2012 WL 1609193 (E.D. Cal. May 8, 2012):

14          Plaintiff alleges that he was placed under arrest only after a criminal

15          complaint and a warrant were issued for his arrest. In other words,

16          Plaintiff alleges that his arrest was the result of legal process. Under such

17          circumstances, there can be no claim for false arrest; false arrest consists

18          of an arrest made in the absence of legal process. *Wallace v. Kato*, 549

19          U.S. 384, 389, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007); *Blaxland v.*

20          *Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1204-06 (9th

21          Cir. 2003). Where, as here, the arrest is made after legal process has been

22          initiated, any challenge to the arrest is subsumed by a claim for malicious

23          prosecution.

24 *Miller,* 2012 WL 1609193 at ** 4-5. *Accord Beck v. City of Upland*, 527 F.3d 853,

25 861 n.7 (9th Cir. 2008) (noting that the claim for "false arrest" was actually a claim

26 for malicious prosecution because the plaintiff was arrested only after the

27 prosecutor had filed a criminal complaint against the plaintiff); *Wilkins v. DeReyes*,

28 528 F.3d 790, 798-99 (10th Cir. 2008) (construing the plaintiff's challenge to

detention pursuant to an arrest warrant as a claim for malicious prosecution and not false arrest).

The arrest alleged in the Complaint took place pursuant to legal process (*i.e.* the February 27, 2020, filing of the criminal complaint by District Attorney for San Bernardino County). Thus, Plaintiff's Section 1983 claim predicated on a false arrest in violation of the Fourth Amendment is "subsumed by a claim for malicious prosecution." *Miller*, 2012 WL 1609193, at \*4 (citing *Wallace*, 549 U.S. at 389-90). Because leave to amend would be futile, the Court should dismiss the Second Claim without leave to amend. See, e.g., *Jones v. Keitz*, 2017 U.S. Dist. LEXIS 125492, 2017 WL 3394121, at \*4 (dismissing similar false arrest claims on grounds that they are "subsumed" by claims for malicious prosecution).

## VIII.  THE COURT SHOULD DISMISS PLAINTIFF'S CONSPIRACY CLAIM BECAUSE IT IS NOT PLEADED WITH THE REQUIRED SPECIFICITY

The Complaint sets forth a claim for a conspiracy to violate Plaintiff's constitutional rights, in violation of 42 U.S.C. Section 1983. (FAC, First Claim.)

A plaintiff may allege a civil conspiracy under 42 U.S.C. Section 1983 or 42 U.S.C. Section 1985. *Dyess ex rel. Dyess v. Tehachapi Unified Sch. Dist.*, 2010 U.S. Dist. LEXIS 82659, 2010 WL 3154013, at \*8 (E.D. Cal. Aug. 6, 2010) (citing *Dixon v. City of Lawton*, 898 F.2d 1443, 1449, n. 6 (10th Cir. 1990); *Klingele v. Eikenberry*, 849 F.2d 409, 413 (9th Cir. 1988); *Cohen v. Norris*, 300 F.2d 24, 27-28 (9th Cir. 1962); *Hopper v. Hayes*, 573 F.Supp. 1368, 1371 (D. Idaho 1983)). A conspiracy under 42 U.S.C. Section 1983 is "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law." *Dyess*, 2010 U.S. Dist. LEXIS 82659, 2010 WL 3154013, at \*8 (quoting *Dixon*, 898 F.2d 1443, 1449, n. 6.)

In the context of conspiracy claims brought pursuant to Section 1983, a complaint must allege facts to support the existence of a conspiracy among the defendants. *Buckey v. Cty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).

Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. *Sykes v. California*, 497 F.2d 197, 200 (9th Cir. 1974).

Conspiracy allegations must be more than mere conclusory statements. *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1979) ("[M]ore than vague conclusory allegations are required to state a [conspiracy] claim [under section 1983]"); *Lockary v. Kayfetz*, 587 F.Supp. 631, 639 (N.D. Cal. 1984) ("Allegations of conspiracies must be supported by material facts, not merely conclusory statements."). "To establish a conspiracy, a plaintiff must demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights." *Mendocino Environmental Center v. Mendocino Cty.*, 192 F.3d 1283, 1301 (9th Cir. 1999). "The defendants must have, by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage." *Id.* The agreement need not be overt and may be inferred on the basis of circumstantial evidence, such as a showing that the alleged conspirators committed acts unlikely to have been undertaken without an agreement. *Id.* "[A] conclusory allegation of agreement at some unidentified point does not supply adequate facts to show illegality." *Twombly*, 550 U.S. at 557. A plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 556. Allegations that identify "the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose," and allegations that identify "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights," both have been held to be sufficiently particular to properly allege a conspiracy. *Dyess*, 2010 U.S. Dist. LEXIS 82659, 2010 WL 3154013, at *8 (citations omitted).

The Complaint does not allege sufficiently specific facts in support of the allegations that Defendants conspired to deprive Plaintiff of his civil rights. The Complaint does not contain any factual allegations showing an agreement or

"meeting of the minds" between Defendants to deprive Plaintiff of his civil rights. See *Iqbal*, 556 U.S. at 676 (requirement that plaintiff allege facts showing plausible claim for relief "asks for more than a sheer possibility that a defendant has acted unlawfully"; complaint pleading "facts that are 'merely consistent with' a defendant's liability ... 'stops short of the line between possibility and plausibility of 'entitlement to relief'''') (citation omitted). There are no facts supporting how a conspiracy was formed or explaining how Plaintiffs' injuries resulted from a conspiracy. Instead, Plaintiff provides little more than a "mere allegation of conspiracy without factual specificity." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).

To state a claim, Plaintiff must plead facts showing which defendants conspired, when and where they conspired, how they conspired, what specific acts or omissions they undertook in furtherance of the conspiracy, and how the conspiracy led to a deprivation of his constitutional rights. *Powell v. Cty. of Solano*, 2020 U.S. Dist. LEXIS 70226, 2020 WL 1923169, at *7-8 (E.D. Cal. Apr. 21, 2020) (citing *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997)). Plaintiffs' broad allegations that some or all of the defendants conspired with one other are insufficient. Accordingly, the Court should dismiss the First Claim for Conspiracy.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For each of the foregoing reasons, Defendants request that the Court grant the Motion in its entirety, and dismiss the First Amended Complaint.


Dated:  June 15, 2022                                  Respectfully submitted,

ROB BONTA
Attorney General of California
ELIZABETH S. ANGRES
Supervising Deputy Attorney General


/s/ Thomas M. McMahon

THOMAS M. MCMAHON
Deputy Attorney General
*Attorneys for Defendants Lori Pozuelos and Jason Wessely*

19