Stephen G. Larson (SBN 145225)
slarson@larsonllp.com
Jerry A. Behnke (SBN 180462)
jbehnke@larsonllp.com
Daniel R. Lahana (SBN 305664)
dlahana@larsonllp.com
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, CA 90071
Tel.:  (213) 436-4888
Fax:  (213) 623-2000

Attorneys for Plaintiff
JEFF T. GRANGE, M.D.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| JEFF T. GRANGE, M.D.<br><br>Plaintiff,<br><br>vs.<br><br>LORI POZUELOS, in her individual and official capacity; JASON WESSELY, in his individual and official capacity; and DOES 1-10, individuals.<br><br>Defendants. | CASE NO. 5:22-cv-00340 DSF (AGRx)<br><br>Judge:  Hon. Dale S. Fischer<br><br>**PLAINTIFF JEFF GRANGE, M.D.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: July 25, 2022<br>Time: 1:30 p.m.<br>Courtroom: 7D<br><br>Action Filed: 2/24/2022 |

LARSON
LOS ANGELES

FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. BACKGROUND | 2 |
| III. LEGAL STANDARD | 4 |
| IV. ANALYSIS | 5 |
|     A. The Claims Against Wessely Are Sufficiently Pled | 5 |
|         1. Qualified Immunity Does Not Apply to Defendant Wessely | 5 |
|         2. Intentional Infliction of Emotional Distress is Properly Alleged Against Wessely | 9 |
|         3. Plaintiff's State Law Claims Are Timely | 10 |
|     B. Dr. Grange's Claims Against Defendant Pozuelos Are Sufficiently Pled | 11 |
|         1. The FAC Sufficiently Alleges Claims Against Pozuelos For Deliberate Fabrication of Evidence | 11 |
|         2. The Unreasonable Seizure Of Person Claim Is Sufficiently Pled And Not Subsumed By The Malicious Prosecution Claim | 13 |
|         3. The Conspiracy Claim is Sufficiently Pled | 13 |
| V. CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal* (2009)
　556 U.S. 662 .................................................................................................4, 14

*Ayers v. United States*,
　277 F.3d 821 (6th Cir. 2002) ............................................................................12

*Barker v. Riverside Cnty. Off. of Educ.*,
　584 F.3d 821 (9th Cir. 2009) ..............................................................................7

*Beck v. City of Upland*,
　527 F.3d 853 (9th Cir. 2008) ............................................................................13

*Davis v. Powell*,
　901 F.Supp.2d 1196 (S.D. Cal. 2012) ..............................................................14

*Devereaux v. Abbey*,
　263 F.3d 1070 (9th Cir. 2001) ..........................................................................12

*Dubner v. City & Cnty. of San Francisco*,
　266 F.3d 959 (9th Cir. 2001) ........................................................................6, 13

*Emmert v. County of Sonoma*,
　836 F. Supp. 715 (N.D.Cal.1993) .....................................................................11

*Foster v. City of Indio*,
　908 F.3d 1204 (9th Cir. 2018) ............................................................................5

*Freeman v. City of Santa Ana*,
　68 F.3d 1180 (9th Cir. 1995) ............................................................................12

*Gilker v. Baker*,
　576 F.2d 245 (9th Cir. 1978) ..............................................................................6

*Guerra v. Sutton*,
　783 F.2d 1371 (9th Cir. 1986) ............................................................................9

*Harlow v. Fitzgerald*,
　457 U.S. 800 (1982) ...........................................................................................5

*Harmston v. City & County of San Francisco*,
 627 F.3d 1273 (9th Cir. 2010) ................................................................... 12

*Jones v. Keitz*,
 No. 116CV01725LJOEPG, 2017 WL 3394121
 (E.D. Cal. Aug. 8, 2017) ........................................................................... 13

*Kisela v. Hughes*,
 138 S. Ct. 1148 (2018) (per curiam) ........................................................... 5

*Martin v. Duffie*,
 463 F.2d 464 (10th Cir. 1972) ..................................................................... 6

*McCalden v. California Library Ass'n*,
 955 F.2d 1214 (9th Cir. 1990) ................................................................... 12

*Messerschmidt v. Millender*,
 565 U.S. 535 (2012) .................................................................................... 8

*Miller v. Schmitz*,
 No. 1:12-CV-00137-LJO, 2012 WL 1609193
 (E.D. Cal. May 8, 2012) ........................................................................... 13

*Ramirez v. Butte-Silver Bow County*,
 298 F.3d 1022 (9th Cir. 2002) ..................................................................... 8

*Sarver v. Chartier*,
 813 F. 3d 89 (2016) ................................................................................... 10

*Shroyer v. New Cingular Wireless Servs., Inc.*,
 622 F.3d 1035 (9th Cir. 2010) ..................................................................... 4

*Trimble v. City of Santa Rosa* (9th Cir. 1995)
 49 F.3d 583 ............................................................................................... 11

*Wilson v. Hewlett–Packard Co.*,
 668 F.3d 1136 (9th Cir. 2012) ..................................................................... 4

*Wood v. Moss*,
 572, 41 U.S. 744 (2014) .............................................................................. 5

**California Cases**

*Kraslawsky v. Upper Deck Co.*,
 56 Cal.App.4th 179 (1997) ......................................................................... 9

LARSON
LOS ANGELES

iii
FIRST AMENDED COMPLAINT

*Pool v. City of Oakland*,
 42 Cal. 3d 1051 (1986) .................................................................................... 10

*Pugliese v. Sup.Ct. (Pugliese)*,
 146 Cal.App.4th 1444 (2007) ......................................................................... 10

**Federal Statutes**

42 U.S.C.
 § 1983 ..................................................................................................... *passim*

Government Claims Act ...................................................................................... 11

**California Statutes**

California Government Code
 § 945.3 ...................................................................................................... 5, 10

**Other Authorities**

Fourth Amendment ............................................................................................... 13

Fourteenth Amendment ........................................................................................ 11

Fed. R. Civ. P. 8(d)(2) .......................................................................................... 12

## I. INTRODUCTION

While Plaintiff Jeff Grange, M.D. ("Plaintiff" or "Dr. Grange") was in the middle of a civil jury trial against the California Department of Insurance ("CDI"), CDI investigators, including Defendants Lori Pozuelos and Jason Wessely (collectively "Defendants"), conspired to retaliate against him by unlawfully arresting him without a warrant and without probable cause and throwing him in jail without the ability to post bail right before he was set to testify in the civil case. Prior to the arrest, Dr. Grange had been prevailing in the civil trial. Indeed, CDI's own witnesses had offered exculpatory testimony favorable to Dr. Grange. Thus, Defendants unlawfully arrested Dr. Grange just outside the courthouse and caused him to be held without bail to retaliate against him and to prevent him from exercising his constitutional rights to access the courts and defend himself in the civil trial. To that end, Defendant Pozuelos pursued a baseless investigation against Dr. Grange, deliberately withheld and fabricated evidence, caused a baseless criminal complaint to be filed, and caused Dr. Grange to be arrested and held without bail, all in violation of Dr. Grange's constitutional rights.

Defendants now selectively quote the First Amended Complaint ("FAC") and improperly request the Court accept speculation and inferences in their favor. To the contrary, the FAC asserts more than sufficient facts and claims for relief under each of the various causes of action. Defendants' Motion to Dismiss should be denied in its entirety.

***First,*** the FAC clearly alleges that Defendant Wessely unlawfully arrested Dr. Grange, without probable cause and without a warrant. Thus, qualified immunity does not apply.

***Second***, the state law claim for intentional infliction of emotional distress sufficiently alleges that Defendants' unlawful arrest of Dr. Grange, and misconduct that caused the filing of a baseless criminal complaint against Dr. Grange, was outrageous conduct and properly pleads a claim for intentional infliction of

emotional distress.  Moreover, the state law claim is timely.  Dr. Grange had six months from July 16, 2021—the date on which the baseless criminal case was dismissed—to give notice to the State, which he did.

*Third*, Dr. Grange's § 1983 claims for Deliberate Fabrication of Evidence and Unreasonable Seizure of Person allege distinct and clear constitutional violations.  Defendants incorrectly argue, without any authority, that these claims are "subsumed" or "duplicative" of Dr. Grange's other claims.  Indeed, Dr. Grange is permitted to plead alternate theories for relief.

*Fourth*, the conspiracy claim is pled with sufficient factual context and factual allegations to state a claim for conspiracy.

Defendants' Motion to Dismiss should be denied in its entirety.

## II. BACKGROUND

In July 2016, CDI began an investigation of Dr. Grange for alleged insurance fraud related to claims submitted by Symons Ambulance to insurance companies for air and ground ambulance services.  (FAC ¶ 31.)  At that time, Dr. Grange was President and a shareholder of Symons Ambulance.  (FAC ¶ 18.)  CDI's investigation of Dr. Grange was conducted by Defendant Pozuelos.  (FAC ¶ 31.)  In July 2017, CDI filed a civil *qui tam* complaint against Dr. Grange alleging that he had submitted fraudulent claims for air ambulance services to insurance companies.  (FAC ¶ 34.)  CDI alleged that Symons Ambulance had used third-party helicopters when it conducted air rescues.  CDI argued that because Symons Ambulance did not own or lease the helicopters, the bills for air ambulance services were fraudulent.  (FAC ¶ 29.)

In February 2020, jury trial began in the civil *qui tam* matter.  (FAC ¶ 36.)  Dr. Grange personally attended the trial.  Early in the trial, the State's own witnesses provided testimony favorable to Dr. Grange and that refuted CDI's core allegations.  (FAC ¶ 37.)  Indeed, it was clear before the defense even started presenting its case that the CDI's claims against Dr. Grange were baseless, that the principal allegations

LARSON
LOS ANGELES

2
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

upon which the complaint was predicated were false, and that Dr. Grange was prevailing. (*Id.*)

On February 27, 2020, which was the court day before Dr. Grange was set to testify in the *qui tam* trial, Defendants unlawfully arrested Dr. Grange without a warrant and without probable cause as Dr. Grange and his civil attorney were leaving the courthouse. (FAC ¶ 39.) That same day, Defendant Pozuelos also caused a baseless criminal complaint to be filed against Dr. Grange that included the exact same allegations contained in the civil *qui tam* complaint. (FAC ¶ 42.) Defendant Pozuelos also unlawfully caused Dr. Grange to be held in jail without the ability to post bail and caused Dr. Grange's assets to be frozen. To that end, Defendant Pozuelos presented false and misleading information to, and knowingly withheld material exculpatory evidence from, the District Attorney and the court, including the exculpatory testimony that had been presented in the *qui tam* trial. (FAC ¶ 44.)

CDI knew its case against Dr. Grange was doomed from the start. (FAC ¶ 37.) The court day before Dr. Grange was to testify, Pozuelos coordinated with Wessely, another CDI investigator, to arrest Dr. Grange as he left the courthouse. (FAC ¶¶ 39, 40.) It was an unlawful arrest. Defendants did not have probable cause or a signed warrant. As alleged in the FAC, after arresting Dr. Grange, a CDI investigator told Dr. Grange that they did not know what the bail amount would be because the judge was "in the middle of signing" the warrant. In other words, Defendant Wessely knew that no arrest warrant had been issued at the time of the arrest. (FAC ¶¶ 41, 49.) Moreover, as alleged in the FAC, the subsequently issued arrest warrant was invalid because it was not supported by any facts establishing probable cause. (FAC ¶¶ 46-47.)

In connection with the application for the arrest warrant, Defendant Pozuelos also signed a declaration in support of bail increase even though there was no evidence to suggest that Dr. Grange was a flight risk and, in fact, prior to the arrest,

had been attending court daily. (FAC ¶ 50.) Based on false information contained in the declaration and on Pozuelos' omission of material exculpatory evidence, the court issued a "no bail" warrant after Defendant Wessely had already arrested Dr. Grange. (FAC ¶ 54.) As a result, Dr. Grange was held in jail for approximately five days without the ability to post bail. During that time, he was not able to meet with his civil attorneys, review discovery, and prepare for the civil trial. (FAC ¶ 61.) At Dr. Grange's arraignment on March 2, 2020, a different judge released him on his own recognizance after hearing argument from counsel. (FAC ¶ 58.) There was no valid reason to seek a bail increase or "no bail" warrant. Rather, the sole reason Pozuelos did so was to retaliate against and intimidate Dr. Grange right before he testified in the civil trial, and to hinder his access to the courts and his ability to defend himself. (FAC ¶¶ 50-53.)

The next court day after Plaintiff's arrest, CDI attempted to capitalize on its unlawful arrest of Dr. Grange by obtaining a mistrial and stay of the civil case. The court, however, declined to stay the case and Dr. Grange ultimately prevailed in the civil *qui tam* trial. (FAC ¶ 107.) On July 16, 2021, the San Bernardino County District Attorney's Office moved to dismiss the criminal complaint against Dr. Grange. (FAC ¶ 63.)

## III. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The court must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff. *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 679.

Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights. 42 U.S.C. § 1983. Qualified immunity shields § 1983 defendants "[f]rom liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

## IV. ANALYSIS

### A. The Claims Against Wessely Are Sufficiently Pled

There are three causes of action against Wessely: Conspiracy, Unreasonable Seizure of Person, and Intentional Infliction of Emotional Distress. Each claim is sufficiently pled, and qualified immunity does not apply. Furthermore, the claim for intentional infliction of emotional distress is timely because California Government Code section 945.3 tolled the statute of limitations while charges were pending against Plaintiff. Thus, the statute of limitations was tolled until July 16, 2021, when the criminal complaint against Dr. Grange was dismissed.

#### 1. Qualified Immunity Does Not Apply to Defendant Wessely

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)); *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018). "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss*, 572, 41 U.S. 744, 757 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

In order to prove a constitutional violation for a warrantless arrest, the plaintiff must show that he was arrested without a warrant and without probable

cause.  "Although the plaintiff bears the burden of proof on the issue of unlawful arrest, [he] can make a *prima facie* case simply by showing that the arrest was conducted without a valid warrant."  *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001); *see Gilker v. Baker*, 576 F.2d 245, 246 (9th Cir. 1978) ("Once a warrantless arrest is established, the burden of going forward with the evidence passes to the defendant."); *see also*, *Martin v. Duffie*, 463 F.2d 464, 467 (10th Cir. 1972) (plaintiff who has been arrested without a warrant "need only present a *prima facie* case of illegal arrest in order to sustain his burden").

  Here, the FAC plainly and sufficiently alleges that Defendant Wessely violated Dr. Grange's clearly established constitutional rights by arresting him (1) without a valid warrant; and (2) without probable cause.  Specifically, as Dr. Grange left the *qui tam* trial, right outside the courthouse and in full view of other persons coming and going from the courthouse, including potentially the jurors in the *qui tam* case, Defendant Wessely arrested Dr. Grange without a warrant and without probable cause.  (FAC ¶ 39.)

  Defendants' Motion does not even argue that there was probable cause.  Instead, Defendant merely points out that a judge signed a warrant at some point.  However, the FAC clearly alleges that Defendant Wessely did not have an arrest warrant at the time of the arrest.  (FAC ¶¶ 46-49.)  As alleged in the FAC, Wessely recorded the arrest on a digital recorder. (FAC ¶ 39.)  The recording shows that during the arrest, neither Wessely nor the other CDI investigator showed Dr. Grange an arrest warrant, nor did they state that they were in possession of a warrant.  To the contrary, they told Dr. Grange that they did not know the bail amount—they speculated it would be around $4 million—because the judge had not signed the warrant.  They further stated that they believed the judge was "in the middle of signing" the warrant.  (FAC ¶ 41.)  This conversation took place after Defendant Wessely had already arrested Dr. Grange.  Moreover, that Wessely and his colleague incorrectly believed bail would be set at $4 million—it was ultimately a

"no bail" warrant based on Pozuelos' false and misleading information and material omissions—shows they knew they did not have an arrest warrant—only that they hoped to get one later.

Defendants' Motion glosses over the CDI investigator's admission that they did not have an arrest warrant. Defendants speculate that because the arrest took place at the end of the trial day, the judge must have already signed the warrant. (Mot. 10:19-20.) But that speculation is unfounded, contrary to the CDI's investigator's own admission, and requires inferences against Plaintiff—which is improper in a motion to dismiss. The court "must draw inferences in the light most favorable to the plaintiff." *Barker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). The timing of the arrest *supports* Dr. Grange's allegations that Defendants arrested him without a warrant because Defendants knew Dr. Grange would be leaving the civil trial at a certain time, right before a holiday weekend, and right before he was set to testify. Defendants intended to retaliate and intimidate Dr. Grange before his testimony and to deny Dr. Grange his constitutional right to access the court and defend himself, so they arrested him at the courthouse knowing he would spend at least the holiday weekend in jail. Defendants' argument that because they *later* received an arrest warrant the arrest must have been valid overlooks the CDI investigator's statements, and it overlooks the CDI investigators' actions at the time of the arrest.

Defendants' Motion offers speculative facts not included in the FAC to argue reasons why Wessely arrested Dr. Grange and why qualified immunity applies to Wessely. While that question will be further addressed during discovery, the FAC clearly alleges that Defendant Wessely arrested Dr. Grange without a valid warrant and without probable cause. The FAC further alleges that the place and timing of the arrest, along with CDI's involvement in the underlying civil case shows Wessely's involvement in the conspiracy to deprive Dr. Grange of his constitutional rights. (FAC ¶¶ 67-68.)

The cases Defendant Wessely relies on to argue for qualified immunity are factually distinct because in each of those cases, the defendant officer *had a signed warrant before arresting the plaintiff or executing a search*. Defendant relies heavily on *Messerschmidt v. Millender*, 565 U.S. 535 (2012). In *Messerschmidt*, however, the defendant detective actually had a signed warrant before conducting a search. *Id.* at 544. The issue in that case was that the defendant's search went beyond the scope of the warrant. The Supreme Court held qualified immunity applied because "[i]t would not be entirely unreasonable for an officer to believe that there was probable cause to search for all firearms and firearm-related materials under the circumstances set forth in the warrant." *Id.* at 549. *Messerschmidt* is distinguishable from the allegations in the FAC because Wessely did not have a warrant, or probable cause, at the time he arrested Plaintiff.

The same is true as to *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1028 (9th Cir. 2002). In that case, the plaintiff sued officers who executed a search warrant, claiming that the warrant was defective. The defendants there had a signed, albeit defective, search warrant prior to executing a search of the plaintiff's home. *Id*. at 1025. Here, however, Defendant Wessely knew that there was no signed warrant at the time of the arrest. Moreover, the Ninth Circuit explained in *Ramirez* that only "line officers" may rely on representations from "superiors" that there is a valid warrant. *Id*. at 1028. Officers responsible for leading the execution of the warrant, on the other hand, "must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not defective in some obvious way." *Id*. at 1027. Here, the FAC does not allege that Wessely was merely a "line officer." Nor does the FAC allege that any "superior" told Wessely before the arrest that a valid warrant had been issued. To the contrary, Wessely was responsible for leading the arrest of Dr. Grange and, therefore, was required to review the warrant himself to ensure that it was valid and actually authorized the arrest. Of course, he could not have done so because, as alleged in the FAC, the

warrant had not even been signed before he made the arrest.

Interestingly, Defendants also cite to *Guerra v. Sutton*, 783 F.2d 1371, 1375 (9th Cir. 1986). In that case, the Ninth Circuit actually found that officers were not entitled to qualified immunity when they made no inquiry as to the scope of a search warrant after relying on the representations of another officer who told them that a search warrant "would be obtained." *Id*. at 1375.

The cases cited by Defendants actually support the claims in the FAC. Here, because Defendants did not have a valid warrant, or probable cause, when they arrested Dr. Grange, qualified immunity does not apply, and Defendants' Motion to Dismiss should be denied.

### 2. Intentional Infliction of Emotional Distress is Properly Alleged Against Wessely

The FAC clearly alleges the elements required to state a claim for intentional infliction of emotional distress, including Defendants' outrageous conduct of unlawfully arresting Dr. Grange and unlawfully causing the filing of a baseless criminal complaint. Intentional infliction of emotional distress is committed when defendants' conduct is "intentionally intrusive and outrageous and has a severe and traumatic effect on the plaintiff's emotional tranquility." *Kraslawsky v. Upper Deck Co.*, 56 Cal.App.4th 179, 194 (1997). The FAC alleges that Defendants unlawfully arrested Dr. Grange without probable cause or a valid warrant. (FAC ¶ 113; "Defendants Pozuelos and Wessely and DOES 1-10, unlawfully and intentionally arrested or caused the arrest of Dr. Grange without a valid warrant and without probable cause and intentionally caused the filing of the baseless criminal action against Dr. Grange.") The FAC further alleges that Defendants' conduct was callous, depraved, extreme and outrageous and "was done with the intent of causing, or reckless disregard of the probability of causing, emotional distress to Dr. Grange." (*Id.*) Finally, the FAC alleges that "Dr. Grange suffered severe and extreme emotional distress which was caused by the intentionally intrusive,

outrageous, and traumatic behavior of Defendants Pozuelos and Wessely and DOES 1-10." (FAC ¶ 114.) Thus, the claim for intentional infliction of emotional distress is properly pled.

The allegation is further supported by the other facts alleged in the FAC. Wessely waited for Dr. Grange to leave civil court the court day before he was set to testify. Wessely arrested Dr. Grange, knowing he did not have a warrant and did not have probable cause to do so, and in full view of others at the court house, including potentially the jurors in the pending *qui tam* trial. (FAC ¶ 39.) These allegations plainly state outrageous conduct sufficient to establish intentional infliction of emotional distress. *See Pool v. City of Oakland*, 42 Cal. 3d 1051, 1175 (1986) (unlawful arrest valid basis for intentional infliction of emotional distress claim). In fact, Defendants cite no authority holding that such an arrest is *not* outrageous. Instead, Defendants rely on *Sarver v. Chartier*, 813 F. 3d 89 (2016), which briefly analyzes how a fictional screenplay of the plaintiff's war time experiences did not amount to outrageous conduct. Obviously that is not the case here. As such, the state law claim for intentional infliction of emotional distress is sufficiently alleged.

### 3. Plaintiff's State Law Claims Are Timely

Next, Defendants argue that the state law claims are barred as untimely. The conduct underlying the intentional infliction of emotional distress claim includes the arrest and filing of the baseless criminal complaint. (FAC ¶ 113.) The outrageous conduct continued until the complaint was dismissed on July 16, 2021. The statute of limitations does not begin to run "until the date of the last injury or when the tortious acts cease." *Pugliese v. Sup.Ct. (Pugliese),* 146 Cal.App.4th 1444, 1452 (2007). The FAC alleges that Dr. Grange "suffered severe and lasting emotional distress, pain, and suffering." (FAC ¶ 64.) Thus, the statute of limitations did not begin to run until July 16, 2021.

But even if the statute of limitations did begin when Dr. Grange was initially arrested, his claims are still timely because California Government Code section

945.3 provides that "[n]o person charged…may bring a civil action for money or damages against a peace officer…based upon conduct of the peace officer relating to the offense for which the accused is charged… **Any applicable statute of limitations for filing and prosecuting these actions shall be tolled during the period that the charges are pending before a superior court**."  (Emphasis added.)  This section applies to both state and federal civil rights actions.  *Emmert v. County of Sonoma*, 836 F. Supp. 715, 716 (N.D.Cal.1993); *Trimble v. City of Santa Rosa*, (9th Cir. 1995) 49 F.3d 583, 585.

Here, the criminal charges against Dr. Grange were pending from February 27, 2020 until July 16, 2021, when the criminal complaint was dismissed.  (FAC ¶ 63.)  Thus, Dr. Grange had six months from July 16, 2021, i.e. until January 16, 2022, to provide notice to California under the Government Claims Act.  Dr. Grange provided proper notice to the state on January 13, 2022, which was before the six month deadline.  (FAC ¶ 11.)  As such, Dr. Grange's state law claims are timely.

### B. Dr. Grange's Claims Against Defendant Pozuelos Are Sufficiently Pled

#### 1. The FAC Sufficiently Alleges Claims Against Pozuelos For Deliberate Fabrication of Evidence

Dr. Grange's Fifth Cause of Action against Defendant Pozuelos for Deliberate Fabrication of Evidence is sufficiently pled and should not be dismissed.

Without any authority, Defendants argue that Dr. Grange's "deliberate fabrication of evidence" claim under the Fourteenth Amendment is "subsumed" or "repetitive" of his malicious prosecution claim. (Mot. 14:18-21.)  Defendants also myopically argue that the Fourteenth Amendment "does not state that a person has a right to be free from 'deliberate fabrication of evidence'…" (Mot. 14:13-15.)  Defendants are incorrect.  Case law clearly establishes that under the Fourteenth Amendment, individuals have the right not to be subjected to criminal charges based on deliberately fabricated evidence:  "[T]here is a clearly established constitutional

due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey,* 263 F.3d 1070, 1074–1075 (9th Cir. 2001). Defendants fail to cite any authority limiting the number of constitutional violations a plaintiff may allege, let alone that a "deliberately fabricated evidence" constitutional claim is "subsumed" within a malicious prosecution claim.

First, the two claims are different with different elements. The elements of the deliberate fabrication of evidence claim are that Defendant either "deliberately fabricated evidence that was used to criminally charge or prosecute the plaintiff;" or "continued her investigation of the plaintiff despite the fact that she knew that the plaintiff was innocent, or was deliberately indifferent to the plaintiff's innocence, and the results of the investigation were used to criminally charge or prosecute the plaintiff;" or "used techniques that were so coercive and abusive that she knew, or was deliberately indifferent, that those techniques would yield false information that was used to criminally charge or prosecute the plaintiff." Ninth Circuit Model Civil Jury Inst. No. 9.33 (2017). The elements for malicious prosecution are different: "To maintain a § 1983 action for malicious prosecution, a plaintiff must show that 'the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] [a] specific constitutional right.'" *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Thus, a deliberate fabrication of evidence claim in not "subsumed" within or duplicative of a malicious prosecution claim.

Second, in any event, a complaint may allege causes of action "alternatively or hypothetically, either in a single count … or in separate ones." FRCP 8(d)(2); *McCalden v. California Library Ass'n,* 955 F.2d 1214, 1219 (9th Cir. 1990) (superseded by rule on other grounds as recognized by *Harmston v. City & County of San Francisco,* 627 F.3d 1273, 1279-1280 (9th Cir. 2010); *Ayers v. United States,* 277 F.3d 821, 829 (6th Cir. 2002) ("alternative pleadings are not disfavored"). Dr.

Grange's "deliberate fabrication of evidence" claim is a separate and clearly established constitutional right. And to the extent any claims are duplicative, alternative pleading is permitted, and Defendants' Motion to Dismiss should still be denied.

### 2. The Unreasonable Seizure Of Person Claim Is Sufficiently Pled And Not Subsumed By The Malicious Prosecution Claim

The Second Cause of Action for Unreasonable Seizure of Person is sufficiently pled and is not "subsumed" by Dr. Grange's claim for malicious prosecution. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001). As discussed above, Defendants unlawfully arrested Dr. Grange without probable cause and without a warrant. The cases Defendants cite are inapposite because the defendants in each of those cases had a valid arrest warrant *at the time* they arrested the plaintiff. *Jones v. Keitz*, No. 116CV01725LJOEPG, 2017 WL 3394121, at *4 (E.D. Cal. Aug. 8, 2017), aff'd, 738 F. App'x 503 (9th Cir. 2018) ("Plaintiffs allege that they were arrested pursuant to judicial process—namely, the filing of a criminal complaint."); *Miller v. Schmitz*, No. 1:12-CV-00137-LJO, 2012 WL 1609193, at *4 (E.D. Cal. May 8, 2012) ("Plaintiff alleges that he was placed under arrest only after a criminal complaint and a warrant were issued for his arrest."); *Beck v. City of Upland*, 527 F.3d 853, 861 (9th Cir. 2008) ("[A]n independent prosecutor authorized prosecution before the officers sought and obtained an arrest warrant.") As the instant allegations are distinct from the cases Defendants cite, Dr. Grange's claim for unreasonable seizure of person is sufficiently pled, it is not subsumed into his other claims, and Defendants' Motion to Dismiss should be denied.

### 3. The Conspiracy Claim is Sufficiently Pled

Finally, the conspiracy claim is also sufficiently pled. "To state a conspiracy claim under § 1983, a plaintiff must show (1) an agreement between the defendants

to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation." *Davis v. Powell*, 901 F.Supp.2d 1196, 1217 (S.D. Cal. 2012). "To plead a claim of conspiracy under § 1983, plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights." *Id.* (citing *Miller v. California*, 355 F.3d 1172, 1177 n.3 (9th Cir. 2004).)

Here, Dr. Grange's conspiracy allegations are adequately pled and based on the factual context provided throughout the FAC. Specifically, Defendants sought to retaliate against and intimidate Dr. Grange for defending himself in the *qui tam* civil lawsuit involving CDI. (FAC ¶ 66.) Defendant Pozuelos conducted a baseless criminal investigation, and when CDI knew its civil case was doomed, Pozuelos coordinated (i.e. conspired) with Wessely and others to unlawfully arrest Dr. Grange as he left the courthouse the court day before he was to testify. (FAC ¶ 67(c).) This was the agreement between Defendants. Wessely knew there was no arrest warrant at the time, but he still arrested Dr. Grange in order to deprive him of his constitutional rights. (FAC ¶ 2.) This was the overt act in furtherance of the conspiracy. And of course, Dr. Grange was deprived of his constitutional rights when he was unlawfully arrested, thrown in jail over the holiday weekend, and subjected to malicious and baseless criminal charges.

Factual allegations in the complaint must only show a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). These allegations, and the rest of the FAC, far exceed the *Iqbal* pleading standard and Defendants' Motion to Dismiss should be denied.

\\
\\

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.[1]

Dated: June 28, 2022               LARSON LLP

By: /s/ Stephen G. Larson
    Stephen G. Larson
    Jerry A. Behnke
    Daniel R. Lahana

Attorneys for Plaintiff
JEFF GRANGE, M.D.

---

[1] In the event the Court is inclined to grant any portion of Defendants' Motion to Dismiss, Dr. Grange requests leave to amend.