1   ROB BONTA
    Attorney General of California
2   DONNA M. DEAN
    Supervising Deputy Attorney General
3   THOMAS M. MCMAHON
    Deputy Attorney General
4   State Bar No. 106074
     300 South Spring Street, Suite 1702
5    Los Angeles, CA  90013-1230
     Telephone:  (213) 269-6616
6    Fax:  (916) 731-2120
     E-mail:  Thomas.McMahon@doj.ca.gov
7   *Attorneys for Defendants*
    *Lori Pozuelos and Jason Wessely*
8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| 13 **JEFF T. GRANGE, M.D.,** | 5:22-cv-00340 DSF (AGRx) |
| 14 Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| 15 **v.** | **OF DEFENDANT LORI POZUELOS' MOTION FOR** |
| 16 **LORI POZUELOS AND JASON WESSELY,** | **SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| 17 Defendants. | |
| 18 | Date:       April 8, 2024 |
| 19 | Time:       1:30 p.m. Courtroom:  7D |
| 20 | Judge:      The Honorable Dale S. Fischer |
| 21 | Trial Date:  11/12/2024 Action Filed: 2/24/2022 |

22

23        Defendant Lori Pozuelos ("Pozuelos") submits this Memorandum of Points

24   and Authorities in Support of her Motion for Summary Judgment, or in the

25   Alternative, Partial Summary Judgment ("Motion"), on the six civil rights claims

26   alleged by Plaintiff Jeff T. Grange, M.D. ("Grange"), pursuant to 42 U.S.C. Section

27   1983, in the First Amended Complaint ("FAC").

28

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................... 1

Background Facts ...................................................................................... 3

    I.     The Parties .................................................................................... 3

    II.    The Investigation of Grange and Symons ................................... 4

    III.   The SBDA Decides to File Criminal Charges Against Grange and Seek His Arrest, a Bail Hearing and an Asset Freeze. ............... 11

    IV.   The Arrest of Grange on February 27, 2020. ............................. 12

Argument ................................................................................................ 14

    I.     The Summary Judgment Standard. .............................................. 14

    II.    Liability Pursuant to 42 U.S.C. Section 1983 ............................ 14

    III.   The Doctrine of Qualified Immunity. ......................................... 15

    IV.   The Court Should Enter Judgment for Pozuelos on the Second Claim for Unreasonable Seizure of Person. ................................ 15

        A.    Pozuelos Did Not Engage in Judicial Deception with respect to the arrest warrant. ..................................... 15

        B.    Pozuelos Is Entitled to Qualified Immunity. ............................ 18

    V.    The Court Should Enter Judgment for Pozuelos on the Third Claim for Excessive Bail. ........................................................... 20

        A.    Pozuelos Did Not Engage in Judicial Deception in Connection with the Motion for a Bail Hearing. ............. 20

        B.    Pozuelos Is Entitled to Qualified Immunity. ............................ 22

    VI.   The Court Should Enter Judgment for Pozuelos on the Fourth Claim for Unreasonable Seizure of Property. ............................. 23

        A.    Pozuelos Did Not Engage in Judicial Deception with Respect to the Freeze Order ................................... 23

        B.    Pozuelos Is Entitled to Qualified Immunity. ............................ 24

    VII.  The Court Should Enter Judgment for Pozuelos on the Fifth Claim for Deliberate Fabrication of Evidence and Withholding of Material Information ............................................................... 24

    VIII. The Court Should Enter Judgment for Pozuelos on the Sixth Claim for Malicious Prosecution. ............................................... 25

    IX.   The Court Should Enter Judgment for Pozuelos on the Seventh Claim for Retaliation ................................................................... 27

    X.    The Court Should Enter a Partial Judgment for Pozuelos on Grange's Prayer for Punitive Damages. ...................................... 28

Conclusion ............................................................................................. 29

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. al-Kidd*
    563 U.S. 731 (2011) ...................................................................... 15

*Baker v. McCollan*
    443 U.S. 137 (1979) ...................................................................... 20

*Bennett v. Hendrix*
    423 F.3d 1247 (11th Cir. 2005) ..................................................... 27

*Collins v. Sacramento*
    2007 U.S. Dist. LEXIS 75231 (E. D. Cal. 2007) ........................... 21

*Devereaux v. Abbey*
    263 F.3d 1070 (9th Cir. 2001) ....................................................... 24

*Ewing v. City of Stockton*
    588 F.3d 1218 (9th Cir. 2009) ..................................... 15, 16, 17, 23

*Forster v. County of Santa Barbara*
    896 F.2d 1146 (9th Cir. 1990) ....................................................... 17

*Freeman v. City of Santa Ana*
    68 F.3d 1180 (9th Cir. 1995) ......................................................... 25

*Galbraith v. County of Santa Clara*
    307 F.3d 1119 (9th Cir. 2002) ................................................. 15, 23

*Galen v. County of Los Angeles*
    477 F.3d 652 (9th Cir. 2007) ......................................................... 21

*Harlow v. Fitzgerald*
    457 U.S. 800 (1982) ...................................................................... 15

*Hartman v. Moore*
    547 U.S. 250 (2006) ...................................................................... 27

*Hoffman v. Halden*
    268 F.2d 280 (9th Cir. 1959) ......................................................... 21

# TABLE OF AUTHORITIES
### (continued)

Page

*KRL v. Moore*
    384 F.3d 1104 (9th Cir. 2004)...........................................................15, 16, 17, 23

*Lacey v. Maricopa County*
    693 F.3d 896 (9th Cir. 2012)...........................................................................25

*Lombardi v. City of El Cajon*
    117 F.3d 1117 (9th Cir. 1997)........................................................................17

*Malley v. Briggs*
    475 U.S. 335 (1986) .................................................................................19, 20

*Messerschmidt v. Millender*
    565 U.S. 535 (2012) .......................................................................................19

*Nieves v. Bartlett*
    139 S. Ct. 1715 (2019) ...................................................................................27

*O'Boyle v. Commerce Group Inc.*
    2023 U.S. App. Lexis 6665 (11th Cir 2023) ..............................................27, 28

*Smith v. Mosely*
    532 F.3d 1270 (11th Cir. 2008).......................................................................27

*Smith v. Wade*
    461 U.S. 30 (1983) .........................................................................................28

*Walden v. Carmack*
    156 F.3d 861 (8th Cir. 1998)...........................................................................21

*Wallace v. Kato*
    549 U.S. 384 (2007) .......................................................................................25

STATUTES

United States Code, Title 42
    § 1983 .................................................................................................*passim*

California Penal Code
    § 186.11 ...................................................................................................10, 23
    § 1275.1 ..............................................................................................12, 21, 22

# TABLE OF AUTHORITIES
### (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    First Amendment ................................................................. 3, 14, 27
    Fourth Amendment ............................................................ 1, 14, 20
    Eighth Amendment ................................................................. 3, 14
    Fourteenth Amendment ..................................................... 3, 14, 25

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 56(c) ................................................................................. 14

**INTRODUCTION**

The Court should grant summary judgment for Pozuelos on each of Grange's civil rights claims. The Superior Court of San Bernardino County ("Superior Court") issued a warrant for Grange's arrest, set a bail hearing, and froze certain assets, all at the request of the San Bernardino County District Attorney's Office ("SBDA"). Although Pozuelos conducted a criminal investigation of Grange, and submitted the results of that investigation to SBDA, she is not liable for an unreasonable seizure of Grange's person or property, in violation of the Fourth Amendment, for four equally compelling reasons.

First, Pozuelos did not engage in any judicial deception. None of the allegedly false statements in her submissions to SBDA were, in fact, false. Nor did Pozuelos omit any exculpatory information. All the information cited by Grange in this regard is not factual, was not omitted, and/or was not exculpatory.

Second, even if there were any evidence of false or omitted statements, there is no evidence Pozuelos acted deliberately or recklessly. Negligence is insufficient to impose civil rights liability upon a public officer, and no reasonable jury could find, from the uncontroverted facts, that Pozuelos acted with deliberation or recklessness.

Third, none of the instances of judicial deception alleged by Grange, alone or in combination, were material to the existence of probable cause to issue the warrant for Grange's arrest, and the other orders requested by SBDA. This Court determines, as a matter of law, whether the allegedly false or omitted statements were material to the existence of probable cause, and for the following reasons, they were not.

Over several years, under the direction of SBDA, Pozuelos conducted a thorough criminal investigation of Grange and Symons. Pozuelos reviewed hundreds of thousands of pages, including patient care records, billing forms, claim payments, emails and bank records. She also conducted dozens of interviews with patients, medical insurers, government officials, event personnel and others.

The probable cause which emerged from this extensive investigation is simple and clear. On at least sixteen occasions, Symons billed medical insurers approximately $5,000 for "Critical or Specialty Care Transport," using billing code A0434, despite the fact that (i) Symons provided only minimal treatment for minor symptoms at a first aid tent, (ii) no ambulance or transport was involved in the care, and (iii) the medical insurers would not have paid the claims if they had known the facts. On at least 16 occasions, Symons billed medical insurers a six-figure amount for "Rotary Wing Air Transport," using billing code A0431, despite the fact that (i) Symons did not provide any helicopter transport, (ii) Symons only provided medical care, whether on the ground or onboard, and (iii) the medical insurers would not have paid the claims if they had known the facts. Grange's personal involvement in this fraudulent billing activity was established by emails, and by Grange's financial benefit from some of the fraudulent air transport payments, traced through bank records.

This Court should review the allegedly omitted exculpatory information cited by Grange in his interrogatory responses, and conclude that, even if Pozuelos had submitted any or all of that information, it would not have negated the existence of probable cause to arrest Grange and issue the related orders.

Fourth, even if Pozuelos engaged in judicial deception, she has qualified immunity. This Court should conclude, as a matter of law, that Pozuelos' belief that probable cause existed for the arrest warrant and other orders was "objectively reasonable." The fact that her supervisors, SBDA, and the Superior Court all approved of her investigation and recommendation is evidence of the objective reasonableness of Pozuelos' belief. There is no evidence which establishes that *no* reasonable law enforcement officer would have believed probable cause existed. Pozuelos is also entitled to qualified immunity because there was no clear precedent, specific to her conduct in this case, which would have advised her she was violating Grange's constitutional rights.

Grange's claims for excessive bail in violation of his Eighth Amendment right, and for fabrication of evidence and malicious prosecution in violation of his Fourteenth Amendment right, are premised on the same allegations of false statements and omissions of exculpatory information discussed above. For the same reasons, Pozuelos did not engage in any judicial deception, and has qualified immunity.

Grange claims Pozuelos violated his right to freedom of speech under the First Amendment by retaliating against him for exercising his right to testify in the civil *qui tam* action. That action, brought by a medical insurer and joined by a separate civil division of the California Department of Insurance ("CDI"), also involved allegations of air transport fraud. Grange alleges that Pozuelos deliberately procured his arrest on the day before he was scheduled to testify in the civil action. However, Grange did testify in the civil action, and there is no evidence that Pozuelos tried to prevent it. At the direction of SBDA, Pozuelos maintained a firm barrier between her criminal investigation and the civil action. She did not know if, or when, Grange would testify. SBDA decided when to file the criminal charges, and did so on February 27, 2020, with no input from Pozuelos, due to concerns about an impending expiration of the statute of limitations. No reasonable jury could conclude, from the uncontroverted facts, that Pozuelos retaliated against Grange for testifying in the civil action.

## BACKGROUND FACTS

### I.    THE PARTIES.

Grange is a medical doctor and was an owner, director and officer of Symons Emergency Specialties, Inc., dba Symons Ambulance ("Symons"). Among other services, Symons provided medical care at special events. (50.)[1]

---

[1] All parentheses refer to numbered Statements of Uncontroverted Facts submitted in support of Pozuelos' Motion.

1      Pozuelos has been a Detective with CDI since 2011, assigned to its Fraud

2  Division. (1.) She had 10 prior years of experience as an investigator for a state

3  agency. Pozuelos has a degree in Criminal Justice. She attended 640 hours of Peace

4  Officer Standards and Training courses, and continues to receive training. (2.)

5      The Fraud Division is within the Enforcement Branch of CDI, and is

6  responsible for investigating crimes related to insurance fraud. Pozuelos gathers

7  evidence, interviews witnesses, makes arrests, prepares and serves warrants,

8  prepares detailed reports, refers criminal cases to prosecutors, and testifies at

9  criminal hearings. (3.)

10      Pozuelos was also assigned to the Fraud Division's Healthcare Provider Task

11  Force. She investigated medical billing fraud by healthcare providers. Pozuelos

12  worked with others assigned to investigate and prosecute healthcare fraud and

13  attended numerous meetings, trainings and conferences related to it. (4.)

14  **II.  THE INVESTIGATION OF GRANGE AND SYMONS.**

15      From July 2016 to February 2020, on behalf of the Fraud Division, Pozuelos

16  was involved in a criminal fraud investigation of Grange and Symons. Pozuelos

17  was the only Fraud Division detective assigned to this investigation, and with minor

18  exceptions, personally conducted it. (5.)

19      Pozuelos performed the investigation in partnership with SBDA. She initially

20  worked with Deputy District Attorney Diane Harrison, to whom she submitted her

21  initial Report of Investigation ("ROI"). Thereafter, Pozuelos worked with DDA

22  Lance Cantos, who continued to guide the investigation and who ultimately made

23  the decision to file criminal charges against Grange on February 27, 2020. Pozuelos

24  also worked with DDA Rebeca Hynds, who made the decision to seek a Temporary

25  Restraining Order with respect to certain assets. (6.)

26      Pozuelos took direction from SBDA. SBDA decided whether and when to file

27  criminal charges, which statutes and incidents would be used, and what orders

28  would be sought. SBDA prepared, and filed or submitted, the relevant documents

1    with the Superior Court pertaining to the charging and arrest of Grange, including

2    documents prepared for Pozuelos' signature and the confidential discovery package

3    for the court that supported her belief in the existence of probable cause. (6.)

4        CDI's Fraud Liaison Bureau, within CDI's Legal Branch, handles civil fraud

5    investigations and *qui tam* litigation. The Fraud Liaison Bureau was not involved in

6    the criminal fraud investigation of Grange and Symons. Accordingly, Pozuelos did

7    not share information about her investigation with CDI counsel, including Mitchell

8    Neumeister, who were simultaneously participating in civil *qui tam* litigation

9    initiated by an insurance company against Grange and Symons. Nor did CDI

10   counsel share information from their investigation with Pozuelos, prior to the

11   charging and arrest of Grange. At all times, CDI maintained a barrier between the

12   criminal and civil fraud investigations. Harrison and Cantos specifically directed

13   Pozuelos to maintain this barrier, and she did so. (7.)

14       Pozuelos had only a few administrative communications with Neumeister

15   concerning Grange and Symons. He and other CDI counsel contacted Pozuelos on a

16   few occasions to inquire whether and when criminal charges would be filed,

17   because they were preparing for trial. Pozuelos responded to those inquiries by

18   stating she did not know, and the decision rested with SBDA. After Grange was

19   arrested on February 27, 2020, Neumeister contacted Pozuelos and asked her to

20   confirm the facts of the arrest. Pozuelos had no prior communications with him

21   about SBDA's decision to file criminal charges on February 27, 2020, and to seek

22   and execute an arrest warrant that day. (8.)

23       The criminal fraud investigation of Grange and Symons began on July 29,

24   2016, when a complaint was referred to Pozuelos. The complaint alleged that

25   Symons submitted a bill for an ambulance transport that did not take place.

26   Pozuelos reviewed copies of the relevant billing records and interviewed the

27   complainant, P.H. P.H. stated that at a concert on August 1, 2015, she felt nauseous

28   and dehydrated. At a first aid tent staffed by Symons, she received water and an IV

drip. P.H. was told the service was free of charge. However, Symons billed P.H.'s medical insurer for, among other things, $4,875.00 for ambulance service, using medical billing code A0434, "Specialty or Critical Care Transport." After Cigna denied the claim, Symons sent P.H. a bill for the service. P.H. told Pozuelos she had not been transported anywhere, and no ambulance had been involved with her care. Pozuelos interviewed a representative of Cigna, who told Pozuelos Cigna would not pay a bill based upon the "Specialty or Critical Care Transport" code if no ambulance service was provided. (9.)

Pozuelos broadened the investigation to determine if Symons had a pattern of billing for ambulance service that was not provided. Pozuelos obtained copies of bills Symons submitted to other medical insurers for ambulance service at special events staffed by Symons. These bills also used the "Specialty or Critical Care Transport" billing code, A0434, to support charges in the vicinity of $5,000. In most of these additional cases, the medical insurer paid Symons' bill. Pozuelos contacted the individual patients, who advised her they received only minimal care, for minor symptoms. They were not transported anywhere, and no ambulance was involved in their care. The medical insurers stated they would not have paid the bills submitted by Symons if they had known that Symons provided no ambulance service. (11.) The bill Symons submitted with respect to patient N.G. is another example of Symons' pattern of ground transport fraud. (12.)

Pozuelos documented eight cases, with similar facts, in which Symons billed medical insurers for ground ambulance service that was not provided. Pozuelos concluded there was probable cause to believe Grange and Symons had committed medical insurance fraud. (13.)

On January 17, 2017, Pozuelos met with Harrison to discuss the findings from her investigation. Harrison gave Pozuelos a copy of a complaint regarding the billing of air ambulance transports by Symons. The complaint was filed in a civil *qui tam* action by a medical insurer to whom Symons had submitted a bill for an air

1    ambulance transport. The complaint did not involve the ground ambulance billing

2    Pozuelos was investigating. However, Harrison asked Pozuelos to broaden her

3    investigation to include billings for air ambulance transports. (14.)

4         Pozuelos contacted various agencies to determine the type of license held by

5    Symons. She learned Symons was not a licensed air ambulance provider, and

6    should not be providing such services. Pozuelos also learned from the Federal

7    Aviation Agency that Symons did not have the required certification to provide air

8    ambulance transports. (15.)

9         Pozuelos also reviewed billing records obtained from various insurance

10   companies. She prepared and served search warrants for Symons' bank records and

11   email records. Pozuelos also interviewed numerous witnesses regarding Symons'

12   billings for air ambulance transports. (16.)

13        Pozuelos learned that Symons did not own, lease or operate any helicopters

14   used for air ambulance transports, and only provided medical care to the patients,

15   whether on the ground or onboard. Symons medical professionals did not always

16   accompany the patient during an air transport. However, on numerous occasions, at

17   special events in Southern California and Mexico where Symons provided medical

18   care services, Symons billed the patient's medical insurer for providing an air

19   ambulance transport, using the billing code A0431, "Rotary Wing Air Transport."

20   Almost all of the bills were for a six-figure amount. Pozuelos learned the air

21   ambulance transports Symons billed for were actually provided by either the San

22   Bernardino County Air Rescue Unit or by a private company under contract with

23   the event promoter. (16.)

24        The Air Rescue Unit, and a representative of SCORE, a road race sponsor in

25   Mexico, told Pozuelos Symons had no permission to bill medical insurers for

26   helicopter transports they had provided. Although a representative of the prior

27   ownership of SCORE thought Symons could bill for medical services, his statement

28   was compromised by his receipt of a payment from Symons. (17.)

Pozuelos spoke with representatives of approximately 10 medical insurers about Symons' practice of billing for air ambulance transports. Pozuelos did not interview the actual employees who processed Symons' bills for air ambulance transports, because the bills are submitted and paid electronically, making it difficult to identify such employees. The medical insurer representatives told Pozuelos that Symons' use of the "Rotary Wing Transport" code meant Symons had actually provided the air ambulance transport, *i.e.*, the helicopter. If they had known Symons only provided medical care to the patient, whether on the ground or on board, they would not have paid Symons' bill for air ambulance transport. (18.)

For example, L.H. was injured on April 26, 2016 while participating in a race in Baja California, Mexico. L.H. was treated at the scene by Symons' personnel, and then transported to a hospital in a helicopter not owned, leased or operated by Symons. However, Symons subsequently billed L.H.'s medical insurer, Blue Shield of California ("BSC"), $247,000 for air ambulance transport, using billing code A0431, "Rotary Wing Air Transport." After an initial rejection, BSC ultimately paid Symons' bill. A representative of BSC told Pozuelos they would not have paid this bill if they had known Symons had not provided the helicopter transport. The $247,000 payment was deposited into a Symons' bank account, but was then transferred into a Grange bank account. (19.)

Symons' bill in connection with patient C.M. is another example of Symons pattern of engaging in air transport fraud. (20.) The facts were similar to the L.H. claim, except that the amount billed and paid by Kaiser was $140,525, and the injury occurred in San Bernardino County, whose Air Rescue Unit provided the air ambulance transport with no indication that Symons personnel was aboard. (*Id*.)

Pozuelos documented a total of 16 cases, with similar facts, in which Symons billed a medical insurer a six-figure amount for an air ambulance transport Symons had not provided. These cases provided additional probable cause for Pozuelos to believe Grange and Symons committed medical insurance fraud. (21.)

Symons' emails, obtained by Pozuelos pursuant to a search warrant, revealed Grange was personally involved in billing medical insurers for ground and air ambulance transports. Although bills were physically submitted by other employees, the emails established Grange was directing this activity. For example, Grange provided L.H.'s information to Symon's biller and discussed how much should be billed. Grange also provided C.M.'s information to the biller, who asked Grange to review the records before she sent them to Kaiser. Other emails show Grange's personal involvement in the billing process. (Exhibit 26.) For example, Grange wrote that he needed to "feel better about what we just billed for our helicopter transport! :-)." He was also involved in a discussion about a $247,000 "magic number" for air transport bills, after a $520,000 claim "stirred the pot at Blue Cross" and put Symons' billings "on their radar screen." Grange also specifically directed another biller to "just do CCT (Critical Care Transport) for now" on a patient's bill. (22.)

After reviewing Symons' records, Pozuelos determined the bills submitted by Symons to medical insurers, for both ground and air ambulance transports, resulted in fraudulent billings totaling approximately $3,628,826.76, and fraudulent payments totaling approximately $2,005,210. (23.)

On November 8, 2017, Pozuelos submitted her initial ROI to Harrison. (Sealed Exhibit 27.) Pozuelos recommended that, with respect to the eight ground ambulance examples and sixteen air ambulance examples described in the ROI, SBDA should file criminal insurance fraud charges against Grange and others. Pozuelos was still reviewing email records, and told Harrison a supplemental report would follow. (24.)

On June 22, 2018, Pozuelos submitted a supplemental report to Harrison concerning the email review. (Sealed Exhibit 28.) Over the course of the investigation, Pozuelos regularly supplied SBDA with additional reports, interview notes and supporting documentation, in further evidence of the medical insurance

fraud. For example, after submitting the initial ROI, Pozuelos documented additional examples of the ground transport fraud. Eight of them, involving Kaiser, were eventually included in the criminal complaint filed by SBDA. (25.)

In August 2018, the case was transferred from Harrison to Cantos. From August 2018 to February 2020, Pozuelos communicated with Cantos on multiple occasions to discuss the case and complete any follow-up tasks he requested. Cantos needed additional time to become familiar with the investigation. The approximate volume of the reports, interview notes, emails, bank records and other supporting documents Pozuelos prepared or obtained, and submitted to SBDA, was several hundred thousand pages. Before February 2020, Cantos did not tell Pozuelos whether SBDA would file criminal charges. (26.)

In April 2019, Hynds was assigned to assist SBDA's criminal investigation with a potential application for a temporary restraining order with respect to certain assets of Symons and Grange, pursuant to Penal Code section 186.11 ("186.11 Application"). SBDA advised Pozuelos that if they decided to file criminal charges, this procedure would be used to place a hold on assets for possible restitution. (27.)

During her investigation, Pozuelos learned that with respect to several of the six-figure air ambulance transport payments deposited into a Symons bank account, including the L.H. and C.M. claims referenced above, the bank records revealed that a similar sum was subsequently transferred into a Grange bank account, and then transferred into escrow for an acquisition of real property by Grange and/or his spouse. Pozuelos asked Marshall Wesson ("Wesson"), an experienced CDI Forensic Auditor, to review the bank records and prepare an audit report that traced air ambulance transport payments. (Sealed Exhibit 29.) The examples of Grange deriving a personal financial benefit from a medical insurer's six-figure payment to Symons for an air transport provided Pozuelos with further proof Grange was personally involved in causing the fraudulent bills. (28.)

### III. THE SBDA DECIDES TO FILE CRIMINAL CHARGES AGAINST GRANGE AND SEEK HIS ARREST, A BAIL HEARING AND AN ASSET FREEZE.

After reviewing the investigation reports, Cantos formed the belief that there was probable cause to arrest Grange for fraud. If Cantos had not personally believed there was probable cause, he would not have filed the criminal complaint. (39.) It is SBDA's standard practice to file the criminal complaint, obtain the arrest warrant, execute the arrest, and seek any bail or asset orders all on the same day. (40.)

On February 10, 2020, CDI Captain Vladimir Mikulich advised Pozuelos and her supervisor, Sergeant Joe Lopez, that SBDA was going to file criminal charges against Grange. Mikulich and Lopez decided that CDI detectives would arrest Grange after the issuance of an arrest warrant by the court. This was the first time Pozuelos learned SBDA had decided to file criminal charges against Grange and arrest him. Pozuelos later learned the timing of this decision was related to SBDA's concern about the statute of limitation potentially expiring with respect to some of the incidents referenced in the ROI. The timing of the criminal charges was not designed to prejudice Grange in the civil litigation. (29.)

Lopez formed an arrest team consisting of himself, Detective Jason Wessely and Detective Anthony Camacho. Pozuelos told them that Grange had multiple weapons and a secured home, as well as upcoming travel plans. Pozuelos also learned from the Superior Court's online docket of the civil *qui tam* action that trial was underway, and Pozuelos confirmed Grange's attendance at the trial through her observation of his vehicle in the Superior Court's parking lot on February 26, 2020. For reasons of officer safety, the CDI arrest team decided to arrest Grange in the parking lot after trial concluded for the day and he had been screened for weapons at the court. Because the case involved major fraud allegations, and a risk of flight existed, they did not consider a self-surrender option. (30.)

On February 26th and 27th Pozuelos met with SBDA to review and sign declarations SBDA prepared for her with respect to (i) SBDA's application for an arrest warrant, (ii) SBDA's Motion for a Bail Hearing pursuant to Penal Code section 1275.1 to screen the fruits of the fraud from use in posting bail, and (iii) SBDA's 186.11 Application. (31.)

With respect to the copy of Pozuelos' declaration that was electronically submitted by SBDA to the Superior Court in support of the felony arrest warrant (Exhibit 31), it states that probable cause is supported by "…law enforcement reports…a true copy of the pertinent parts of which is submitted in conjunction with this declaration and incorporated by reference." SBDA determined which report parts would be submitted to the Superior Court in the confidential discovery package supporting the filing of the criminal complaint and the issuance of the arrest warrant, submitted that discovery package to the court, and advised Pozuelos by email on the morning of February 27, 2020 that it had been submitted. Pozuelos' understanding was that the ROI was included in the discovery package. (32.)

With respect to Pozuelos' declarations in support of the 1275.1 Motion and the 186.11 Application (Exhibits 32 and 33), she summarized the facts concerning the fraudulently induced payments and stated that an audit revealed they were used to acquire assets. Pozuelos made no recommendation concerning whether the court should set bail, or if so, in what amount. SBDA was requesting that Grange be held until a bail hearing. SBDA was also requesting a restraining order, so that assets would be available for possible restitution. (33.)

IV. **THE ARREST OF GRANGE ON FEBRUARY 27, 2020.**

At 10:00 am on February 27, 2020, SBDA advised Mikulich, Lopez, and Pozuelos that the criminal complaint against Grange had been submitted electronically to the court that morning, however, the court still needed to review SBDA's submission before filing it. At 10:27 am, Cantos told Pozuelos he had electronically submitted the criminal complaint to the court, and his office had also

submitted the confidential discovery package supporting the criminal charges and arrest warrant application. Pozuelos was not given a copy of the confidential discovery package. At 10:32 am, SBDA advised Mikulich, Lopez, and Pozuelos that the court filed the criminal complaint. (34.)

On February 27, 2020, at approximately 3:00 pm, CDI personnel met with SBDA personnel, prior to the arrest of Grange. Because the case involved substantial fraud allegations, and there was a risk of defendant flight, evidence destruction and witness influencing, the CDI arrest team decided to make the arrest as soon as possible. (35.)

Between approximately 3:00 pm and 3:30 pm, Hynds and Pozuelos arrived at the Superior Court. The clerk provided them with a copy of the filed complaint and advised them Judge Colin Bilash was the signing judge. Hynds and Pozuelos then met with Judge Bilash to obtain his approval of the arrest warrant, the 1275.1 Motion, and the 186.11 Application. Judge Bilash immediately signed the arrest warrant (Exhibit 39) and granted the 1275.1 Motion to hold Grange until a bail hearing by writing "no bail" on the warrant. Hynds and Judge Bilash further discussed the 186.11 Application. Meanwhile, Pozuelos, using her cell phone, told Lopez the judge had signed the arrest warrant but was still considering other matters. (35.)

After leaving Judge Bilash, Pozuelos met with the clerk to provide the signed arrest warrant and the 1275.1 Motion for filing. Pozuelos was later advised by Lopez that Grange had been arrested in the parking lot. (36.)

Hynds returned to court on February 28, 2020 and the judge granted the 186.11 Application. (37.) Hynds believed there was a proper basis for the court to issue the order. (43.)

After the criminal case was filed, Pozuelos continued to meet with Cantos and complete follow-up tasks he requested. (38.)

In July of 2021, SBDA dismissed the criminal charges against Grange. Pozuelos was not consulted on this decision, or advised of the reasons. (38.) At his deposition, Cantos was instructed not to reveal who made this decision and why. Generally speaking, a decision to dismiss criminal charges lies within a prosecutor's discretion, and office resources can be a factor. (41.)

Notwithstanding the dismissal of the criminal charges, Cantos believes there was probable cause to arrest Grange for fraud. (41.) Cantos and Hynds believe that Pozuelos was a competent, honest and hard-working investigator. (42 and 44.)

**ARGUMENT**

### I.    THE SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P., Rule 56(c). Additional discussion of the standard appears in Argument Section I of Wessely's Motion's Memorandum.

### II.    LIABILITY PURSUANT TO 42 U.S.C. SECTION 1983.

Grange's six remaining claims against Pozuelos are for alleged violations of his civil rights. (FAC, Claims Two through Seven, ¶¶ 71-111.) The Federal Civil Rights Act of 1871, 42 U.S.C. Section 1983, permits an individual to maintain an action against a person acting under color of state law who violates the individual's constitutional or other federally protected rights.

The first question under Section 1983, whether Pozuelos' conduct was under the color of state law, is conceded by Pozuelos.

The second question is whether the alleged conduct violates the plaintiff's rights under the United States Constitution or other federal law. In this case, Grange alleges violations of his rights under the First, Fourth, Eighth and Fourteenth Amendments of the United States Constitution. (*Id*.)

### III.  THE DOCTRINE OF QUALIFIED IMMUNITY.

A state official has qualified immunity if it was not well established by specific precedent at the time that such conduct would constitute a constitutional violation. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). Additional discussion of the qualified immunity standard appears in Argument Section V of Wessely's Motion's Memorandum.

### IV.  THE COURT SHOULD ENTER JUDGMENT FOR POZUELOS ON THE SECOND CLAIM FOR UNREASONABLE SEIZURE OF PERSON.

#### A.  Pozuelos Did Not Engage in Judicial Deception with respect to the arrest warrant.

It is undisputed that Pozuelos did not arrest Grange. However, Grange alleges Pozuelos is liable for his arrest because she engaged in judicial deception with respect to the arrest warrant, *i.e.*, she made false statements and omitted material exculpatory information, thereby negating the existence of probable cause. (FAC, ¶¶ 31-33, 42-48.)

To support a Section 1983 claim for judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. *Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1126 (9th Cir. 2002) ("*Galbraith*"). A plaintiff's showing of a deliberate falsehood or a reckless disregard of the truth must be substantial. *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) ("*Ewing*"). "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes cause." *Ewing*, 588 F.3d at 1224. The court determines the materiality of alleged false statements or omissions. *KRL v. Moore*, 384 F.3d 1104, 1117 (9th Cir. 2004) ("*KRL*").

Grange served responses to written interrogatories in this action. (46; Exhibit 34.) In those responses, Grange listed the statements in Pozuelos' declarations in support of SBDA's application for the arrest warrant, bail examination order and temporary restraining order that he alleges were false. (Response to No. 1.) In each

1  case, the statement Pozuelos made was not false. In her Declaration in support of

2  this Motion, Pozuelos quotes each of Grange's allegations of a false statement, and

3  cites uncontroverted evidence of its truth. (Pozuelos Decl., ¶¶ 39-44.)

4        Grange's responses to interrogatories also list the allegedly omitted

5  exculpatory information with respect to Pozuelos' submissions in support of

6  SBDA's application for the arrest warrant, bail examination order and temporary

7  restraining order. (Responses to Nos. One and Three.) In each case, the allegedly

8  omitted exculpatory information was either not a fact, was not omitted from

9  Pozuelos' submissions to SBDA, and/or was not exculpatory. In her Declaration,

10  Pozuelos quotes each of Grange's allegations of omitted exculpatory information,

11  and cites uncontroverted evidence to the contrary. (Pozuelos Decl., ¶¶ 45-68.) In

12  each case, even if the quoted statement of omitted exculpatory information had

13  been included in Pozuelos' reports, it would not have affected her belief that there

14  was probable cause for the arrest warrant and other orders. (Pozuelos Decl., ¶ 45.)

15        As noted, a negligently false statement or omission of exculpatory information

16  is insufficient to establish that a law enforcement officer has engaged in judicial

17  deception. *Ewing*, 588 F.3d at 1224. Even if Grange could establish that Pozuelos

18  made a false statement or omitted exculpatory information, there is no evidence

19  which establishes Pozuelos was deliberate or reckless in her conduct, as opposed to

20  merely negligent. For example, there is no testimony, or document, that establishes

21  Pozuelos **knew** that a piece of information was false, or **knew** that a piece of

22  information was exculpatory and yet decided to mislead SBDA with respect to it.

23  Grange's failure to adduce evidence from which a reasonable jury could draw such

24  a conclusion is fatal to his claim.

25        As noted, the materiality of alleged false or omitted statements is for this

26  Court to decide, as a matter of law. *KRL*, 384 F.3d at 1117. The materiality element

27  requires the plaintiff to demonstrate that "the magistrate would not have issued the

28  warrant with false information redacted, or omitted information restored."

1  *Lombardi v. City of El Cajon,* 117 F.3d 1117, 1126 (9th Cir. 1997). Federal courts

2  often grant summary judgment for law enforcement officers accused of judicial

3  deception in connection with a warrant because the allegedly false or omitted

4  statements were not material to the existence of probable cause.

5      For example, in *Forster v. County of Santa Barbara*, 896 F.2d 1146 (9th Cir.

6  1990), a doctor was arrested for illegally prescribing narcotics on numerous

7  occasions. The charges were eventually dismissed. The doctor then brought civil

8  rights claims against the law enforcement officers who had conducted the

9  investigation and obtained the warrant for the arrest and seizure of property. The

10  doctor alleged that the state had an ulterior motive for the criminal charge and

11  arrest. The officers' motion for summary judgment was granted by the district

12  court. In affirming that decision, the Ninth Circuit observed as follows:

13      [The doctor] asserts the affidavit [in support of the warrant] is "replete

14      with falsehoods." However, his version of the visits does not differ

15      dramatically from that in the affidavit. Nevertheless, even removing these

16      "falsehoods," the remaining facts still give rise to a reasonable belief that

17      [the doctor] violated [the law], and therefore, support a finding of

18      probable cause."

19  *Id.* at 1148.

20      Similarly, in *KRL*, the plaintiffs alleged that the officer omitted an informant's

21  criminal history and grudge against the plaintiffs, and the fact that a prior complaint

22  by the informant was found to be unsubstantiated. The court held that even viewing

23  the facts in the light most favorable to the plaintiffs, the omissions did not affect the

24  finding of probable cause to support the issuance of the warrant. *KRL* 384 F.3d at

25  1277. *See also Ewing*, 588 F.3d at 1224-25; *Lombardi*, 117 F.3d at 1126-27.

26      In this case, the Court should conclude that Pozuelos' detailed submissions to

27  SBDA, from which SBDA prepared a confidential discovery package to the

28  Superior Court in support of the filing of the criminal complaint and issuance of the

arrest warrant, established probable cause to arrest Grange for medical insurance fraud. On at least sixteen occasions, Symons billed medical insurers approximately $5,000 for "Critical or Specialty Care Transport," using billing code A0434, despite the fact that (i) Symons provided only minimal treatment for minor symptoms at a first aid tent, (ii) no ambulance or transport was involved in the care, and (iii) the medical insurers would not have paid the claims if they had known the facts. (9 through 13.) On at least 16 occasions, Symons billed medical insurers a six-figure amount for "Rotary Wing Air Transport," using billing code A0431, despite the fact that (i) Symons did not provide any helicopter transport, (ii) Symons only provided medical care, whether on the ground or onboard, and (iii) the medical insurers would not have paid the claims if they had known the facts. (14 through 21.) Grange's personal involvement in this fraudulent billing activity was established by emails, as well as by Grange's personal financial benefit from several of the fraudulent air transport payments, traced through bank records. (22 and 28.)

This Court should conclude that none of the allegedly false statements or omissions quoted and responded to in Pozuelos' Declaration, even if viewed in the light most favorable to Grange, and whether they are viewed alone or in combination, are material. Just as the alleged omissions would not have affected Pozuelos' belief in the existence of probable cause (Pozuelos Decl., ¶ 45), they should not affect this Court's conclusion that probable cause existed. The remaining facts still give rise to a reasonable belief that Grange committed medical insurance fraud, and therefore, support a finding of probable cause. Accordingly, the Court should grant summary judgment for Pozuelos on the ground there was no judicial deception.

**B.    Pozuelos Is Entitled to Qualified Immunity.**

Even if the arrest warrant were invalid due to a lack of probable cause – which is **_not_** the case as thoroughly demonstrated above – public officers have immunity from liability for alleged civil right violations. A prosecutorial agency, such as

SBDA, has absolute immunity for a wrongful arrest claim pursuant to 42 U.S.C Section 1983. *Malley v. Briggs*, 475 U.S. 335, 339-345 (1986) ("*Malley*"). On the other hand, a law enforcement officer who conducts an investigation and recommends a criminal charge and arrest, such as Pozuelos, does not have absolute immunity. *Id.*

However, an investigating officer such as Pozuelos does enjoy ***qualified*** immunity. *Malley,* 475 U.S. at 339-445. The standard is the "objective reasonableness" of the officer's conduct.  *Id.* at 345. "Only when the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable… will the shield of immunity be lost." *Id.* at 344-45, citation omitted. "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* at 341. "Defendants will not be immune if, on an objective basis, it is obvious no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 341. This qualified immunity standard can be adjudicated by the court, as a matter of law, in order to "permit the resolution of insubstantial claims on summary judgment." *Id.* at 341.

The objective reasonableness of an officer's belief that a warrant should issue can be established by showing a supervisor, and a district attorney, reviewed the officer's investigation and approved the officer's recommendation before the judicial magistrate then issued the requested warrant. *Messerschmidt v. Millender,* 565 U.S. 535, 553-555 (2012). In this case, Pozuelos' investigation and recommendation were reviewed and approved by her supervisors, and by Cantos, before Judge Bilash issued the warrant for Grange's arrest. The fact that all of these experienced law enforcement personnel approved the requested arrest warrant is strong evidence that Pozuelos' belief in probable cause was objectively reasonable.

In contrast, Grange has failed to adduce evidence that **no** reasonable law enforcement officer could have believed, on the basis of the investigation, there was probable cause to arrest Grange. Even if Grange could submit admissible testimony from a law enforcement officer that probable cause was lacking, it would still not vitiate Pozuelos' qualified immunity because a reasonable difference of opinion on the existence of probable cause is insufficient. *Malley*, 475 U.S. at 341.[2] The Court should conclude there is no evidence Pozuelos' belief in probable cause was objectively unreasonable, and grant summary judgment for Pozuelos on the ground of qualified immunity.

The second prong of the doctrine of qualified immunity also requires Grange to cite **clear** and **specific** precedent that would have informed Pozuelos that the conduct in which she was engaging would violate Grange's Fourth Amendment right to be free from unreasonable seizure of person. No such precedent existed, however. No case law established that the specific types of statements and omissions alleged by Grange would violate a suspect's constitutional right. Again, Pozuelos is entitled to judgment on the ground of qualified immunity.

This lack of clear and specific precedent also entitles Pozuelos to qualified immunity on each of the other five claims, and Pozuelos incorporates this argument into each of the following five Sections of this Memorandum.

## V.  THE COURT SHOULD ENTER JUDGMENT FOR POZUELOS ON THE THIRD CLAIM FOR EXCESSIVE BAIL.

### A.  Pozuelos Did Not Engage in Judicial Deception in Connection with the Motion for a Bail Hearing.

A plaintiff alleging that a law enforcement officer violated the excessive bail clause must prove that the defendant actually and proximately caused the imposition of an excessive bail amount. *Baker v. McCollan,* 443 U.S. 137, 142,

---

[2] Grange's expert on liability issues did not opine on whether Pozuelos' investigation established probable cause to believe Grange committed medical insurance fraud, let alone an opinion that **no** reasonable officer could have held that belief.

1    (1979); *Galen v. County of Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2007)

2    ("*Galen*"). In California, bail determinations are made by a judicial officer, whose

3    exercise of independent judgment in the course of official duties is a superseding

4    cause that breaks any chain of causation linking the law enforcement officer to the

5    bail determination. *Galen* at 663, citing *Hoffman v. Halden*, 268 F.2d 280, 296-97

6    (9th Cir. 1959) and *Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir. 1998).

7         A law enforcement officer can only be liable if he/she prevented the judicial

8    officer from exercising his/her independent judgment. *Galen, supra* at 663-64. The

9    law enforcement officer must have deliberately or recklessly misled the judicial

10   officer, and that conduct must have been essential to the bail determination. *Id.* at

11   663-64 (granting summary judgment for law enforcement officers because there

12   was no evidence that they deliberately or recklessly misled the judicial officer);

13   *Collins v. Sacramento*, 2007 U.S. Dist. LEXIS 75231 (E. D. Cal. 2007) (same).

14        This case does not involve the imposition of an excessive bail amount upon

15   Grange. Rather, SBDA merely decided to request a ***hearing on bail***, pursuant to

16   California Penal Code section 1275.1, in order to ensure that any funds used by

17   Grange to satisfy bail were not the fruits of the medical insurance fraud being

18   charged. (27.) In that regard, SBDA asked Pozuelos to co-sign a declaration stating

19   that Grange had acquired assets through numerous instances of medical insurance

20   fraud. (31.) SBDA prepared the declaration, and Pozuelos signed it. (*Id.*) The

21   statement was supported by an analysis of bank and real estate records by an

22   experienced CDI Forensics Auditor, who summarized his findings in an audit

23   report. (28.)

24        On February 27, 2020, after reviewing SBDA's submission, Judge Bilash

25   granted the 1275.1 motion and wrote "no bail" on the arrest warrant in order for

26   Grange to be held until a hearing. (35 and 36 and Exhibit 39.) A hearing was

27   conducted on Friday February 28, 2020, and the judge set bail at $1,500,000. The

28

1   hearing was then continued to Monday March 2, 2020, at which point another judge

2   of the Superior Court released Grange from custody on his own recognizance. (36.)

3       Accordingly, Pozuelos did not impose any bail conditions upon Grange.

4   SBDA and the Superior Court did. Grange can only seek to impose liability on

5   Pozuelos by establishing that Pozuelos engaged in judicial deception with respect to

6   her declaration in support of the motion for a bail hearing.

7       To the extent Grange is claiming Pozuelos engaged in judicial deception by

8   stating in her declaration in support of the 1275.1 Motion that there was probable

9   cause to believe Grange had committed medical insurance fraud, Pozuelos has

10  already demonstrated no such judicial deception occurred. *See* Section IV.A., *infra.*

11      To the extent Grange is claiming Pozuelos engaged in judicial deception by

12  stating in her declaration in support of the 1275.1 Motion that certain assets could

13  be traced back to payments from medical insurers to Symons that were induced by

14  fraud, there was nothing deliberately or recklessly false or misleading in Pozuelos'

15  submission. The audit report, prepared by an experienced forensic analyst of

16  financial records, established that such funds could be traced. (28 and 33.) Medical

17  insurer payments into Symons' accounts on some of the fraudulent air transport

18  bills were transferred into Grange's personal accounts, and then used to purchase

19  property for Grange and/or his wife. (*Id.*) For the reasons set forth at paragraphs 39

20  to 68 of Pozuelos' Declaration, none of allegedly false or omitted statements cited

21  by Grange in his interrogatory responses were material to the Superior Court's

22  order granting the 1275.1 Motion.

23      **B.    Pozuelos Is Entitled to Qualified Immunity.**

24      Even if there were disputed issues of fact on whether Pozuelos engaged in

25  judicial deception with respect to the motion for a bail hearing, Pozuelos is entitled

26  to qualified immunity. The fact that a CDI Forensic Auditor, SBDA and the judge

27  all approved Pozuelos' statements in support of the motion establishes, as a matter

28  of law, that it was "objectively reasonable" for Pozuelos to believe that the 1275.1

Motion should be granted. Accordingly, Pozuelos is entitled to judgment on the ground of qualified immunity.

## VI. THE COURT SHOULD ENTER JUDGMENT FOR POZUELOS ON THE FOURTH CLAIM FOR UNREASONABLE SEIZURE OF PROPERTY.

### A. Pozuelos Did Not Engage in Judicial Deception with Respect to the Freeze Order.

It is undisputed that Pozuelos did not seize any property from Grange. Rather, the order freezing certain assets of Symons and Grange, upon which the Fourth Claim is based, was issued by the Superior Court, upon the application of SBDA, pursuant to Penal Code section 186.11. In support of the application, Hynds asked Pozuelos to sign a declaration stating that Grange and Symons had engaged in medical insurance fraud and possessed certain assets. (27, 28, 31, 33.) Hynds prepared the declaration, and Pozuelos signed it. (31.) Pozuelos' declaration was based upon the same reports, and backup information, that supported the arrest warrant and 1275.1 Motion. (28 and 33.)

Accordingly, as with the Second and Third Claims, Grange must prove Pozuelos engaged in judicial deception. *Galbraith*, 307 F.3d at 1126. The proof of a deliberate falsehood or a reckless disregard of the truth must be substantial, and negligent conduct will not suffice. *Ewing,* 588 F.3d at 1224. The materiality of any alleged false statement or omission is determined by this Court, as a matter of law. *KRL*, 384 F.3d at 1117.

Pozuelos has already demonstrated she engaged in no judicial deception by stating in her declaration, although this time in support of the 186.11 Application, that (i) there was probable cause to believe Grange had committed medical insurance fraud, and (ii) certain Grange assets could be traced back to payments from medical insurers to Symons that were induced by fraud. (28 and 33.) *See* Section V.A., *infra*.

23

**B.    Pozuelos Is Entitled to Qualified Immunity.**

Pozuelos has also demonstrated that it was "objectively reasonable" for Pozuelos to believe that her investigation warranted an order granting the 186.11 Application. *See* Section V.B., *infra*.  Thus, Pozuelos is entitled to judgment on the ground of qualified immunity.

**VII. THE COURT SHOULD ENTER JUDGMENT FOR POZUELOS ON THE FIFTH CLAIM FOR DELIBERATE FABRICATION OF EVIDENCE AND WITHHOLDING OF MATERIAL INFORMATION.**

The Ninth Circuit has held that there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) ("*Devereaux*"). In order to prevail on a Section 1983 claim based upon a deliberate fabrication of evidence, a plaintiff must establish that: "(1) Defendants continued their investigation of [the plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Id.* at 1076.

In this case, Grange does not argue that Pozuelos used abusive or coercive investigation techniques on witnesses, but rather, that Pozuelos knew or should have known that Grange was innocent, based upon deliberately fabricated evidence or withheld material information. (FAC, ¶¶ 89-95.) It is undisputed that Pozuelos believed at all relevant times that Grange was ***not*** innocent of the insurance fraud charges filed against him. (13 and 21.) Accordingly, the only issue to be adjudicated on the Fifth Claim is whether Pozuelos ***should have known*** that Grange was innocent, based upon allegedly fabricated evidence or deliberately withheld material information.

Grange's arguments that statements by Pozuelos were false, and material exculpatory information was withheld, are entirely duplicative of his arguments,

pursuant to the Second Claim, that his person was unreasonably seized. In Section IV.A. of this Memorandum, Pozuelos has already demonstrated she did not deliberately or recklessly make any false statements, or omit exculpatory information, that was material to the arrest or prosecution of Grange. Pozuelos incorporates that demonstration here, and asks the Court to find there is also no admissible evidence supporting the claim for "deliberate fabrication of evidence and withholding of material information."

Pozuelos has already demonstrated it was "objectively reasonable" for her to believe that Grange should be prosecuted for medical insurance fraud, based upon the review and approval of her investigation and recommendation by her supervisors, SBDA and the Superior Court. *See* Section IV.B, *infra*. Accordingly, Pozuelos is entitled to judgment on the ground of qualified immunity.

## VIII. THE COURT SHOULD ENTER JUDGMENT FOR POZUELOS ON THE SIXTH CLAIM FOR MALICIOUS PROSECUTION.

A claim for malicious prosecution is cognizable under Section 1983 as a violation of the Fourteenth Amendment right to substantive due process of law. To establish malicious prosecution, a plaintiff must prove that the defendant "prosecuted him with malice, and without probable cause and … did so for the purpose of denying him equal protection or another specific constitutional right." *Lacey v. Maricopa County*, 693 F.3d 896, 919 (9th Cir. 2012); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

"If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process of arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." *Wallace v. Kato*, 549 U.S. 384, 389 (2007).

SBDA filed the criminal complaint against Grange, and was in charge of the prosecution. (6, 39, 40, 29, 31, 32 and 34.) After the criminal complaint was on file,

Pozuelos' only role was to respond to any further requests by SBDA for information, such as obtaining transcripts from the civil *qui tam* action after the verdict was rendered. (38.) Grange's counsel engaged in direct communications with SBDA about the merits of the criminal charges, with no involvement by Pozuelos. (47.) After a year and a half, SBDA decided to dismiss the criminal charges, with no involvement by Pozuelos. (38.) SBDA has refused to state the reasons for the dismissal. (41.) In light of these uncontroverted facts, it is clear Pozuelos did not prosecute Grange, SBDA did.

Even if Pozuelos' role as an investigator is enough to charge her with malicious prosecution, she had probable cause to believe Grange engaged in medical insurance fraud, and to maintain that belief after Grange was arraigned. The existence of probable cause to prosecute Grange is well-supported by the evidence Pozuelos developed during the investigation. (9 through 21.) Grange's argument that probable cause was vitiated by Pozuelos' false statements and omissions of material exculpatory information has already been refuted. *See* Sections IV.A, *infra*. There is no evidence that Pozuelos became aware of other information, after the arraignment, that negated the existence of probable cause and required her to rescind her recommendation that Grange be prosecuted.

Grange has also failed to adduce any evidence Pozuelos acted with malice towards Grange. She did not know him, or Symons, prior to her criminal investigation, and therefore held no ill will. She was referred the task of investigating Grange, and was asked by SBDA to expand it. (9 and 14.) She conducted her investigation in a fair, thorough and professional manner. (9 through 21, 42 and 44.) No reasonable juror could find malice from these uncontroverted facts. Similarly, there is no evidence that Pozuelos' ***purpose*** was to deprive Grange of a specific constitutional right.

As with all the other claims, Pozuelos is also entitled to qualified immunity because it was "objectively reasonable" for her to believe, even after the arraignment, that there was still probable cause to prosecute Grange.

## IX. THE COURT SHOULD ENTER JUDGMENT FOR POZUELOS ON THE SEVENTH CLAIM FOR RETALIATION.

A person who suffers retaliation for speech protected by the First Amendment can seek relief under 42 U.S.C. section 1983. *Bennett v. Hendrix*, 423 F.3d 1247, 1249-50 (11th Cir. 2005). The person must show, among other things, that there was a causal connection between the retaliatory action and the protected speech. *Smith v. Mosely*, 532 F.3d 1270, 1276 (11th Cir. 2008). To meet this element, "a plaintiff must establish a causal connection between the government's retaliatory animus and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) ("*Nieves*"). In cases involving criminal charges, if there was probable cause for bringing them, the retaliation claim will usually fail as a matter of law. *Id.* at 1728. *See also Hartman v. Moore*, 547 U.S. 250, 259-61 (2006).

For example, in *O'Boyle v. Commerce Group Inc.,* 2023 U.S. App. Lexis 6665, 2023 WL 2579134 (11th Cir 2023) ("*O'Boyle*"), the plaintiff alleged that a town retaliated against him for pursuing civil litigation by, *inter alia*, arresting him for trespass, disorderly conduct and resisting arrest. *Id.* at *5-6. The state's attorney filed a criminal information against plaintiff, but the charges were later dismissed. *Id.* The court granted summary judgment for the town on plaintiff's Section 1983 retaliation claim on the ground that there had been probable cause for the arrest. *Id.* at *8. On appeal, the Eleventh Circuit rejected plaintiff's argument that the existence of probable cause was irrelevant. *Id.* at *16.

In this case, Grange also fails to establish a causal connection between a retaliatory animus on Pozuelos' part, and injury that Grange allegedly sustained. In the first place, there is no admissible evidence of any retaliatory animus. Pozuelos had no awareness of Grange other than through the criminal investigation she was

pursuing. She was a competent, fair and hardworking investigator, who was just doing her job. (42 and 44.) Nor was Grange injured, since he did testify. (51.)

Moreover, Pozuelos engaged in no conduct designed to prevent Grange's testimony. His speculation that Pozuelos was party to a conspiracy to prevent his testimony, by arresting him outside the court on February 27, 2020, has been debunked by all percipient witnesses. Pozuelos had no involvement in the civil action, and did not know whether, or when, Grange might testify. (30.) She was following the direction of SBDA to keep her criminal investigation entirely separate from the civil action. (7 and 8.) SBDA, rather than Pozuelos, made the decision on when to charge, and therefore arrest, Grange. (29.) The impending expiration of the statute of limitations with respect to some of the incidents referenced in the investigation was the reason for SBDA's timing. (*Id.*) The possibility of the arrest having an impact on the civil action was never considered by SBDA, or discussed by anyone. (*Id.*) As a matter of law, no causal relationship between ***Pozuelos'*** conduct, and Grange's alleged injury, has been established.

As in *O'Boyle*, the existence of probable cause for Grange's arrest is also fatal to his retaliation claim. Probable cause has been amply demonstrated (9 through 21), and is incorporated herein by reference. As noted, Grange cannot establish any judicial deception by Pozuelos. (*See* Section IV.A, *infra.*)

## X.  THE COURT SHOULD ENTER A PARTIAL JUDGMENT FOR POZUELOS ON GRANGE'S PRAYER FOR PUNITIVE DAMAGES.

At a minimum, the Court should enter a partial judgment on punitive damages. There is no evidence Pozuelos acted with callous indifference or reckless disregard of Grange's constitutional rights. *Smith v. Wade*, 461 U.S. 30 (1983). At most, Grange might conceivably convince a jury that Pozuelos was negligent. But no reasonable jury could conclude that Pozuelos' conduct was callous or reckless. To the contrary, Pozuelos was a competent, fair and hardworking investigator (42 and 44) who had no prior knowledge of Grange, and bore him no ill will. Her

supervisors, SBDA and the Superior Court all approved of her investigation and recommendation.

### CONCLUSION

Pozuelos respectfully requests that the Court grant the Motion.


Dated:  March 11, 2024                    Respectfully submitted,

                                          ROB BONTA
                                          Attorney General of California
                                          DONNA M. DEAN
                                          Supervising Deputy Attorney General


                                          /s/ Thomas M. McMahon

                                          THOMAS M. MCMAHON
                                          Deputy Attorney General
                                          *Attorneys for Defendants*
                                          *Lori Pozuelos and Jason Wessely*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Lori Pozuelos, certifies that this brief contains 8,992 words, which complies with the word limit set by court order dated March 1, 2024.

Dated:  March 11, 2024                           Respectfully submitted,

ROB BONTA
Attorney General of California


/s/ Thomas M. McMahon

THOMAS M. MCMAHON
Deputy Attorney General
*Attorneys for Defendants*
*Lori Pozuelos and Jason Wessely*