ROB BONTA
Attorney General of California
DONNA M. DEAN
Supervising Deputy Attorney General
THOMAS M. MCMAHON
Deputy Attorney General
State Bar No. 106074
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6616
  Fax:  (916) 731-2120
  E-mail:  Thomas.McMahon@doj.ca.gov
*Attorneys for Defendants*
*Lori Pozuelos and Jason Wessely*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JEFF T. GRANGE, M.D.,**<br><br>Plaintiff,<br><br>v.<br><br>**LORI POZUELOS AND JASON WESSELY,**<br><br>Defendants. | 5:22-cv-00340 DSF (AGRx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JASON WESSELY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:          April 8, 2024<br>Time:          1:30 p.m.<br>Courtroom:  7D<br>Judge:         The Honorable Dale S. Fischer<br>Trial Date:   11/12/2024<br>Action Filed: 2/24/2022 |

Defendant Jason Wessely ("Wessely") submits this Memorandum of Points and Authorities in Support of his Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment ("the Motion").

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

**Page**

Introduction.................................................................................................1

Background Facts .........................................................................................2

Argument .....................................................................................................7

I.  Summary Judgment Should Be Granted Where There Is No Genuine Dispute of Material Fact and the Moving Party Is Entitled to Judgment As a Matter of Law ...........................................................................7

II.  Liability Pursuant to 42 U.S.C. Section 1983 .............................8

III.  Action Under Color of State Law ................................................8

IV.  The Alleged Violation of Grange's Constitutional Right............8

V.  The Doctrine of Qualified Immunity ...........................................9

VI.  The Court Should Enter Summary Judgment for Wessely on the Second Claim for Unreasonable Seizure of His Person .........................10

A.  An Officer Who Makes an Arrest Pursuant to a Warrant Is Entitled to Qualified Immunity, Unless He Has Reason to Believe That Probable Cause Was Lacking.................................................................10

B.  Wessely Arrested Grange Pursuant to an Arrest Warrant, and Had No Basis upon Which to Believe That Probable Cause Was Lacking......12

C.  The Fact That Wessely Had Not Read, and Did Not Have a Copy of, the Arrest Warrant Does Not Affect His Qualified Immunity ............12

D.  There Is No Evidence That Wessely Arrested Grange Before the Arrest Warrant Was Signed ....................................................................13

E.  Even If the Warrant Had Not Been Signed at the Time of the Arrest, Wessely Is Entitled to Qualified Immunity Because It Was Objectively Reasonable for Him to Follow the Instruction of His Superior That the Warrant Was Signed and Should Be Executed....................................15

F.  At a Minimum, the Court Should Enter a Partial Summary Judgment for Wessely on the Prayer for Punitive Damages ...............................16

Conclusion ................................................................................................17

# TABLE OF AUTHORITIES

**Page**

CASES

*Adickes v. S.H. Kress & Co.*
   398 U.S. 144 (1970) .................................................................... 7

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) .................................................................... 8

*Ashcroft v. al-Kidd*
   562 U.S. 731 (2011) ................................................................. 9, 10

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) .................................................................... 7

*Conn v. City of Reno*
   591 F.3d 1081 (9th Cir. 2010) ..................................................... 10

*Eisenberg v. Insurance Co. of North America*
   815 F.2d 1285 (9th Cir. 1987) ....................................................... 8

*Elder v. Holloway*
   510 U.S. 510 (1994) .................................................................... 9

*Guerra v. Sutton*
   783 F.2d 1371 (9th Cir. 1986) ..................................................... 13

*Harlow v. Fitzgerald*
   457 U.S. 800 (1982) .................................................................... 9

*Loehr v. Ventura County Community College Dist.*
   743 F.2d 1310 (9th Cir. 1984) ....................................................... 7

*Malley v. Briggs*
   475 U.S. 335 (1986) ................................................ 11, 12, 15, 16

*Manriquez v. Town of Superior*
   No. CV-18-02026-PHX-DWL, 2020 WL 5544407 (D. Ariz. Sept.
   16, 2020) ................................................................................. 13

*Messerschmidt v. Millender*
   565 U.S. 535 (2012) ............................................................. 11, 12

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Mitchell v. Forsyth*
   472 U.S. 511 (1985) ...................................................................................... 10

*Monroe v. Pape*
   365 U.S. 167 (1961) ........................................................................................ 8

*Pearson v. Callahan*
   555 U.S. 223 (2009) ................................................................................... 9, 10

*Poller v. Columbia Broadcast System*
   368 U.S. 464 (1962) ........................................................................................ 7

*Ramirez v. Butte-Silver Bow County*
   298 F.3d 1022 (9th Cir. 2002) ..................................................................... 13

*Reichle v. Howards*
   566 U.S. 658 (2012) ...................................................................................... 11

*Reynaga Hernandez v. Skinner*
   969 F.3d 930 (9th Cir. 2020) ........................................................................ 10

*Saucier v. Katz*
   533 U.S. 194 (2001) ........................................................................................ 9

*Smith v. City of Troy, Ohio*
   874 F.3d 938 (6th Cir. 2017) .......................................................................... 9

*Smith v. Wade*
   461 U.S. 30 (1983) ........................................................................................ 16

*Tracer v. City of Allen Park*
   2015 U.S. Dist. LEXIS 105002 (E. D. of Mich., August 11, 2015) ................ 13

*United States v. Leon*
   468 U.S. 897 (1984) ................................................................................. 11, 12

*Whately v. Warden*
   401 U.S. 560 (1971) ...................................................................................... 13

*White v. Pauly*
   580 U.S. 73 (2017) .......................................................................................... 9

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

United States Code, Title 42
    § 1983 ................................................................................. 8, 10, 13

California Penal Code
    § 1275.1 ........................................................................................ 6, 7

**CONSTITUTIONAL PROVISIONS**

United States Constitution Fourth Amendment ............................... 1, 8, 9

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 56 ............................................................................................ 7, 8
    Rule 56(c) .......................................................................................... 7

**INTRODUCTION**

The Court should enter a summary judgment for Wessely on the sole remaining claim that he violated Plaintiff Jeff T. Grange ("Grange")'s Fourth Amendment right to be free from an unreasonable seizure of his person.

Wessely arrested Grange pursuant to a warrant issued by Judge Bilash of the San Bernardino County Superior Court ("Superior Court"). Accordingly, Wessely is entitled to qualified immunity, unless Grange can establish that no reasonable officer in his position would have believed that probable cause existed. It is undisputed, however, that Wessely played no role in the criminal investigation of Grange, or in the pursuit of a criminal complaint and an arrest warrant. Thus, he was in no position, whatsoever, to believe that probable cause for the arrest warrant was lacking.

As a line officer executing a warrant, Wessely also did not need to have read the warrant, or have a copy of the warrant with him at the time of the arrest. It is sufficient that Sergeant Joe Lopez ("Lopez"), Wessely's superior officer, advised Wessely that the judge had signed the arrest warrant for Grange. Moreover, a signed copy of the arrest warrant was delivered to Wessely within 20-30 minutes of the arrest, before Grange was transported for booking.

Grange's argument that his arrest was invalid because it actually preceded the issuance of the warrant is not supported by any admissible evidence. The undisputed facts are that: *first* Judge Bilash signed the arrest warrant; *then* Detective Lori Pozuelos ("Pozuelos") immediately contacted Lopez; *next* Lopez immediately radioed Wessely; and *finally*, within 5 to 10 minutes, Wessely arrested Grange. Grange's speculation to the contrary is insufficient to defeat this Motion.

Grange's argument that Lopez stated during the arrest that the Judge was "in the middle of signing it right now," fails because Lopez was plainly not referring to the arrest warrant, but to other orders the SBDA was requesting, including an asset freeze.

Grange's argument that there are differing statements in the record as to whether the exact time of the arrest was at 3:50 p.m. or 4:50 p.m. fails because this issue is immaterial. Regardless of which time is correct, the chronology of events set forth above is undisputed, and there was ample time for this chronology of events to play out.

Even if there were some disputed issue of fact on whether the warrant had been signed at the time of the arrest – and there is not – Wessely would still enjoy qualified immunity. It was objectively reasonable for him to believe his superior officer's statement that the warrant had been signed and the arrest should be made. No reasonable officer in that position would have disregarded the instruction.

Grange should never have brought this lawsuit against Wessely, an experienced officer who was only following a superior officer's instruction with respect to an arrest warrant issued by the Superior Court. Grange should have at least dismissed Wessely, as counsel requested, at the close of discovery on liability issues. By that point, Wessely's right to qualified immunity, based upon the uncontradicted deposition testimony of Wessely, Lopez, Defendant Lori Pozuelos ("Pozuelos") and Detective Antonio Camacho ("Camacho"), was undeniable. Instead, Grange has compelled Wessely to proceed with this Motion. The Court should now grant the Motion in its entirety, and enter a full and final judgment for Wessely.

## BACKGROUND FACTS

Wessely is a Regional Supervising Investigator with the California Department of Insurance ("CDI"). (1.)[1] In February of 2020, Wessely had been working as a Detective with CDI for six years. As a peace officer, he was authorized to make arrests within the State of California. (2.) Prior to working for CDI, and for approximately 15 years, Wessely was a police officer with the City of

---

[1] All parentheticals refer to the Separate Statement of Uncontroverted Facts submitted in support of the Motion.

1  Upland and the Fontana School District, and an investigator for another State
2  agency. (3.) Since 2017, Wessely has been an adjunct professor in criminal justice
3  at Taft Community College, and has taught classes on such topics as Introduction to
4  Administration of Justice, which includes the proper procedures with respect to
5  arrests and warrants. (4.)

6      Lopez is a Detective Sergeant with the CDI's Fraud Division. (5.) Lopez has
7  been a Detective Sergeant with CDI's Fraud Division since 2012. From 2016 to the
8  present, Lopez has been assigned to the Inland Empire Regional Office. From 2008
9  to 2012, Lopez was a Detective with CDI's Fraud Division's Inland Empire
10  Regional Office. (6.)

11      In early February of 2020, Lopez was assigned a new team of CDI Fraud
12  Division detectives to supervise. The team included Wessely, Pozuelos and
13  Camacho. (7.)

14      Soon after Lopez' assignment, he learned that Pozuelos had conducted a
15  criminal investigation of Grange, and had submitted it to the San Bernardino
16  County District Attorney's Office ("SBDA"). Pozuelos told Lopez that she was
17  awaiting a decision from the SBDA on whether to charge Grange. Lopez had not
18  been involved in this criminal investigation, and Pozuelos' work on the
19  investigation had been supervised by her previous detective sergeants. Lopez
20  reviewed Pozuelos' Report of Investigation in order to become familiar with the
21  case on which she was working, and formed the belief that it established probable
22  cause to charge Grange with medical insurance fraud. (8.)

23      In February of 2020, Wessely knew that Pozuelos had conducted a criminal
24  investigation of Grange and had submitted it to the SBDA. Wessely was not
25  involved in this criminal investigation, and was not aware of any of the facts
26  relating to it. (9.)

27      On February 10, 2020, Lopez learned that the SBDA had decided to file a
28  criminal complaint against Grange, based upon the SBDA's review of Pozuelos'

investigation. (10.) CDI Fraud Division Captain Vladislav Mikulich ("Mikulich")
told Lopez that the reason for the timing of the SBDA's filing was the SBDA's
concern that the statute of limitations might soon expire with respect to some of the
incidents referred to in the criminal investigation. The timing of the criminal
complaint filing had nothing to do with its potential impact upon a civil action that
Grange was litigating at the time. The possibility of any impact was never
mentioned by Lopez, Captain Mikulich, Supervising Deputy District Attorney
William Lee, Pozuelos, or anyone else with whom Lopez communicated
concerning Grange. (11.)

Mikulich and Lopez agreed to form a CDI Fraud Division team to arrest
Grange after the complaint was filed and an arrest warrant was issued by the
Superior Court. They did not consider the possibility of a self-surrender by Grange,
rather than an arrest, because the case involved major fraud allegations, Grange had
means at his disposal, and a request to surrender could result in defendant flight,
document destruction or witness tampering. (12.)

A few days prior to February 27, 2020, Lopez asked Wessely and Camacho to
join him in a team to arrest Grange on charges of insurance fraud, if and when a
judge of the Superior Court issued an arrest warrant. The arrest team communicated
with Pozuelos with respect to certain information that she had about Grange. (13.)
Lopez decided that the arrest team should attempt to arrest Grange in the parking
lot adjacent to the Superior Court. Pozuelos advised the arrest team that Grange had
been attending a trial in a civil action at the Superior Court, and might be in the
parking lot after the proceedings concluded for the day. (14.) Lopez chose that
location because of an officer safety concern. Pozuelos advised the arrest team that
Grange had multiple weapons and a secured home. An arrest at the parking lot,
after Grange had been screened for weapons at the Superior Court, would avoid a
possibility of a confrontation at his home and address the officer safety concern.
(15.)

On February 26, 2020, Lopez learned that the SBDA had decided to file criminal charges against Grange on February 27th. Lopez received confirmation on the morning of February 27th that the criminal complaint had been filed. Lopez also learned that Pozuelos would appear at the Superior Court that afternoon to obtain an arrest warrant. Accordingly, Lopez decided that the arrest team would travel to the Superior Court's parking lot on the afternoon of February 27, 2020, and attempt to arrest Grange after the warrant was issued. Lopez so advised Wessely. (16.)

In the early afternoon of February 27, 2020, Camacho and Wessely arrived at the parking lot in their vehicle. Lopez also arrived at the parking lot in a separate vehicle. The arrest team located Grange's vehicle, using his license plate number. They had a DMV photograph of Grange so that they could identify him. They waited in the parking lot for further information. (17.)

In the late afternoon of February 27, 2020, at some point after 3:30 p.m., Lopez received a communication from Pozuelos, either by phone or text. She told Lopez that she had just seen the judge of the Superior Court sign and hand over the warrant for the arrest of Grange. Pozuelos and Lopez agreed that the arrest of Grange should now proceed. Pozuelos also told Lopez that the judge was still considering other orders that the SBDA was requesting. (18.)

Immediately after hearing from Pozuelos, Lopez contacted Wessely, through their CDI-issued radios. Lopez told Wessely that he had just received word from Pozuelos that a judge of the Superior Court had signed the warrant for the arrest of Grange. Lopez told Wessely that he and Camacho should arrest Grange if and when he appeared in the parking lot. (19.)

Approximately 5 to 10 minutes after Wessely received the communication from Lopez, they observed Grange in the parking lot. Wessely, Camacho and Lopez exited their vehicles. Wessely approached Grange and told him that there was a warrant for his arrest. Wessely placed Grange under arrest, in the presence of Lopez, Camacho and Grange's lawyer. (20.)

Wessely's arrest of Grange was not pursuant to any belief on his part with respect to the existence of probable cause. Wessely arrested Grange solely because he was told by his supervisor, Lopez, that a warrant for Grange's arrest had been signed by a judge of the Superior Court. If Wessely had not been told that by Lopez, he would not have arrested Grange. (21.)

A recording of the arrest reveals that, at one point, in response to a question about the amount of bail, Lopez indicated that it would probably be $4 million. Lopez was speculating, based upon his knowledge that the amount of the alleged fraud was approximately $2 million, and his experience that bail amounts were typically twice the amount of the alleged fraud. Lopez was hoping to diffuse the tension at the scene of the arrest by indicating a possibility of bail. In fact, when Pozuelos contacted Lopez to advise him that the judge had signed the arrest warrant, she did not advise Lopez about any determination with respect to bail. Lopez later learned that the judge had written "no bail" on the arrest warrant, in order to hold Grange for a bail hearing pursuant to Penal Code section 1275.1. (22.)

The recording also reveals that, at another point, Lopez indicated that "the judge is in the middle of signing it right now." Lopez was not referring to the arrest warrant. Lopez had been clearly advised by Pozuelos that the arrest warrant had been signed before the arrest team approached Grange. Lopez was instead referring to the other orders for relief that the SBDA was requesting, which included a freeze on certain assets. (23.)

Before transporting Grange to the West Valley Detention Center for booking, the arrest team waited with Grange and his lawyer in the parking lot for a copy of the signed arrest warrant. Approximately 20 to 30 minutes after Wessely advised Grange that there was a warrant for his arrest, a detective delivered a signed copy of the arrest warrant to the arrest team in the Superior Court's parking lot. The arrest warrant set forth the judge's indication of "no bail" in order to hold Grange for a

/ / /

bail hearing pursuant to Penal Code section 1275.1. A true and correct copy of the signed arrest warrant is at Tab 39 of the Exhibits. (24.)

Late in the afternoon of February 27, 2020, after the arrest team had received a signed copy of the arrest warrant, Wessely and Camacho transported Grange to the West Valley Detention Center for booking. (25.)

Wessely recorded the arrest of Grange, and wrote an arrest report that was reviewed by Lopez. Both the recording and the report have been produced in this case. A true and correct copy of the arrest report is at Tab 40 of the Exhibits. (26.)

Wessely had no other involvement in the arrest or prosecution of Grange. Other than supervising Pozuelos in her response to any further inquiries from the SBDA, Lopez had no other role in the arrest or prosecution of Grange. Lopez was not pleased that the SBDA decided, in July of 2021, to dismiss the criminal charges against Grange for medical insurance fraud, because he believed that the charges were valid. (27.)

## ARGUMENT

**I.    SUMMARY JUDGMENT SHOULD BE GRANTED WHERE THERE IS NO GENUINE DISPUTE OF MATERIAL FACT AND THE MOVING PARTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P., Rule 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The moving party's burden under Rule 56 is met simply by "'showing' – *i.e.*, pointing out to the District Court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party's failure of proof on an essential element of its claim renders all other facts immaterial. *Id.* at 322-23.

/ / /

In determining whether there is a "genuine dispute" for Rule 56 purposes, the court must decide whether a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). If any evidence produced against a defendant's motion is "merely colorable" or "not significantly probative," the motion must be granted. *Id.* at 249; *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288 (9th Cir. 1987).

## II.    LIABILITY PURSUANT TO 42 U.S.C. SECTION 1983.

Grange's claim against Wessely is for an alleged violation of his civil rights. (First Amended Complaint ["FAC"], Dkt. 14, ¶¶ 71-76.) The Federal Civil Rights Act of 1871, 42 U.S.C. Section 1983 permits an individual to maintain a cause of action against a person acting under color of state law who violates the individual's constitutional or other federally protected rights.

## III.    ACTION UNDER COLOR OF STATE LAW.

The threshold question in a Section 1983 action is whether the defendant was "acting under color of" state law. The purpose of the statute is to allow redress for injuries inflicted by an official acting on behalf of the state government. *Monroe v. Pape*, 365 U.S. 167 (1961), *overruled on other grounds*, *Monell v. Department of Soc. Services,* 436 U.S. 658 (1978). Wessely concedes that his conduct at issue in this case was under the color of state law.

## IV.    THE ALLEGED VIOLATION OF GRANGE'S CONSTITUTIONAL RIGHT.

The second question arising in an action pursuant to Section 1983 is whether the alleged conduct violates the plaintiff's right under the United States Constitution or other federal law. In this case, Grange alleges that Wessely violated his right under the Fourth Amendment of the United States Constitution. (FAC, ¶¶ 71-76.) [2] The Fourth Amendment states that "[t]he right of the people to be secure

---

[2] Although the First Amended Complaint also asserted claims for conspiracy and intentional infliction of emotional distress against both Wessely and Pozuelos (Claims One and Eight), the Court granted the Defendants' Motion to Dismiss as to those claims (Dkt. 23), and Grange did not file any amended pleading.

in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const., Amendment IV.

## V.   THE DOCTRINE OF QUALIFIED IMMUNITY.

Even if conduct is found to violate a constitutional right, a state official has qualified immunity if it was not well established by precedent, at the time, that such conduct would constitute a constitutional violation. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Ashcroft v. al-Kidd*, 562 U.S. 731 (2011). Once invoked, the burden is on *the plaintiff* to establish that the public official is *not* entitled to qualified immunity. *Smith v. City of Troy, Ohio*, 874 F.3d 938 (6th Cir. 2017).

In determining whether an official is entitled to qualified immunity, the court applies a two-part test: (1) was the defendant's conduct a violation of the plaintiff's constitutional rights; *and* (2) was there clearly established precedent at the time that the defendant's conduct would constitute a violation of the plaintiff's constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A plaintiff must satisfy *both* prongs to disprove qualified immunity. The court has discretion to decide which prong to address first. *Pearson v. Callahan,* 555 U.S. 223 (2009). Whether or not there was clearly established precedent is a question of law for the Court. *Elder v. Holloway*, 510 U.S. 510 (1994).

The second prong of qualified immunity is that immunity attaches when an official's conduct "…does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *White v. Pauly,* 580 U.S. 73 (2017). Although the Supreme Court case law "…do[es] not require a case directly on point" for a right to be clearly established, "…existing precedent must have placed the statutory or constitutional question beyond debate." In other words, immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* "Officers are entitled to qualified immunity if they reasonably

misapprehend how the law would govern in their particular situation." *Conn v. City of Reno*, 591 F.3d 1081, 1102 (9th Cir. 2010), *vacated on other grounds*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011). *See also Ashcroft,* 563 U.S. at 741 ("[E]xisting precedent must have placed the statutory or constitutional question beyond debate.")

## VI.   THE COURT SHOULD ENTER SUMMARY JUDGMENT FOR WESSELY ON THE SECOND CLAIM FOR UNREASONABLE SEIZURE OF HIS PERSON.

As noted, Grange alleges one remaining claim against Wessely, for violating his constitutional right to be free from unreasonable seizure of his person. (FAC, Second Claim, ¶¶ 71-76). However, because it is undisputed that Wessely was a line officer, who made the arrest upon the instruction of his supervisor that a warrant had been issued, and did not participate in the criminal investigation or the warrant application, he is entitled to qualified immunity as a matter of law.

### A.   An Officer Who Makes an Arrest Pursuant to a Warrant Is Entitled to Qualified Immunity, Unless He Has Reason to Believe That Probable Cause Was Lacking.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Public officials -- including arresting officers -- are qualifiedly immune from suit under Section 1983 except where the violation should have been obvious to the official because the right at issue was "clearly established." *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941-42 (9th Cir. 2020) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). "To be clearly established, a right must be sufficiently clear "that / / /

1   every 'reasonable official would [have understood] that what he is doing violates

2   that right.'" *Reichle v. Howards*, 566 U.S. 658 (2012) (citations omitted).

3       An officer who acts pursuant to a warrant issued by a neutral magistrate is

4   entitled to qualified immunity. As the Supreme Court observed in *Messerschmidt v.*

5   *Millender*, 565 U.S. 535 (2012) ("*Messerschmidt*"):

6           Where the alleged Fourth Amendment violation involves a search or

7       seizure pursuant to a warrant, the fact that a neutral magistrate has issued

8       a warrant is the clearest indication that the officers acted in an objectively

9       reasonable manner or, as we have sometimes put it, in "objective good

10      faith." *United States v. Leon*, 468 U.S. 897, 922-923, 104 S. Ct. 3405, 82

11      L. Ed. 2d 677 (1984). Nonetheless, under our precedents, the fact that a

12      neutral magistrate has issued a warrant authorizing the allegedly

13      unconstitutional search or seizure does not end the inquiry into objective

14      reasonableness. Rather, we have recognized an exception allowing suit

15      when "it is obvious that no reasonably competent officer would have

16      concluded that a warrant should issue." *Malley v. Briggs*, 475 U.S. 335,

17      341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). The "shield of immunity"

18      otherwise conferred by the warrant, 475 U.S. at 345, will be lost, for

19      example, where the warrant was "based on an affidavit so lacking in

20      indicia of probable cause as to render official belief in its existence

21      entirely unreasonable," *Leon*, 468 U.S., at 923 (internal quotation marks

22      omitted).

23          Our precedents make clear, however, that the threshold for

24      establishing this exception is a high one, and it should be. As we

25      explained in *Leon*, "[i]n the ordinary case, an officer cannot be expected

26      to question the magistrate's probable-cause determination" because "[i]t

27      is the magistrate's responsibility to determine whether the officer's

28      allegations establish probable cause and, if so, to issue a warrant

comporting in form with the requirements of the Fourth Amendment."

*Id.*, at 921, 104 S. Ct. 3405, 82 L. Ed. 2d 677; see also *Malley*, 475 U.S.,

at 346, n. 9 ("It is a sound presumption that the magistrate is more

qualified than the police officer to make a probable cause determination,

and it goes without saying that where a magistrate acts mistakenly in

issuing a warrant but within the range of professional competence of a

magistrate, the officer who requested the warrant cannot be held liable"

(internal quotation marks and citation omitted).)

*Messerschmidt*, 565 U.S. at 546-48.

**B.**  **Wessely Arrested Grange Pursuant to an Arrest Warrant, and Had No Basis upon Which to Believe That Probable Cause Was Lacking.**

In this case, the only conduct by Wessely that is alleged is that on February 27, 2020, at the end of the day of trial in the civil action, he arrested Grange outside the Superior Court. (FAC, ¶¶ 39-40.) It is uncontroverted that Wessely arrested Grange only because he was told by his supervisor that an arrest warrant had been issued. (13, 17, 19 to 21.) Wessely had no knowledge of, or participation in, the investigation of Grange, or the pursuit of a criminal complaint and an arrest warrant. (9, 13, 17, 19 to 21 and 27.) Accordingly, Wessely had no basis upon which he could have believed that the arrest warrant, issued by a neutral magistrate, was so lacking in probable cause that no reasonable officer would execute it. The exception to qualified immunity recognized in *Messerchmidt*, when an officer is acting upon a warrant, simply does not apply in this case.

**C.**  **The Fact That Wessely Had Not Read, and Did Not Have a Copy of, the Arrest Warrant Does Not Affect His Qualified Immunity.**

Grange may argue that Wessely had not read the arrest warrant, and did not have a copy of it, when he arrested Grange. However, neither fact defeats Wessely's qualified immunity. As a line officer, merely executing the warrant, Wessely did not have to read or see the warrant, and could accept the word of his

superior that a warrant existed, and that it was valid. *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1028 (9th Cir. 2002); *Guerra v. Sutton*, 783 F.2d 1371, 1375 (9th Cir. 1986).

As the Supreme Court has observed, "[c]ertainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause." *Whately v. Warden*, 401 U.S. 560, 568 (1971) (noting, however, that the arrest might still be invalid if the officer requesting the aid did not establish the existence of probable cause). As an officer assisting only in the execution of the arrest warrant for Grange, and not its procurement, Wessely has no liability to Grange.

Nor can the knowledge of other public officers, such as Pozuelos, be imputed to Wessely to establish a lack of reasonable belief in the existence of probable cause on his part. *See, e.g., Manriquez v. Town of Superior*, No. CV-18-02026-PHX-DWL, 2020 WL 5544407 (D. Ariz. Sept. 16, 2020) (finding that a Section 1983 claim for an illegal search was barred by qualified immunity because the plaintiff did not establish that a specific officer's role went beyond mere participation in a search led by others).

### D.   There Is No Evidence That Wessely Arrested Grange Before the Arrest Warrant Was Signed.

Grange's argument that Wessely made the arrest before Judge Bilash issued the arrest warrant also fails as a matter of law. To maintain a Section 1983 claim against an arresting officer on the theory that the judge had not yet signed the arrest warrant at the time the arrest was made, as Grange does here, the plaintiff bears the burden of establishing that the arrest preceded the signing of the arrest warrant. *See e.g. Tracer v. City of Allen Park*, 2015 U.S. Dist. LEXIS 105002 at *65 (E. D. of Mich., August 11, 2015).

/ / /

In this case, the uncontroverted evidence establishes the following chronology of events: *first*, Judge Bilash signed and handed over the arrest warrant to Pozuelos, *second*, Pozuelos immediately contacted Lopez and told him that the arrest warrant was signed, *third,* Lopez immediately radioed Wessely and told him the arrest warrant was signed and that he should arrest Grange, and *fourth,* Grange appeared 5-10 minutes later and was arrested by Wessely. (17 to 20.)

It strains credulity to imagine that an officer as experienced as Wessely, who had been advised of an arrest plan contingent upon receiving confirmation that the arrest warrant had been signed, suddenly decided to arrest Grange, on sight, without any indication that the arrest warrant had been signed. Grange's rank speculation is the only real basis for this theory. The only purported "evidence" adduced by Grange to support it is that: (i) Lopez commented during the arrest that "the judge is still working on it," and (ii) there are differing statements in the record concerning the exact time that the arrest took place.

With respect to Lopez' comment, it is clear that he was not referring to the arrest warrant, but to other orders that the judge was still considering at the time of the arrest, such as the freeze order. (23.) Any misstatement by Lopez in this regard, or any confusion that it may have generated, was momentary. A signed copy of the arrest warrant was delivered to the arrest team in the Superior Court parking lot, within 20 to 30 minutes of the arrest, before Grange was transported for booking. (24 and 25.)[3]

With respect to the existence of differing statements about the exact time of the arrest, those statements, and that issue, are immaterial to the disposition of this Motion. The arrest report does state in one place that the arrest occurred at 3:50 pm, and in another place, at 4:50 pm. (Exhibit Tab 39.) The time stamp on the recording

---

[3] Lopez' additional statement during the arrest that the bail would probably be $4 million also does not establish that the warrant was unsigned at the time of the arrest. Although Lopez speculated about bail, in order to diffuse tension during the arrest (22), that fact does not establish that the warrant was unsigned at the time of the arrest.

of the arrest appears to indicate that the latter time would be correct, as does the best recollection of Wessely at his deposition. However, the time on February 27th that the trial in the civil action that Grange was attending concluded (3:30 p.m.), and the possible meaning of certain phone records that Grange has produced (albeit after the liability discovery cut-off), and the possibility of declarations from Grange and/or his lawyer concerning their recollections, might suggest that 3:50 pm was the correct time of the arrest.

However, the plain fact is that ***it does not matter which time is correct.*** What matters is that it is uncontroverted, by any admissible evidence, that ***first*** the Judge signed the warrant, ***then*** Pozuelos immediately contacted Lopez, ***then*** Lopez immediately radioed Wessely, and ***then***, within 5 to 10 minutes, Wessely arrested Grange. Whether the last item took place at 3:50 p.m. or 4:50 p.m. is immaterial, because it is the sequence of the events which controls. Pozuelos has testified without contradiction that she was in chambers by 3:30 pm, and Judge Bilash immediately signed the warrant. (Uncontroverted Fact 35 with respect to Pozuelos Motion.) Thus, there was ample time for the sequence of events to have resulted in the arrest of Grange at either 3:50 pm, or 4:50 pm, or at any time in between. The Court should not become bogged down in the possibility of a dispute concerning an ***im***material fact, *i.e.*, the exact time of the arrest.

**E.    Even If the Warrant Had Not Been Signed at the Time of the Arrest, Wessely Is Entitled to Qualified Immunity Because It Was Objectively Reasonable for Him to Follow the Instruction of His Superior That the Warrant Was Signed and Should Be Executed.**

Even if there were a triable issue of fact on whether the warrant was signed before the arrest was made – and there is not, for all of the reasons set forth in the preceding section – Wessely would still be entitled to qualified immunity. As noted, the governing standard for an officer's qualified immunity is whether the officer's conduct was "objectively reasonable." *Malley*, 475 U.S. 344-45. Unless it can be

/ / /

concluded that **no** reasonably competent officer would have behaved as the defendant officer behaved, the shield of qualified immunity remains in effect. (*Id*.)

In this case, it is uncontroverted that Lopez, Wessely's superior officer, told Wessely that: (i) a judge had signed a warrant for the arrest of Grange, and (ii) Wessely should make the arrest. (18 and 19.) Any reasonable officer in Wessely's position would have believed that the arrest warrant had been signed, and would have proceeded to arrest Grange. No reasonable officer would have, instead, disregarded his superior officer's instruction that an arrest warrant had been signed and that an arrest should be made. Grange will be incapable of submitting any admissible to the contrary.

Put another way, if it is Grange's theory that, at the time of the arrest, the decision to arrest him was premature, Wessely is not the proper defendant. There is no evidence that ***Wessely*** made the decision to arrest Grange at that point. Although Grange might conceivably argue that Lopez acted prematurely in instructing Wessely to arrest Grange, Lopez is not a party to this action, and the time for amending the pleading, or adding new parties, has long since passed.

## F.   At a Minimum, the Court Should Enter a Partial Summary Judgment for Wessely on the Prayer for Punitive Damages.

The Court should grant a partial summary judgment for Wessely on Grange's prayer for punitive damages. There is no evidence that Wessely acted with callous indifference or reckless disregard of Grange's constitutional rights. *Smith v. Wade*, 461 U.S. 30 (1983). At most, Grange might conceivably convince a jury that Wessely was premature in arresting Grange. But there is zero evidence that Wessely's conduct exhibited a callous disregard or deliberate indifference to Grange's constitutional rights**.**

To the contrary, Wessely was an experienced officer with no prior knowledge of, or antipathy towards, Grange. He was merely following the instruction of his superior officer that a judge had signed a warrant for Grange's arrest, and that

Wessely should arrest Grange. Wessely's arrest of Grange was conducted in a fair and reasonable manner. No reasonable jury could conclude otherwise.

## CONCLUSION

For each of the foregoing reasons, Wessely requests that the Court grant the Motion in its entirety, and enter a summary judgment for Wessely. In the alternative, Wessely requests that the Court enter a partial summary judgment for Wessely on the claim for punitive damages.

Dated:  March 11, 2024                        Respectfully submitted,

                                             ROB BONTA
                                             Attorney General of California
                                             DONNA M. DEAN
                                             Supervising Deputy Attorney General


                                             /s/ Thomas M. McMahon

                                             THOMAS M. MCMAHON
                                             Deputy Attorney General
                                             *Attorneys for Defendants*
                                             *Lori Pozuelos and Jason Wessely*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Lori Pozuelos and Jason Wessely, certifies that this brief contains 5,496 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 11, 2024                    Respectfully submitted,

                                          ROB BONTA
                                          Attorney General of California
                                          DONNA M. DEAN
                                          Supervising Deputy Attorney General


                                          /s/ Thomas M. McMahon

                                          THOMAS M. MCMAHON
                                          Deputy Attorney General
                                          *Attorneys for Defendants*
                                          *Lori Pozuelos and Jason Wessely*