Rob Bonta
Attorney General of California
Donna M. Dean
Supervising Deputy Attorney General
Thomas M. McMahon
Deputy Attorney General
State Bar No. 106074
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013-1230
 Telephone:  (213) 269-6616
 Fax:  (916) 731-2120
 E-mail:  Thomas.McMahon@doj.ca.gov
*Attorneys for Defendants*
*Lori Pozuelos and Jason Wessely*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JEFF T. GRANGE, M.D.,**<br><br>Plaintiff,<br><br>v.<br><br>**LORI POZUELOS AND JASON WESSELY,**<br><br>Defendants. | 5:22-cv-00340 DSF (AGRx)<br><br>**DECLARATION OF JOE LOPEZ IN SUPPORT OF DEFENDANT JASON WESSELY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:        April 8, 2024<br>Time:        1:30 pm<br>Courtroom:   7D<br>Judge:       The Honorable Dale S. Fischer<br>Trial Date:  11/12/2024<br>Action Filed: 2/24/2022 |

I, Joe Lopez, declare:

1.) I am a Detective Sergeant with the California Department of Insurance ("CDI")'s Fraud Division. I submit this declaration in support of Defendant Jason Wessely's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment ("the Motion"). I have personal knowledge of the facts recited herein, and if called as a witness, could and would testify competently thereto.

2.) I have been a Detective Sergeant with CDI's Fraud Division since 2012. From 2016 to the present, I have been assigned to the Inland Empire Regional Office. From 2008 to 2012, I was a Detective with CDI's Fraud Division's Inland Empire Regional Office.

3.) In early February of 2020, I was assigned a new team of CDI Fraud Division detectives to supervise. The team included Detective Lori Pozuelos ("Pozuelos"), Detective Jason Wessely ("Wessely") and Detective Antonio Camacho ("Camacho").

4.) Soon after the assignment, I learned that Pozuelos had conducted a criminal investigation of Plaintiff Jeff T. Grange ("Grange"), and had submitted it to the San Bernardino County District Attorney's Office ("SBDA"). She told me that she was awaiting a decision from the SBDA on whether to charge Grange. I had not been involved in this criminal investigation, and Pozuelos' work on the investigation had been supervised by her previous detective sergeants. I reviewed Pozuelos' Report of Investigation in order to become familiar with the case on which she was working, and formed the belief that it established probable cause to charge Grange with medical insurance fraud.

5.) On February 10, 2020, I learned that the SBDA had decided to file a criminal complaint against Grange, based upon the SBDA's review of Pozuelos' investigation.

6.) CDI Fraud Division Captain Vladislav Mikulich ("Mikulich") told me that the reason for the timing of the SBDA's filing was the SBDA's concern that the statute of limitations might soon expire with respect to some of the incidents referred to in the criminal investigation. The timing of the criminal complaint filing had nothing to do with its potential impact upon a civil action that Grange was litigating at the time. The possibility of any impact was never mentioned by me, Captain Mikulich, Supervising Deputy District Attorney William Lee, Pozuelos, or anyone else with whom I communicated concerning Grange.

2

1       7.) Mikulich and I agreed to form a CDI Fraud Division team to arrest

2 Grange after the complaint was filed and an arrest warrant was issued by the San

3 Bernardino County Superior Court ("Superior Court"). We did not consider the

4 possibility of a self-surrender by Grange, rather than an arrest, because the case

5 involved major fraud allegations, Grange had means at his disposal, and a request to

6 surrender could result in defendant flight, document destruction or witness

7 tampering.

8       8.) A few days prior to February 27, 2020, I asked Wessely and Camacho to

9 join me in a team to arrest Grange on charges of insurance fraud, if and when a

10 judge of the Superior Court issued an arrest warrant. The arrest team communicated

11 with Pozuelos with respect to certain information that she had about Grange.

12       9.) I decided that the arrest team should attempt to arrest Grange in the

13 parking lot adjacent to the Superior Court.  Pozuelos advised the arrest team that

14 Grange had been attending a trial in a civil action at the Superior Court, and might

15 be in the parking lot after the proceedings concluded for the day.

16       10.) I chose that location because of an officer safety concern. Pozuelos

17 advised the arrest team that Grange had multiple weapons and a secured home. An

18 arrest at the parking lot, after Grange had been screened for weapons at the Superior

19 Court, would avoid a possibility of a confrontation at his home and address the

20 officer safety concern.

21       11.) On February 26, 2020, I learned that the SBDA had decided to file

22 criminal charges against Grange on February 27th. I received confirmation on the

23 morning of February 27th that the criminal complaint had been filed. I also learned

24 that Pozuelos would appear at the Superior Court that afternoon to obtain an arrest

25 warrant. Accordingly, I decided that the arrest team would travel to the Superior

26 Court's parking lot on the afternoon of February 27th, and attempt to arrest Grange

27 after the warrant was issued.

28

1    12.)  In the early afternoon of February 27, 2020, Wessely and Camacho

2    arrived at the parking lot in their vehicle. I also arrived at the parking lot in a

3    separate vehicle. We located Grange's vehicle, using his license plate number. We

4    had a DMV photograph of Grange so that we could identify him. We waited in the

5    parking lot for further information.

6    13.)  In the late afternoon of February 27, 2020, at some point after 3:30 p.m.,

7    I received a communication from Pozuelos, either by phone or text. She told me

8    that she had just seen the judge of the Superior Court sign and hand over the

9    warrant for the arrest of Grange. We agreed that the arrest of Grange should now

10   proceed. She told me that the judge was still considering other orders that the

11   SBDA was requesting. I immediately contacted Wessely, through our CDI-issued

12   radios. I told Wessely that I had just received word from Pozuelos that a judge of

13   the Superior Court had signed the warrant for the arrest of Grange. I told Wessely

14   that he and Camacho should arrest Grange if and when he appeared in the parking

15   lot.

16   14.)  Approximately 5 to 10 minutes after I contacted Wessely, we observed

17   Grange in the parking lot. Wessely, Camacho and I exited our vehicles. Wessely

18   approached Grange and told him that there was a warrant for his arrest. Wessely

19   placed Grange under arrest, in the presence of myself, Camacho and Grange's

20   lawyer.

21   15.)  A recording of the arrest reveals that, at one point, in response to a

22   question about the amount of bail, I indicated that it would probably be $4 million.

23   I was speculating, based upon my knowledge that the amount of the alleged fraud

24   was approximately $2 million, and my experience that bail amounts were typically

25   twice the amount of the alleged fraud. I was hoping to diffuse the tension at the

26   scene of the arrest by indicating a possibility of bail. In fact, when Pozuelos

27   contacted me to advise me that the judge had signed the arrest warrant, she did not

28   advise me about any determination with respect to bail. I later learned that the judge

1    had written "no bail" on the arrest warrant, in order to hold Grange for a bail

2    hearing pursuant to Penal Code section 1275.1.

3    16.) The recording also reveals that, at another point, I indicated that "the

4    judge is in the middle of signing it right now." I was not referring to the arrest

5    warrant. I had been clearly advised by Pozuelos that the arrest warrant had been

6    signed before the arrest team approached Grange. I was instead referring to the

7    other orders for relief that the SBDA was requesting, which included a freeze on

8    certain assets.

9    17.) Before transporting Grange to the West Valley Detention Center for

10   booking, the arrest team waited with Grange and his lawyer in the parking lot for a

11   copy of the signed arrest warrant. Approximately 20 to 30 minutes after Wessely

12   advised Grange that there was a warrant for his arrest, a detective delivered a signed

13   copy of the arrest warrant to the arrest team in the Superior Court's parking lot. The

14   arrest warrant set forth the judge's indication of "no bail" in order to hold Grange

15   for a bail hearing pursuant to Penal Code section 1275.1.

16   18.) Late in the afternoon of February 27, 2020, after the arrest team had

17   received a signed copy of the arrest warrant, Wessely and Camacho transported

18   Grange to the West Valley Detention Center for booking.

19   19.) Wessely recorded the arrest of Grange, and wrote an arrest report that I

20   reviewed. Both the recording and the report have been produced in this case.

21   20.) Other than supervising Pozuelos in her response to any further inquiries

22   from the SBDA, I had no other role in the arrest or prosecution of Grange.  I was

23   not pleased that the SBDA decided, in July of 2021, to dismiss the criminal charges

24   against Grange for medical insurance fraud, because I believed that the charges

25   were valid.

26

27

28

1        I declare under penalty of perjury of the laws of the United States of America

2    that the foregoing is true and correct, and that this declaration is executed this First

3    day of March, 2024 at Rancho Cucamonga, California.

4

5                                              Joe Lopez