Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jerry A. Behnke (SBN 180462)
*jbehnke@larsonllp.com*
Daniel R. Lahana (SBN 305664)
*dlahana@larsonllp.com*
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, CA 90071
Tel.:  (213) 436-4888
Fax:  (213) 623-2000

Attorneys for Plaintiff
JEFF T. GRANGE, M.D.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| JEFF T. GRANGE, M.D.<br><br>    Plaintiff,<br><br>    vs.<br><br>LORI POZUELOS, in her individual and official capacity; JASON WESSELY, in his individual and official capacity; and DOES 1-10, individuals.<br><br>    Defendants. | CASE NO. 5:22-cv-00340 DSF (AGRx)<br><br>Judge: Hon. Dale S. Fischer<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:         April 8, 2024<br>Time:         1:30 p.m.<br>Courtroom:  7D<br>Trial Date:   11/12/2024<br>Action Filed: 2/24/2022 |

LARSON
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................. 7

II.    BACKGROUND .................................................................................................. 8

III.    LEGAL STANDARD ......................................................................................... 20

IV.    ARGUMENT ...................................................................................................... 20

A.    There Are Triable Issues of Fact As To Dr. Grange's Second, Third, and Fourth Claims Based on Pozuelos' Judicial Deception ...... 20

    1.    Arrest Warrant ................................................................. 21

    2.    Declaration In Support of Bail Hold ............................. 23

    3.    Declaration In Support of Temporary Restraining Order Freezing Dr. Grange's Assets ....................................... 23

    4.    By Her Own Admission, Pozuelos Acted Deliberately ............. 24

    5.    When Pozuelos' False Statements Are Corrected, And The Omissions Are Included, There Is No Probable Cause ............. 25

    6.    Pozuelos' Other Arguments Related to Judicial Deception Claims Are Flawed ...................................................... 27

B.    There Are Triable Issues of Fact For Dr. Grange's Fifth Claim For Deliberate Fabrication of Evidence and Withholding Material Information .................................................................. 28

C.    There Are Triable Issue of Fact For Dr. Grange's Sixth Claim For Malicious Prosecution ....................................................... 29

D.    There Are Triable Issue of Fact For Dr. Grange's Seventh Claim For Retaliation .......................................................................... 30

E.    Qualified Immunity Does Not Apply ......................................... 31

F.    There Are Triable Issues Regarding Punitive Damages .............. 33

V.    CONCLUSION ................................................................................................... 33

CERTIFICATE OF COMPLIANCE ............................................................................ 335

CERTIFICATE OF SERVICE ..................................................................................... 36

LARSON
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ........................................................................32

*Awabdy v. City of Adelanto*,
  368 F.3d 1062 (9th Cir. 2004) ..............................................28, 29

*Baldwin v. Placer County*,
  418 F.3d 966 (9th Cir.2005) ...........................................................26

*Ballentine v. Tucker*,
  28 F.4th 54 (9th Cir. 2022) .............................................................31

*Braxton–Secret v. A.H. Robins Co.*,
  769 F.2d 528 (9th Cir. 1985) ..........................................................30

*Butler v. Elle*,
  281 F.3d 1014 (9th Cir. 2002) .........................................................25

*Castro v. Cnty. of Los Angeles*,
  833 F.3d 1060 (9th Cir. 2016) .........................................................31

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................20

*Chism v. Washington State*,
  661 F.3d 380 (9th Cir. 2011) ..........................................................32

*Deorle v. Rutherford*,
  272 F.3d 1272 (9th Cir. 2001) .........................................................32

*Desert Palace, Inc. v. Costa* (2003)
  539 US 90 ........................................................................................30

*Devereaux v. Abbey*,
  263 F.3d 1070 (9th Cir. 2001) ..................................................28, 32

*Dubner v. City & Cnty. of S.F.*,
  266 F.3d 959 (9th Cir. 2001) ..........................................................22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S
OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

*Ewing v. City of Stockton*,
    588 F.3d 1218 (9th Cir. 2009)......................................................................22, 26

*Ford v. City of Yakima*,
    706 F.3d 1188 (9th Cir. 2013), abrogated in part by *Nieves v. Bartless*, 139 S.Ct. 1715 (2019) .........................................................27, 30, 32

*Franks v. Delaware* (1978)
    438 U.S. 154438 U.S. 154 ............................................................................21, 25

*Hervey v. Estes*,
    65 F.3d 784 (9th Cir.1995) ............................................................................21, 25

*Houghton v. South*,
    965 F.2d 1532 (9th Cir. 1992) ..............................................................................31

*Lacey v. Maricopa Cty.*,
    693 F.3d 896 (9th Cir. 2012) ........................................................................29, 30

*LaLonde v. County of Riverside*,
    204 F.3d 947 (9th Cir.2000) ..................................................................................31

*Liston v. County of Riverside*,
    120 F.3d 965 (9th Cir.1997) .........................................................................24, 26

*Lombardi v. City of El Cajon*,
    117 F.3d 1117 (9th Cir. 1997) ......................................................................21, 25

*Longoria v. Pinal Cty.*,
    873 F.3d 699 (9th Cir. 2017) ........................................................................31, 32

*Lozman v. City of Riviera Beach, Fla.*,
    585 U.S. 87 (2018) .................................................................................................31

*Martin v. County of San Diego*,
    650 F.Supp.2d at 1101 ............................................................................................33

*Martinez v. Carson*,
    697 F.3d 1252 (10th Cir. 2012) ............................................................................27

*Mendocino Env't Ctr. v. Mendocino Cnty.*,
    192 F.3d 1283 (9th Cir. 1999) ..............................................................................27

*Munger v. City of Glasgow Police Dep't*,
    227 F.3d 1082 (9th Cir. 2000) .......................................................................27, 31

4

LARSON
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

*Reese v. County of Sacramento*,
    888 F.3d 1030 (9th Cir. 2018)................................................................32

*Rogers v. Home Depot*,
    2015 WL 12864247 (C.D. Cal. Oct. 2, 2015) ....................................20

*Scanlon v. Cnty. of Los Angeles*,
    92 F.4th 781 (9th Cir. 2024)..........................................................20, 21

*Sierra Club Found. v. Graham*,
    72 Cal. App. 4th 1135 (1999)................................................................29

*Smith v. Wade*,
    461 U.S. 30 (1983) ................................................................................33

*Spencer v. Peters*,
    857 F.3d 789 (9th Cir. 2017) ................................................................28

*Thompson v. Clark*,
    142 S. Ct. 1332 (2022)..........................................................................32

*Tortu v. Las Vegas Metro. Police Dep't*,
    556 F.3d 1075 (9th Cir. 2009) ..............................................................31

*United States v. Anderson*,
    453 F.2d 174 (9th Cir. 1971) ................................................................22

*United States v. Barnes*,
    895 F.3d 1194 (9th Cir. 2018) ..............................................................22

*United States v. Gourde*,
    440 F.3d 1065 (9th Cir. 2006) (en banc)..............................................22

*United States v. Stanert*,
    762 F.2d 775 (9th Cir. 1985) ................................................................24

*Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*,
    739 F.2d 1434 (9th Cir. 1984) ..............................................................30

*Warren v. City of Oakland*,
    58 F.3d 439 (9th Cir. 1995) ..................................................................20

5

**Constitutions**

First Amendment .................................................................................30, 31, 32

Fourth Amendment ...................................................................................21, 33

First, Fourth, Eighth, and Fourteenth Amendments ..................................... 31

**Statutes**

42 U.S. Code § 1983 .............................................................................21, 27, 33

California Penal Code
    § 550 .......................................................................................................... 16
    § 550(a)(6) ................................................................................................. 26
    § 1275.1 ..................................................................................................... 17

**Court Rules**

Fed. R. Civ. P. 56(a) ..................................................................................... 20

LARSON
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S
OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

# I.    **INTRODUCTION**

Defendant Lori Pozuelos ignored clear exculpatory evidence, recklessly failed to take basic investigative steps that would have revealed additional exculpatory evidence, and intentionally withheld exculpatory evidence from the court in her applications for arrest warrant, bail hold, and to freeze assets. As a result of her misconduct, Plaintiff Dr. Jeff Grange ("Dr. Grange" or "Plaintiff") was wrongfully arrested in the middle of his ongoing civil *qui tam* trial against Defendant Pozuelos' agency—California Department of Insurance ("CDI")—and was incarcerated on a "no bail" hold for five days. All of this was based on the false premise that Dr. Grange had falsely billed insurance companies for services performed by Symons Ambulance ("Symons"). What is more, CDI then attempted to use the wrongful arrest and incarceration of Dr. Grange as leverage to obtain either a mistrial of the civil trial—which CDI was losing badly at that point—or a settlement of the civil case in exchange for dropping the new and baseless criminal charges.

Among other things, Defendant Pozuelos was aware of and omitted from her submissions to the court the facts that there were no false statements in any of the relevant claims or supporting documents; a representative from one of the "victim" insurance companies told her they knew about and routinely paid claims where there was no transport; there were no laws or regulations that required Symons to *own* the helicopter it used for the air rescues and Symons never claimed to own the helicopters at issue; and that one of the event owners knew and approved of Symon's billing for the helicopter rescues. Moreover, if Defendant Pozuelos had taken the most basic of investigative steps, such as interviewing the actual witnesses who submitted and processed the claims at issue, she would have learned additional exculpatory evidence. For instance, she would have learned that Symons' claims were prepared and submitted by billers who specialized in ambulance billing and they—not Dr. Grange—determined what to bill and how to bill it. She would have

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

also learned that the billers regularly communicated with the insurance companies and always provided accurate information about the claims. Pozuelos would have also learned of exculpatory testimony that had been elicited from multiple witnesses during the civil *qui tam* trial—which she was aware of and was based on the same facts as the criminal complaint.

Instead of informing the court and the prosecutor of all of the exculpatory and material evidence—which would have resulted in no charges, no warrant, no bail hold, and no asset freeze—Defendant Pozuelos caused a baseless criminal filing and obtained an unlawful warrant and bail hold so that she could have Dr. Grange arrested and jailed in the middle of the civil trial. Prejudicing Dr. Grange even further, CDI arrested Dr. Grange without a warrant just outside the civil trial courthouse in full view of the public, including jurors who may have been leaving court for the day.

While Dr. Grange was vindicated at the *qui tam* trial, and the criminal charges were soon after dismissed, the damage was already done: he has been blacklisted and his reputation destroyed by the false allegations of insurance fraud. Dr. Grange now seeks to vindicate his Constitutional rights. There are multiple triable issues of fact, and Dr. Grange respectfully requests that Pozuelos' Motion be denied in its entirety.

## II.    BACKGROUND

Plaintiff, Jeff T. Grange, is a medical doctor licensed to practice medicine in the state of California since 1995. Statement of Genuine Disputes ("SGD") 50. Dr. Grange is certified by the American Board of Emergency Medicine in Emergency Medical Services and Emergency Medicine. Additional Material Facts ("AMF") 60. Symons Emergency Specialties, Inc. dba Symons Ambulance was incorporated in California in 1995. Symons is engaged in the business of providing emergency medical services, interfacility and critical care transport, and special event services, including medical care at mass gathering events. Symons operates throughout

LARSON
LOS ANGELES

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

Southern California and in Bishop, California. Symons' corporate office is located in San Bernardino County, California. Since approximately 2010, Dr. Grange has been one of several shareholders and a member of the Board of Directors of Symons, which had nine directors at one point. Symons also employed between 100 and 200 employees during the relevant time period. Between approximately 2010 and 2019, Dr. Grange also served as the President of Symons. AMF 60.

A.  **Dispute Between Symons and SIMNSA Health Plan Related to Billing for Emergency Medical Care and Air Ambulance Service for Patient J.M.**

Between June 5 and 8, 2014, as it had done for many years, Symons provided medical staff and equipment to be on standby during an off-road race known as the "Baja 500." The Baja 500 took place in the Baja California, Mexico desert. The race promotors provided a helicopter and pilot for Symons to use for air rescue operations during the race. Symons equipped the helicopter with medical equipment and medical staff.  AMF 61.

On June 7, 2014, Dr. Grange and a nurse from Symons (collectively, the "Symons personnel") responded to a request for emergency medical assistance after a driver, J.M., had gone off the race course, down an embankment, and crashed. The Symons personnel and their emergency medical equipment traveled by helicopter to the crash site in the desert of Baja California, Mexico. There was no place to land near the crash site other than on the racecourse. The helicopter landed on the racecourse, the Symons personnel got out, and the helicopter lifted off again to avoid being struck by race vehicles. AMF 62.

Dr. Grange climbed down the embankment to the crash site. J.M. was bleeding from his airway and had severe lower extremity pain. Dr. Grange placed J.M. on a backboard and stabilized him for transport. With the assistance of bystanders, the Symons personnel then lifted J.M. up the embankment and loaded him onto the helicopter. AMF 63.

9

LARSON
LOS ANGELES

1       The Symons personnel treated J.M. on the helicopter during the flight to the

2  airport at Ensenada, Mexico. At the Ensenada airport, the Symons personnel

3  transferred J.M. to another ambulance, operated by a different company, that then

4  transported J.M. to San Diego, California. AMF 64.

5       On or about July 9, 2014, an ambulance billing specialist prepared a Health

6  Insurance Claim form that was submitted to J.M.'s health insurance carrier,

7  Sistemas Medicos Nacionales S.A. de C.V. dba SIMNSA ("SIMNSA") for the

8  services Symons provided to J.M. in Baja California, Mexico, on June 7, 2014.

9  Among other things, the claim sought payment for the air ambulance service

10  Symons provided to J.M.

11       Between about August 2014 and March 2015, Symons or its billers

12  corresponded with SIMNSA about the claim. Symons provided SIMNSA with a

13  copy of the Critical Care Transport, Patient Care Record ("PCR") which described

14  the treatment and transport of J.M. None of the documents submitted to SIMNSA by

15  or on behalf of Symons contained any representation as to ownership of the

16  helicopter used during the air ambulance transport of J.M.

17       By letter dated March 23, 2015, SIMNSA notified Symons that coverage for

18  the care rendered to J.M. was denied because, "Member left Plan's Service Area in

19  Mexico to pursue care in the United States, SIMNSA is an HMO in Mexico." On

20  May 4, 2015, Symons filed a civil complaint in the San Diego County Superior

21  Court against SIMNSA based on SIMNSA's denial of coverage for the emergency

22  services Symons provided to J.M. On August 22, 2016, pursuant to a settlement

23  agreement, Symons dismissed its complaint against SIMNSA with prejudice.

24  **B.**    **The *Qui Tam* Matter**

25       On May 18, 2016, while the *Symons v. SIMNSA* lawsuit was pending in San

26  Diego County and unbeknownst to Dr. Grange or Symons, SIMNSA, as a Relator

27  and on behalf of the State of California, filed a civil *qui tam* complaint against

28  Symons and Dr. Grange in San Bernardino County Superior Court, Case No.

LARSON
LOS ANGELES

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S
OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

CIVDS1607744 ("*qui tam* complaint" or "*qui tam* matter"). The *qui tam* complaint was sealed. AMF 66.

The *qui tam* complaint alleged that bills Symons had submitted to insurance companies for air ambulance services were fraudulent because Symons did not own or lease the helicopters used in the transports. AMF 67.

**C.   CDI's Investigation of Dr. Grange**

By July 2016, CDI, through Pozuelos, had initiated an investigation of Dr. Grange related to allegations that bills for air and ground ambulance services submitted to insurance companies were fraudulent. The allegations related to air ambulance bills were the same as the allegations underlying the civil *qui tam* complaint. CDI alleged that ground ambulance bills were fraudulent because Symons' medical personnel treated patients on site and did not transport the patients. SGD 5.

During CDI's investigation, Pozuelos asserted false statements that misled the court. Despite knowing that Symons and Dr. Grange provided the services for both the air transports and ground claims, Pozuelos repeatedly, and falsely, stated throughout the declarations at issue that the services were not provided. SGD 11, 18; These will be referred to herein as **"The Fabricated Evidence."**

During CDI's investigation, Pozuelos received materially exculpatory evidence that she later intentionally concealed from the court and omitted from her declarations. This included the following:

a.   Symons rendered medical services to all patients for which claims were submitted to insurance companies. AMF 11-15.

b.   The claim forms and supporting documents submitted to insurance companies accurately described the care provided by Symons and did not contain any false statements. AMF 6, 25.

LARSON
LOS ANGELES

11
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

c.      The claim forms and supporting documents submitted to
insurance companies in support of the ground ambulance claims informed the
insurance companies that the patients were not transported. AMF 6.

d.      On September 13, 2017, Pozuelos interviewed a representative
from a third-party claims administrator that processes ambulance claims for Kaiser
Permanente ("Kaiser"). Kaiser was an insurance company to which Symons had
submitted claims for air and ground ambulance services that CDI alleged were
fraudulent. The claims administrator's representative explained to Pozuelos that,
contrary to the gravamen of the CDI's allegations, Kaiser does routinely pay ground
ambulance claims where the patient was not transported, which is called a "treat no
transport" situation. The representative also explained to Pozuelos that the claim
form submitted by Symons for one of the allegedly fraudulent ground transport
claims indicated that the patient "was not transported anywhere." In other words,
Symons and Dr. Grange did not deceive, nor attempt to deceive, Kaiser. AMF 22.

e.      On September 20, 2017, a representative from Kaiser told
Pozuelos that Kaiser will pay ground ambulance claims when the patient is not
transported. In those cases, "The bill is submitted as a basic response code with the
lowest level for transport, such as a BLS (basic life support) transport." AMF 22.

f.      On August 28, 2019, Pozuelos interviewed the owner of a
helicopter company that had provided helicopters for race events in Baja, California,
who explained to Pozuelos that Symons had paid his company for the flight time for
two emergency rescues involving his helicopters. This evidence was contrary to the
gravamen of the CDI's allegations that Symons' air ambulance claims were
fraudulent because they did not own or lease the helicopters. SGD 15.

g.      On January 16, 2020, Pozuelos interviewed the former Vice
President of Operations for Score International ("Score"), which organized and
promoted the Baja 500 races. He told Pozuelos the following: (1) He worked with
Dr. Grange between about 2002 and November 2012; (2) Dr. Grange volunteered as

12

the medical director for Score, however, Dr. Grange was not an employee of Score; (3) During race events, Dr. Grange came up with the medical plan including ground units, medical personnel, and helicopter rescues; (4) Dr. Grange provided medical equipment and medical personnel to be used in helicopters that Score had leased from a private helicopter company for the air rescues; (5) Dr. Grange would set up the helicopters the way he felt was necessary; (6) Dr. Grange was responsible for stabilizing and treating injured racers before and during the helicopter transports; (7) Dr. Grange was not compensated by Score for his services; (8) He gave permission to Dr. Grange to bill insurance companies for his services, including the helicopter transports; and (9) He believed Dr. Grange was entitled to bill for his services. SGD 17.

        h.     Dr. Grange did not direct bills to be submitted to insurance companies. The bills were prepared and submitted to insurance companies on behalf of Symons by persons specializing in ambulance billing. Whether a bill should be submitted and how such bills should be submitted was not determined by Dr. Grange. AMF 18.

        i.     There is no statute, rule, or regulation that requires ownership or leasing of an aircraft as a precondition to billing an insurance company for air ambulance services. AMF 33.

        j.     The billing code and claim forms for the air ambulance claims did not contain any representations that Symons owned or leased the helicopter used to transport patients. AMF 33.

        k.     During the civil *qui tam* trial, which Defendant Pozuelos had been monitoring—she communicated with the civil attorney, reviewed deposition transcripts, and "scoped out" the courthouse and knew or should have known that there were no rules or regulations requiring a provider to own or lease the vehicle used in the transport in order to bill for such services. AMF 46, SDG 7.

l.     Also at the *qui tam* trial, insurance company representatives and a defense expert witness testified that they had no reason to believe the information contained in Symons' PCRs was false. AMF 32.

The above omissions would have negated any probable cause from Pozuelos' skewed mischaracterizations and fabrications. They are applicable to a number of Dr. Grange's claims and are referred herein as "**The Omissions**."

In addition to The Omissions, Pozuelos conducted a reckless investigation and failed to take reasonable investigative steps that would have uncovered other exculpatory evidence, including:

a.     Defendant Pozuelos neglected to interview key witnesses, including the persons at the insurance companies who actually processed the Symons claims and the billing persons who prepared and submitted claims on behalf of Symons. SGD 9.

b.     Despite knowing about the civil lawsuit that had the same underlying facts as the criminal investigation, Pozuelos did not document any attempts to determine exculpatory evidence from the civil lawsuit, even though she communicated with CDI's civil attorney. SGD 7.

c.     When interviewing representatives from various insurance companies, Defendant Pozuelos deliberately misstated the nature of Symons' billing practices in order to elicit favorable statements from the representatives. SGD 18.

d.     Pozuelos failed to attempt to interview Dr. Grange. AMF 68.

These issues relate to a number of Dr. Grange's claims and are referred herein as **"The Investigative Failures."**

### D.     The *Qui Tam* Matter and Jury Trial

On July 18, 2017, the California Insurance Commissioner for CDI on behalf of the State of California intervened in the *qui tam* matter. The State was jointly represented in the *qui tam* matter by attorneys for CDI and SIMNSA. The CDI's civil attorney communicated with Pozuelos when the *qui tam* trial began, sent her

deposition transcripts, and Pozuelos reviewed the court records. SGD 7, 29. Pozuelos also spoke with others about the civil trial. *Id.*

On or about February 19, 2020, jury trial in the *qui tam* matter began in San Bernardino County Superior Court. Dr. Grange was represented by counsel and also personally attended every day of trial. AMF 69. Early on, the State's own witnesses provided testimony favorable to Symons and Dr. Grange. For example, insurance company representatives as well as the State's own expert testified that there is no statute, rule, or regulation that requires a provider to own or lease the helicopter in order to bill for air ambulance services. AMF 33. One of the State's witnesses also confirmed that the billing code used for the Symons air ambulance claims did not contain any representation that Symons owns or leases the helicopter. AMF 33.

Another witness called by the State, Symons' billing manager Kamari Brownlow, testified that Dr. Grange did not direct or suggest that any bill should be submitted and that it was up to the billing manager to make sure appropriate claims were submitted for services rendered. AMF 34. In other words, it was clear before the defense even started presenting its case that the CDI's claims against Dr. Grange were baseless, that the principal allegations upon which the complaint was predicated were false, and that Dr. Grange was prevailing. Pozuelos claimed that while she knew that the civil trial was going on, she claimed it was separate. Although because of her extensive contact with CDI's civil attorney and their exchange of documents from the civil trial, that appeared false. SGD 7.

## F.     The Unlawful Investigation, Arrest, Detention, and Malicious Criminal Prosecution of Dr. Grange

On February 27, 2020, Pozuelos caused the unlawful arrest of Dr. Grange outside the courthouse, and caused Dr. Grange to be held in jail without bail the court-day before he was set to testify. SGD 35. Pozuelos also caused the SBDA to file a frivolous and false criminal complaint against Dr. Grange based on allegations she knew were fabricated and false. *Id.* The complaint consisted of 44 counts of

15

LARSON
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

insurance fraud that allegedly occurred between about July 14, 2011, and May 9, 2017. Counts one through thirty-one of the criminal complaint were based on the very same allegations as the claims in the *qui tam* complaint, namely, that bills submitted to insurance companies for air ambulance services were fraudulent because Symons did not own or lease the helicopters used for the transports, allegations known at that time by the Defendants to be false. Counts thirty-two through forty-four were based on the allegation that bills submitted to insurance companies for ground ambulance services were fraudulent because the patients were treated by Symons medical personnel on site and were not transported, an allegation known at that time by Pozuelos to be false.

On February 27, 2020, while Dr. Grange and his attorney were leaving court after that day of the civil trial, Defendant Wessely and other CDI investigators unlawfully arrested Dr. Grange without a warrant and without probable cause as he left the courthouse. Defendant Wessely recorded the arrest on his department issued digital recorder. The details—and unlawfulness—of that arrest are separately addressed in Dr. Grange's Opposition to his Motion for Summary Judgment.

### G.    The Arrest Warrant Was Not Supported by Probable Cause and Was Signed After Dr. Grange Had Already Been Arrested

On February 27, 2020, Pozuelos signed a Declaration in Support of Arrest Warrant and/or Misdemeanor Confinement ("Declaration for Arrest Warrant") for the purported purpose of obtaining an arrest warrant for Dr. Grange for alleged violations of California Penal Code section 550. AMF 36, 45.

The Declaration for Arrest Warrant did not contain any facts establishing probable cause. The Declaration for Arrest Warrant purported to incorporate "pertinent parts" of law enforcement reports, but no such reports were attached. Pozuelos testified that she did not attach *any reports* to the Declaration for Arrest Warrant. AMF 36-38. Pozuelos speculated that her reports may have been in a separate manila envelope that she did not review or see the judge review. AMF 42-

16

LARSON
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S
OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

43. In any event, it is clear that the Declaration for Arrest Warrant contained no attachments and, therefore, no facts establishing probable cause. AMF 37.

Because the Declaration for Arrest Warrant failed to establish probable cause, the subsequent arrest warrant was invalid. Also, Pozuelos fabricated evidence by stating that "I am informed….which I give probable cause to believe that the accused committed the crime(s) listed in paragraph number 2 thereof were personally observed by the person(s) whose statements regarding such crime(s) are contained in the said incorporated reports." Pozuelos later admitted that none of the people she interviewed personally observed Dr. Grange committing any crimes. AMF 20. Pozuelos also intentionally and in reckless disregard of the truth omitted material facts, including The Omissions, as set forth above. AMF 6, 11-15, 18, 22, 25, 32, 33, 46; SGD 7, 17.

**H.    Pozuelos Unlawfully Caused Dr. Grange to be Held in Jail Without Bail**

On February 27, 2020, Pozuelos signed a Probable Cause Declaration in Support of Motion to Place a Hold on the Release of Defendant/s from Custody ("Declaration for Bail Hold") in support of a request for an order preventing Dr. Grange from posting bail. SGD 33. The Declaration for Bail Hold was submitted to the court in conjunction with a Motion for the Examination of Bail under Penal Code section 1275.1. The Motion sought an order from the court that any bail proffered by Dr. Grange not be accepted until after a hearing to determine whether the bail was feloniously obtained and whether the "source of the proffered bail is consistent with the intent of the court to assure that [Dr. Grange] makes future court appearances." AMF 51. However, Pozuelos had no reason to believe that Dr. Grange was a flight risk, and the requested bail hold was merely an unlawful attempt to manipulate the criminal justice system to prevent Dr. Grange from defending himself in the civil trial.

17

Pozuelos falsely asserted in the Declaration for Bail Hold that there was "probable cause to believe that the source of any consideration, pledge, security, deposit or indemnification paid, given, made or promised for the execution of bail was feloniously obtained." In support of this false assertion, the Declaration for Bail Hold contained numerous false and misleading statements which, on information and belief, Pozuelos knew to be false and misleading when she signed the Declaration, including: (1) the timing of the arrest was in the middle of Dr. Grange's civil trial when Pozuelos knew Dr. Grange had been attending the trial and was set to testify the next court day after his arrest; (2) there was no exigency—the last alleged act in the criminal complaint was nearly three years prior—on May 9, 2017; (3) CDI's criminal investigation was more than three years old, again demonstrating no exigency; and (4) Dr. Grange had resided in Southern California since 1990 and at the same residence in Riverside County since 2017. SGD 35, AMF 70.

The court marked the arrest warrant as a "no bail" warrant. The decision to issue a "no bail" warrant was based on the materially false and misleading information contained in Pozuelos' declaration, including the Fabricated Evidence and The Omissions. As a result of the "no bail" warrant, Dr. Grange was not able to post bail and was unlawfully held in custody for five days, and consequently was unable to meet with his civil attorneys or prepare for his defense in the *qui tam* trial.

## I.    Pozuelos Unlawfully Caused Dr. Grange's Assets to be Frozen in the Middle of the Civil Jury Trial

On February 26, 2020, Pozuelos signed a Declaration in Support of Temporary Restraining Order and Preliminary Injunction which was submitted to the Court to support a request for an order freezing and restraining assets related to Dr. Grange including bank accounts and real property. SGD 6. Pozuelos' declaration contained false statements which Pozuelos knew to be false when she signed the Declaration, including the Omissions, the False Statements, and the Investigative Failures as set forth above.

LARSON
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S
OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

On February 28, 2020, relying on these materially false statements and omissions, the San Bernardino County Superior Court issued a Temporary Restraining Order restraining Dr. Grange's assets, including bank accounts and real property.

### J. Dr. Grange's Release from Jail and Continuation of the *Qui Tam* Trial

On March 2, 2020, Dr. Grange appeared for his arraignment on the criminal case and was released on his own recognizance. SGD 36. In other words, the judge did not require Dr. Grange to post any bail to secure his release—a far cry from the no-bail warrant that Pozuelos caused to be signed based on false and misleading information. Dr. Grange was released from jail on the night of March 2, 2020.

On the morning of March 3, 2020, knowing the State was about to lose the civil trial, CDI attempted to obtain a mistrial and stay of the *qui tam* matter based on the Dr. Grange's unlawful arrest. The judge declined to order a mistrial or stay, and the jury trial resumed. Dr. Grange then testified, despite having spent the previous five days in jail without the ability to meet with counsel, review discovery, and prepare for trial. SGD 30.

Following Dr. Grange's release from jail but before the case was submitted to the jury, CDI's attorney in the *qui tam* matter offered Dr. Grange's attorney to dismiss the *qui tam* complaint and the criminal complaint if Dr. Grange agreed to pay a settlement in the *qui tam* matter. Dr. Grange refused. AMF 55.

On March 16, 2020, the jury in the *qui tam* matter returned a complete defense verdict in favor of Dr. Grange and the other defendants on all claims.

On July 16, 2021, the SBDA moved to dismiss the criminal complaint against Dr. Grange, in its entirety, based on lack of evidence. SGD 41. The court granted that motion, dismissed the case, and discharged Dr. Grange. The court also released Dr. Grange's bank accounts and real property that had been frozen since February 28, 2020. Dr. Grange has suffered greatly from the Pozuelos' unlawful and

LARSON
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

retaliatory conduct, including severe and lasting emotional distress, reputational harm, pain, and suffering.

### III.    LEGAL STANDARD

Summary judgment requires the moving party to establish that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial." *Rogers v. Home Depot*, 2015 WL 12864247, at *2 (C.D. Cal. Oct. 2, 2015) A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 244. If reasonable minds could differ on the material facts at issue, summary judgment is improper. *Warren v. City of Oakland*, 58 F.3d 439, 441 (9th Cir. 1995).

### IV.    ARGUMENT

####    A.    There Are Triable Issues of Fact As To Dr. Grange's Second, Third, and Fourth Claims Based on Pozuelos' Judicial Deception

Dr. Grange's second, third, and fourth claims are based on Pozuelos' judicial deception as to the falsehoods and omissions in her declarations in support of the arrest warrant, bail hold, and temporary restraining order, respectively. Pozuelos' three declarations varied, but each contained material misrepresentations and omissions amounting to judicial deception.

A recent Ninth Circuit case illuminates claims based on judicial deception. In *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781 (9th Cir. 2024), the Court of Appeals held there were triable issues of fact regarding whether a warrant materially misled

LARSON
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

the judge, which precluded summary judgment on plaintiffs' claim based on judicial deception. The Court of Appeals explained:

> 'Judicial deception' consists of either 'deliberate omission or affirmative misrepresentation.' A statement can also be misleading if, although technically true, it has been so wrenched from its context that the judicial officer will not comprehend how it fits into the larger puzzle.

*Id.* at 799. In *Scanlon*, a social worker filed an affidavit that a child was "under the influence" of marijuana. The child's teacher reported this, and it was technically true as the child had been prescribed medical marijuana—but the teacher meant that the girl's behavior had improved from its violent baseline, which the social worker mischaracterized. *Id.* at 804. This was in addition to other statements that may have been technically true, but were also mischaracterized. The Ninth Circuit held "[V]iewing the evidence ... in the light most favorable to the [plaintiffs]," there was strong support for the claim that the social worker made mischaracterizations in her report which were material.

In *Hervey v. Estes*, 65 F.3d 784 (9th Cir.1995), the Court of Appeals held that to survive summary judgment, the plaintiff must 1) make a "substantial showing" of deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, the challenged action would not have occurred. *Id.* at 788–89 If a plaintiff satisfies these requirements, "the matter should go to trial." *Id.* Put another way, "the showing necessary to get to a jury in a 1983 action is the same as the showing necessary to get an evidentiary hearing under *Franks v. Delaware* (1978) 438 U.S. 154." *Id.*; *Lombardi v. City of El Cajon*, 117 F.3d 1117 (9th Cir. 1997).

### 1. Arrest Warrant

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other

LARSON
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S
OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

justification." *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001). The arrest warrant was unlawful because Pozuelos' declaration lacked probable cause on its face. In determining whether an affidavit establishes probable cause to issue a warrant, the court limits its review to the data contained within the four corners of the affidavit. *United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. 2006) (en banc). While some of the evidence outside the four corners of the affidavit may be relevant regarding *omissions*, it should not be considered in evaluating the warrant itself. *Ewing v. City of Stockton*, 588 F.3d 1218, 1225 (9th Cir. 2009) fn. 8; See *United States v. Anderson*, 453 F.2d 174, 175 (9th Cir. 1971) ("[A]ll data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath.").

Pozuelos' declaration refers to attached law enforcement reports, but nothing was attached. Pozuelos confirmed that she did not attach *any reports* or see any reports with her declaration. AMF 37. Instead, Pozuelos speculated that her reports may have been in a separate manila envelope that she did not review, or see the judge review. AMF 42. Such speculation is insufficient and, in any event, even if something was contained in a separate manila envelope, those documents were not part of the warrant. In *United States v. Barnes*, 895 F.3d 1194 (9th Cir. 2018), the Court of Appeals held the district court erred by assuming the state judge would not have simply "rubber stamped" the probable cause determination without reviewing a supporting affidavit or police report, which had not been attached. The Court of Appeals reversed and held that factual findings had to be rooted in evidence, not speculation. *Id*. at 1200. Here, such reports were not even part of the court's record, and there is no evidence that the judge actually saw *any* documents. AMF 42.

Looking at the four corners of Pozuelos' declaration, there is no probable cause—there are no facts at all—and the arrest warrant is invalid on its face. In any event, even if Pozuelos' vague reference to "law enforcement reports" was credited, those reports, as discussed below, contained False Statements and Omissions which

LARSON
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

1    would have negated probable cause. As there are triable issues of fact, Pozuelos'

2    motion for summary judgment should be denied.

3            2.      Declaration In Support of Bail Hold

4          Pozuelos' declaration in support of the bail hold also contained

5    misrepresentations and material omissions. In that declaration, Pozuelos made the

6    same False Statements that Dr. Grange "has improperly billed or caused to be billed

7    many insurance companies for both ground and air ambulance transports;" (ii) "[a]s

8    to the ground transports, [Dr. Grange] **never provided the service to patients**;" (iii)

9    "[a]s to the air transports, [Dr. Grange's] business does not own or operate any

10   helicopter or airplane ambulances. However, Defendant billed or caused to be billed

11   for helicopter ambulance transports **he did not provide**, including helicopter

12   ambulance transports provided by the San Bernardino Sherriff's Department." AMF

13   51.

14         For the same reasons set forth above, the False Statements were just that.

15   Moreover, had Pozuelos included the Omissions into her declaration, including that

16   Dr. Grange was in the middle of a civil trial that he was attending every day, there

17   was no evidence he was a flight risk, he had lived in Southern California since 1990,

18   and there was no evidence that he even had, let alone was using, payments Symons

19   received years ago. Had the judge had that information, he likely would have come

20   to the same result as the judge at the bail hearing when Dr. Grange was released on

21   his own recognizance. Unfortunately, Pozuelos deceived the first judge.

22           3.      Declaration In Support of Temporary Restraining Order Freezing

23                 Dr. Grange's Assets

24         The final document that Pozuelos submitted was her declaration in support of

25   the temporary restraining order freezing Dr. Grange's assets. Similar to above, this

26   declaration swore:

27         **Jeff Grange committed fraud by submitting billing for ground and air**

28         **transports he did not provide.** Grange presented what appeared to be a

legitimate medical billing for ambulance transports **that did not occur**.
Grange also billed for air transport **that he did not provide**.

(SGD 31; emphasis added.) Again, Pozuelos' mischaracterizes Dr. Grange's
involvement and the services provided, which are encompassed by The Omissions
and The False Statements set forth above.

### 4.   By Her Own Admission, Pozuelos Acted Deliberately

There is extensive evidence to show that Pozuelos acted deliberately, or at
least recklessly. Dr. Grange need only make a "substantial showing" of Pozuelos'
deliberate or reckless false statements and omissions. "Clear proof of deliberat[ion]
or reckless[ness] is not required" at the summary judgment stage. *United States v.
Stanert*, 762 F.2d 775, 781 (9th Cir. 1985). If Dr. Grange makes such a showing,
then "the question of intent or recklessness is a factual determination" that must be
made by the trier of fact. *Liston v. County of Riverside,* 120 F.3d 965, 974 (9th
Cir.1997)

Viewing the evidence in the light most favorable to Dr. Grange, there is a
substantial showing that Pozuelos' deception was intentional, or at least reckless.
The most commonsense evidence that Pozuelos acted with at least a reckless
disregard for the truth is that the Omissions and False Statements contained in the
affidavits were all facts that were within Pozuelos' personal knowledge. For
example, Pozuelos' False Statements that Dr. Grange "committed fraud by
submitting billing for ground and air transports he did not provide" was a statement
that Pozuelos knew to be false because she knew the medical services *were*
provided, and she knew that the statements provided to the insurance companies
were not false. Pozuelos also falsely stated in her declaration for a bail hold that Dr.
Grange billed more than $3,000,000 and received from than $2,000,000. That was
not true—Dr. Grange did not personally bill or receive that amount—Symons did.
AMF 21. Dr. Grange and Symons are not synonymous. Symons was a company
with multiple shareholders, at one point nine directors, and between 100 and 200

LARSON
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S
OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

1  employees. AMF 60. Pozuelos' declaration in support of her Motion now

2  acknowledges Symons, not Dr. Grange, billed and received that amount. UMF 23;

3  Pozuelos ¶ Decl. 23. This was another falsehood perpetuated to deny Dr. Grange

4  bail. Moreover, Pozuelos' declaration in support of her Motion for Summary

5  Judgment even admits that she intentionally *chose* to omit other exculpatory facts,

6  including statements by Paul Fish, an event owner who provided one of the

7  helicopters and told Dr. Grange that Symons could bill for the medical air

8  transports. *Id*. at ¶ 53. Pozuelos admits that she knew Fish provided exculpatory

9  information, but she left it out because she did not believe him. That shows intent.[1]

10      Similarly, Pozuelos spoke with—and again *decided* to omit—her

11  conversations with Dave Vernick, who Symons paid to use his helicopter in

12  connection with medical transports. *Id*. at ¶ 64. Pozuelos also knew, but *decided* not

13  to include in any of her declarations that Dr. Grange was defending against the same

14  allegations by CDI in the *qui tam* trial going on at the same time. Pozuelos'

15  declaration states that she reviewed the online docket. *Id*. at ¶ 65. As such, Dr.

16  Grange has satisfied his burden of a "substantial showing" that Pozuelos'

17  deliberately, or at least recklessly, made false statements and omissions.

18          5.    <u>When Pozuelos' False Statements Are Corrected, And The</u>

19                  <u>Omissions Are Included, There Is No Probable Cause</u>

20      After Pozuelos' False Statements are corrected and the Omissions are

21  included, there is no probable cause to arrest Dr. Grange, freeze his assets, or require

22  a "bail hold." If a party makes a substantial showing of deception, the court must

23  determine the materiality of the allegedly false statements or omissions. *Butler v.*

24  *Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) ("Materiality is for the court, state of mind

25  _____

26  [1] "[S]ubjective motivations are irrelevant. The information was left out intentionally, not negligently, and that's enough to satisfy the subjective intent requirement of

27  *Franks* and *Hervey*." *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir.

28  1997)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S
OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

LARSON
LOS ANGELES

is for the jury."). If an officer submitted false statements, the court purges those statements and determines whether what is left justifies issuance of the warrant. *See, e.g., Baldwin v. Placer County,* 418 F.3d 966, 971 (9th Cir.2005). If the officer omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause. *See, e.g., Liston*, 120 F.3d at 973-4; *Ewing*, 588 F.3d at 1224.

Dr. Grange was charged under California Penal Code section 550(a)(6), which states that it is unlawful to "[k]nowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit." Pozuelos claimed, in the declarations that contained factual allegations, that Dr. Grange "never provided the service to patients." Correcting that false statement alone—Dr. Grange and Symons *did* provide the services to patients—vitiates probable cause that Dr. Grange made a false or fraudulent insurance claim. In addition to this, adding the Omissions, including Dr. Grange's communications with Kaiser's representative regarding how to bill the "treat no transport" claims; testimony by Symon's billing manager who testified that the billers, not Dr. Grange, determined the billing; testimony by the State's witnesses who testified there were no false statements in the patient reports and that there were no laws or regulations requiring ownership of a helicopter; communications with the event owner who said Dr. Grange should charge for the transports; communications with a helicopter pilot that Symons had paid for transports, and more, all further negate any finding of probable cause.

Pozuelos' Motion makes no such analysis. Mot. 2:1-14. Instead, she now downplays the care provided—which at least she now acknowledges—and instead claims that she believes the charges were too high. However, the *amount* billed was not previously at issue, and her surface-level arguments regarding those costs lack foundation and fail to fact in that the patients were seen, evaluated, and treated by medical professionals.

26

LARSON
LOS ANGELES

6.     <u>Pozuelos' Other Arguments Related to Judicial Deception
Claims Are Flawed</u>

    Pozuelos makes a number of other arguments, each of which should also be
rejected. Pozuelos' declaration in support of her Motion attempts to set forth why
she believes a number of the exculpatory facts were not actually "exculpatory."
While she is wrong, it only further demonstrates that triable issues of facts exist and
summary judgment should be denied. Mot. 16:9. "The possibility that other
inferences could be drawn [regarding the officers' motivations] that would provide
an alternate explanation for the [officers'] actions does not entitle them to summary
judgment." *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1303 (9th Cir.
1999). This issue is for the trier of fact to resolve. *See Ford v. City of Yakima*, 706
F.3d 1188, 1194 (9th Cir. 2013) ("[T]he issue of causation ultimately should be
determined by a trier of fact."), abrogated in part by *Nieves v. Bartless*, 139 S.Ct.
1715 (2019). Here, the trier of fact could very well "credit" or "disbelieve"
Pozuelos' explanations. Certainly, there is at least a genuine dispute of material fact
for Dr. Grange to survive summary judgment, as the evidence does not "permit[ ]
only one reasonable conclusion," *Munger v. City of Glasgow Police Dep't* , 227
F.3d 1082, 1087 (9th Cir. 2000).

    Finally, Pozuelos' argument that the judge and prosecutor signed off on her
misrepresentations and omissions does not absolve her of liability. That just shows
that they fell for her deception. The requisite causal connection is satisfied if the
defendant "set in motion a series of events" she knew or reasonably should have
known would cause third parties to violate the plaintiff's constitutional rights.
*Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012). The presumption of
prosecutorial independence does not bar a subsequent section 1983 claim against
state or local officials who improperly exerted pressure on the prosecutor,
knowingly provided misinformation to him, concealed exculpatory evidence, or
otherwise engaged in wrongful or bad faith conduct that was actively instrumental in

27

LARSON
LOS ANGELES

causing the initiation of legal proceedings. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). Here, Pozuelos repeatedly sought for updates regarding filing the criminal complaint. As set forth above, there is ample evidence showing that Pozuelos knowingly, and intentionally, provided misinformation in support of the declarations at issue. She cannot now hide behind the prosecutor and judge that she deceived.

> **B.** **There Are Triable Issues of Fact For Dr. Grange's Fifth Claim For Deliberate Fabrication of Evidence and Withholding Material Information**

There is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government. *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001). Liability may be imposed where an officer continued his investigation despite the fact that he knew *or should have known* that plaintiff was innocent. *Id.*

If there is direct evidence of deliberate fabrication, a plaintiff need not prove that the officer knew or should have known that he was innocent. *Spencer v. Peters*, 857 F.3d 789, 799 (9th Cir. 2017). Here, there is direct evidence of deliberate fabrication *and* Pozuelos should have known that Dr. Grange was innocent. The direct evidence is the contradictions between the information that Pozuelos obtained from the insurance companies, her discussions with certain insurance representatives and what she put in her reports. Specifically, insurance representatives told Pozuelos that they routinely pay "treat no transport" claims. AMF 22. She then went on to put in her report that had the insurance companies known Symons did not provide the services billed for, they would not have paid the claim. SGD 11. This happened numerous times—Pozuelos *knew* that Symons provided the services, yet stated in multiple declarations that Dr. Grange did not. Another example is Pozuelos statement in the bail hold declaration in which she claimed that Dr. Grange received $2 million from insurance companies for the fraudulent claims. Dr. Grange did not

28

1   personally receive $2 million. SGD 23. At the very least, there are triable issues of

2   fact whether Pozuelos knew or should have known—based on all of the evidence—

3   and summary judgment should be denied as to this claim.

4       C.    **There Are Triable Issue of Fact For Dr. Grange's Sixth Claim For**

5              **Malicious Prosecution**

6       To establish his claim for malicious prosecution, Dr. Grange must

7   demonstrate that Defendants prosecuted him with malice and without probable

8   cause, and that they did so for the purpose of denying him equal protection or

9   another constitutional right. Dr. Grange must show that the proceedings terminated

10  in his favor. *Lacey v. Maricopa Cty*., 693 F.3d 896, 919 (9th Cir. 2012); see also

11  *Awabdy*, 368 F.3d at 1066. There is no dispute that the underlying criminal

12  proceeding terminated in Dr. Grange's favor—SBDA dismissed the case. Second,

13  Dr. Grange has shown that there was no probable cause, as discussed in Section

14  IV.A.5.

15      Finally, there are triable issues of fact as to malice. "[M]alice is present when

16  proceedings are instituted primarily for an improper purpose. Suits with the

17  hallmark of an improper purpose [include] those in which: '. . . (1) the person

18  initiating them does not believe that his claim may be held valid; [and/or] (2) the

19  proceedings are begun primarily because of hostility or ill will.'" *Sierra Club*

20  *Found. v. Graham*, 72 Cal. App. 4th 1135, 1157 (1999).

21      Here, there are triable issues regarding Pozuelos' motives. She spoke with

22  CDI's civil attorney regarding the civil trial that was ongoing at the same time as Dr.

23  Grange's arrest. Pozuelos caused Dr. Grange to be arrested and held without bail,

24  and his assets frozen, the court-day before he was to testify. While Pozuelos now

25  claims it was because the statute of limitations almost passed, she also claims the

26  asset freeze and bail hold were to inexplicably make sure those same funds *from*

27  *years before* were not used as bail. The judge who later heard Dr. Grange's bail

28  hearing released him on his own recognizance. At the same time, CDI's civil

LARSON
LOS ANGELES

29

attorney attempted to leverage dismissing the criminal case to settle the doomed *qui tam* lawsuit. While Pozuelos and her co-conspirators denied their conduct at their depositions, their actions suggest an improper motive. This is especially true in light of the fabrications Pozuelos made in support of the various declarations. "Questions involving a person's state of mind ... are generally factual issues inappropriate for resolution by summary judgment." *Braxton–Secret v. A.H. Robins Co.,* 769 F.2d 528, 531 (9th Cir. 1985); *see also Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,* 739 F.2d 1434, 1436 (9th Cir. 1984) ("Summary judgment is generally inappropriate when mental state is an issue, unless no reasonable inference supports the adverse party's claim.") There is at least a triable issue of fact regarding Pozuelos' motives, and circumstantial evidence suggests they were retaliatory. In civil litigation generally, circumstantial evidence "may also be more certain, satisfying and persuasive than direct evidence" *Desert Palace, Inc. v. Costa* (2003) 539 US 90, 100.

### D.    There Are Triable Issue of Fact For Dr. Grange's Seventh Claim For Retaliation

Pozuelos does not seem to dispute that there is a triable issue of fact on the first two elements of retaliation: (1) that Dr. Grange engaged in conduct protected by the First Amendment and (2) that as a result of this protected conduct, he was subjected to adverse action by Pozuelos that would deter or chill a person of ordinary firmness from continuing to engage in the protected conduct. *See Lacey v. Maricopa Cty.,* 693 F.3d 896, 916 (9th Cir. 2012). The only element in dispute is the third one—causation. There are also triable issues of fact as to whether there is "a causal connection between the government's retaliatory animus and the plaintiff's subsequent injury." *Nieves*, 139 S.Ct. at 1722. For the same reasons as above, there is evidence that Pozuelos caused Dr. Grange's arrest in order to stop him from testifying in CDI's *qui tam* lawsuit against him. Specifically, the timing of the arrest the court-day before his testimony, her discussions with CDI's civil lawyer, the CDI

30

LARSON
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S
OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

civil lawyer's attempt to settle the criminal case and *qui tam* case together; all coupled with Pozuelos' fabricated declarations requesting no bail and freezing his assets show there is a triable issue of fact as to this causal connection. Furthermore, as discussed above, there was no probable cause.[2]

### E.  Qualified Immunity Does Not Apply

Defendants bear the burden of invoking qualified immunity. *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). The qualified immunity analysis consists of two non-sequential steps: (1) whether the alleged facts demonstrate a constitutional right was violated; and (2) whether that right was clearly established when the defendant acted. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016). If a genuine issue of material fact exists as to the first prong, and the right at issue was clearly established, then summary judgment must be denied. *Longoria v. Pinal Cty.*, 873 F.3d 699, 710 (9th Cir. 2017). The first prong is a question of fact that may be determined by the jury. *See Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). "Summary judgment [based] on qualified immunity is not proper unless the evidence permits only one reasonable conclusion." *Munger*, 227 F.3d at 1087. *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022). Where conflicting inferences may be drawn from the facts, the case must go to the jury." *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir.2000). As discussed above at length, there is a triable issue as to whether Pozuelos violated Dr. Grange's constitutional rights, including his rights under the First, Fourth, Eighth, and Fourteenth Amendments. Pozuelos concedes this in her Conclusions of Law. See Dkt. 47-2 at 26:1-7.

Pozuelos is not entitled to qualified immunity under the second prong either. A government official's conduct violates clearly established law when, at the time

---

[2] The existence of probable cause is not an absolute bar to a First Amendment retaliatory arrest claim. *Lozman v. City of Riviera Beach, Fla*., 585 U.S. 87 (2018).

of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would [have understood] that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A case need not be directly on point. *See Reese v. County of Sacramento*, 888 F.3d 1030, 1038–39 (9th Cir. 2018) (we "do not demand a case with 'materially similar' factual circumstances or even facts closely analogous to [plaintiff's] case," provided existing case law places constitutional question beyond debate) (citations omitted). Indeed, courts may deny officials qualified immunity in novel factual circumstances. *Longoria,* 873 F.3d at 709. "Otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." *Deorle v. Rutherford*, 272 F.3d 1272, 1275 (9th Cir. 2001). The right to be free from criminal charges based on false evidence fabricated by the government, malicious prosecution and retaliation are clearly established rights. *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022) [recognized right to be free from malicious prosecution]; *Devereaux*, 263 F.3d at 1079 [clearly established right not to be subjected to criminal charges based on false evidence that was deliberately fabricated by the government*]; Nieves*, 139 S.Ct. at 1722 [clearly established right that government officials are prohibited from subjecting an individual to retaliatory actions for engaging in First Amendment activities]. Pozuelos cannot—and does not—seriously dispute otherwise.

As for the claims based on judicial deception, the Ninth Circuit has held that "summary judgment on the ground of qualified immunity is not appropriate once a plaintiff has made out a judicial deception claim." *Chism v. Washington State*, 661 F.3d 380, 386 (9th Cir. 2011). "[G]overnmental employees are not entitled to qualified immunity on judicial deception claims." *Id.* at 393. In examining the second prong of the qualified immunity analysis, the Ninth Circuit has noted that where the plaintiff has made a substantial showing of judicial deception, the issue of

qualified immunity is 'effectively intertwined' with the substantive Fourth Amendment determination." *Martin v. County of San Diego*, 650 F.Supp.2d at 1101 (citing *Butler,* 281 F.3d at 1024. Dr. Grange made out his claims based on judicial deception, and qualified immunity is not appropriate. Pozuelos' argument that a reasonable officer would agree with her because the SBDA and judge signed off on it demonstrates that she was successful with her mischaracterizations and omissions—*not* that a reasonable officer would have done the same.

### F.    There Are Triable Issues Regarding Punitive Damages

"A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). As discussed in Section IV.A.4. Pozuelos' actions were deliberate, or at least reckless. She admitted that she omitted (or "discounted") exculpatory evidence because she did not believe it—and thus misled the judge who signed the arrest warrant, bail hold, and restraining order. Furthermore, she lied—multiple times—stating that services were not provided when they were. That Pozuelos' co-defendant and co-conspirators testified she is "competent, fair and hardworking" misses the mark. There are triable issues of fact and therefore summary judgment should be denied.

### V.    CONCLUSION

For all of these reasons, Pozuelos' Motion should be denied.

LARSON
LOS ANGELES

33
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S
OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

1    Dated: March 18, 2024                LARSON LLP

2

3

4                                         By:    /s/ Jerry A. Behnke
                                                Stephen G. Larson
5                                               Jerry A. Behnke
                                                Daniel R. Lahana
6
                                          Attorneys for Plaintiff
7                                         JEFF GRANGE. M.D.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S
OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Jeff T. Grange, M.D., certifies that this brief contains 8,942 words, which complies with the word limit set by court order dated March 1, 2024.

Dated: March 18, 2024          LARSON LLP


By:    /s/ Jerry A. Behnke
      _____
      Stephen G. Larson
      Jerry A. Behnke
      Daniel R. Lahana

      Attorneys for Plaintiff
      JEFF GRANGE. M.D.

LARSON
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFF T. GRANGE, M.D.'S OPPOSITION TO POZUELOS' MOTION FOR SUMMARY JUDGMENT

1

## **CERTIFICATE OF SERVICE**

2

       I hereby certify that on this 18th day of March, 2024, I electronically filed the

3

foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

4

**OF PLAINTIFF JEFF T. GRANGE, M.D.'S OPPOSITION TO POZUELOS'**

5

**MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the

6

CM/ECF system which will send notification of such filing to the following:

7

    Thomas M. McMahon       Attorney for Defendants
    Deputy Attorney General     Lori Pozuelos and Jason Wessely

8

                                Thomas.mcmahon@doj.ca.gov

9

10

11

                                /s/ Yvonne M. Gutierrez
                                Yvonne M. Gutierrez

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36