# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF T. GRANGE,<br>                Plaintiff,<br><br>       v.<br><br>LORI POZUELOS, et al.,<br>                Defendants. | CV 22-00340 DSF (AGRx)<br><br>Order GRANTING in PART and DENYING in PART Defendant Pozuelos's Motion for Summary Judgment (Dkt. 47) and GRANTING Defendant Wessely's Motion for Summary Judgment (48) |

Defendant Lori Pozuelos moves for summary judgment as to Plaintiff Jeff T. Grange's claims.  Dkt. 47.  Grange opposes.  Dkt. 53 (Opp'n).  Defendant Jason Wessely moves for summary judgment as to Grange's Second Claim.  Dkt. 48.  Grange opposes.  Dkt. 54 (Opp'n II). The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  Pozuelos's motion is GRANTED in part and DENIED in part.  Wessely's motion is GRANTED.

## I. Factual Background

Symons Emergency Specialties, Inc., dba Symons Ambulance, provides emergency medical services, transport, and medical care at mass gatherings and special events.  Dkt. 53-1 (Additional Material Facts (AMF)) ¶60.

In June 2014, Symons contracted with an off-road race known as the "Baja 500."  Id. ¶61.  The race promotors provided a helicopter and pilot for air rescue operations.  Id.  Symons equipped the helicopter with medical equipment and medical staff, including Grange.  Id.

Grange is a doctor certified by the American Board of Emergency Medicine. AMF ¶60. He was a shareholder of Symons, a member of the board of directors, and – from 2010 to 2019, president of the company. id.

On June 7, 2014, Grange and a nurse from Symons responded to an emergency medical request at the Baja 500. AMF ¶62. They traveled to a crash site in the Mexican desert and landed on the racecourse. AMF ¶62. Grange loaded a victim of the crash onto a backboard and stabilized him for transport. AMF ¶63. Grange treated him on the helicopter during the flight to Ensenada, and then transferred him to an ambulance, which went to a hospital in San Diego. AMF ¶64.

A month later, on July 9, 2014, Symons submitted a claim to the crash victim's insurer. AMF ¶65. The claim included air ambulance service. Id. The insurer filed a *qui tam* complaint as relator against Symons and Grange. AMF ¶66. The complaint alleged that bills Symons had submitted to insurance companies for air ambulance services were fraudulent because Symons did not own or lease the helicopters used in the transports. AMF ¶67.

Pozuelos has been a detective with the Fraud Division of the California Department of Insurance (CDI) since April 2011. Dkt. 47-2 (SUF) ¶1. Pozuelos conducts criminal investigations related to insurance fraud, including medical billing fraud. SUF ¶3. She is responsible for gathering evidence, interviewing witnesses, preparing reports, and referring cases to the local district attorney's office. Id.

From July 2016 to February 2020, Pozuelos was involved in a criminal fraud investigation of Grange and Symons. SUF ¶5. Pozuelos conducted all aspects of the investigation, and was the only detective permanently assigned to Grange's case. Id.

Pozuelos's investigation of Grange and Symons began on about July 29, 2016, when a complaint came to the Fraud Division from the Riverside County District Attorney's Office and Los Angeles County Emergency Medical Services Agency. Id. ¶9. The complaint alleged

that Symons had submitted a fraudulent bill to a medical insurer for an ambulance transport that did not occur.  Id.  Pozuelos reviewed copies of the relevant billing records and interviewed the complainant.  Id.  The complainant said that she was nauseous and dehydrated at a concert.  Id.  She went to a first aid tent that was staffed by Symons and was given water and an IV drip.  Id.  She was told by personnel at the tent that this service was provided free of charge by the event's sponsor.  Id.

However, Symons subsequently billed her medical insurer $4,875.00 for an ambulance service.  Id.  After the insurer denied the claim, Symons sent the complainant the bill.  Id.  The complainant told Pozuelos that she had not been transported anywhere, and that no ambulance had been involved with her care.  Id.  However, Symons billed her medical insurer using the medical billing code A0434, "Specialty or Critical Care Transport."  Id.

Pozuelos discovered that Symons submitted bills to other medical insurers during the same time frame for ambulance services at special events where Symons provided medical services.  SUF ¶11; SGD ¶11.  These bills also used billing code, A0434.  SUF ¶11.  Pozuelos contacted the people treated, who all told her that they were not transported anywhere.  Id.

Pozuelos learned that Symons was also billing for air ambulance transports and broadened the scope of her investigation.  SUF ¶14.  She discovered that Symons did not own, lease, or operate any helicopters used for the air ambulance transports.  SUF ¶16.  However, Symons did equip the helicopters with medical supplies and personnel.  SGD ¶16.  Symons used billing code A0431, "Rotary Wing Air Transport" to bill for the air transports.  SUF ¶16.  Pozuelos interviewed representatives from 10 medical insurers about the propriety of the billing code and came to the conclusion that Symons was not properly billing for the medial services provided aboard the helicopter.  SUF ¶18.

Pozuelos concluded that Symons had fraudulently billed approximately $3,628,826.76 to medical insurers for both ground and air ambulance transports. SUF ¶23. Symons collected approximately $2,005,210. Id. Although Symons had a staff of employees responsible for billing, Grange was directly involved in some of the bills for medical services he provided. SUF ¶22; SGD ¶22. On November 8, 2017, Pozuelos filed a Report of Investigation (ROI) with the District Attorney's Office of San Bernardino County recommending that the office file criminal insurance fraud charges against several of Symons' directors, including Grange. SUF ¶24.

Based on Pozuelos's report, a deputy district attorney ultimately made the decision to file criminal charges against Grange and seek a temporary restraining order with respect to assets of Grange and Symons. Id. ¶6; ¶39.

On February 26, 2020, Pozuelos met with the district attorney's office to review and sign declarations based on information that she provided regarding her investigation. SUF ¶31. The declarations were used to support (i) the application for an arrest warrant for Grange, (ii) a motion for a bail hearing, and (iii) an asset freeze application. Id.

The next day, Pozuelos's declarations were submitted to the San Bernardino Superior Court along with a criminal complaint against Grange. SUF ¶¶32, 34. The criminal filings against Grange were based solely on information provided by Pozuelos. AMF ¶17.

Wessely is a regional supervising investigator with CDI. Dkt. 48-2 (SUF II) ¶1. A detective sergeant at CDI's Fraud Division had contacted Wessely about forming an arrest team if and when a judge issued an arrest warrant. SUF II ¶13. On the afternoon of February 27, 2020, the arrest team went to arrest Grange in the parking lot adjacent to the superior court where he was attending the trial in the *qui tam* matter. SUF II ¶14.

Pozuelos went to the San Bernardino Courthouse that afternoon with a deputy district attorney. SUF ¶35. The court clerk provided them with a copy of the filed complaint and advised them that Judge

Colin Bilash was the signing judge.  Id.  Pozuelos and the deputy
district attorney met with Judge Bilash to obtain his approval of the
arrest warrant, the bail motion, and temporary restraining order.  Id.
Judge Bilash immediately signed the arrest warrant and ordered
Grange be held without bail until a hearing.  Id.

Pozuelos contacted the commanding officer of the arrest team and
told him that Judge Bilash had signed the warrant for Grange's arrest.
SUF II ¶18.  Either shortly before or after Pozuelos's call, the
commanding officer told Wessely that the warrant was signed.  SUF II
¶19.  The arrest team approached Grange in the parking lot and told
Grange that there was a warrant for his arrest.  SUF II ¶20.  In a
recording of the encounter, Wessely's commanding officer can be heard
saying "the judge is in the middle of signing it right now."  SUF II ¶23.
However, whether the "it" refers to the warrant or other orders is
disputed.

The arrest took place the day before Grange's testimony in the
*qui tam* trial.  Dkt 54-1 (AMF II) ¶15.  Grange was held without bail
until a hearing was conducted the next day and bail was set at
$1,500,000.  SUF ¶36.  Grange was released on his own recognizance
on March 2, 2020.  Id.  Civil attorneys from CDI approached Grange
and stated that they would have the criminal charges against Grange
dropped if he would accept liability in the civil case.  AMF ¶55.  Grange
did not accept.  Dkt. 56 (Garcia Decl.) ¶13.

The jury in the *qui tam* matter delivered a complete defense
verdict for Grange and the other defendants.  In July 2021, the district
attorney's office dismissed the criminal charges against Grange.  SUF
¶41

## II. Legal Standard

"A party may move for summary judgment, identifying each claim or
defense – or the part of each claim or defense – on which summary
judgment is sought.  The court shall grant summary judgment if the
movant shows there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  "This burden is not a light one."  <u>In re Oracle Corp. Sec. Litig.</u>,
627 F.3d 376, 387 (9th Cir. 2010).  But the moving party need not
disprove the opposing party's case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S.
317, 323 (1986).  Rather, if the moving party satisfies this burden, the
party opposing the motion must set forth specific facts, through
affidavits or admissible discovery materials, showing that there exists a
genuine issue for trial.  <u>Id.</u> at 323-24; Fed. R. Civ. P. 56(c)(1).  A non-
moving party who bears the burden of proof at trial as to an element
essential to its case must make a showing sufficient to establish a
genuine dispute of fact with respect to the existence of that element of
the case or be subject to summary judgment.  <u>See</u> <u>Celotex Corp.</u>, 477
U.S. at 322.

The "mere existence of *some* alleged factual dispute between the
parties will not defeat an otherwise properly supported motion for
summary judgment; the requirement is that there be no *genuine* issue
of *material* fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48
(1986).  An issue of fact is a genuine issue if it reasonably can be
resolved in favor of either party.  <u>Id.</u> at 250-51.  "The mere existence of
a scintilla of evidence in support of the [non-movant's] position will be
insufficient; there must be evidence on which the jury . . . could find by
a preponderance of the evidence that the [non-movant] is entitled to a
verdict . . . ."  <u>Id.</u> at 252.  "Only disputes over facts that might affect the
outcome of the suit under the governing law will properly preclude the
entry of summary judgment."  <u>Id.</u> at 248.

"[A] district court is not entitled to weigh the evidence and
resolve disputed underlying factual issues."  <u>Chevron Corp. v. Pennzoil
Co.</u>, 974 F.2d 1156, 1161 (9th Cir. 1992).  Summary judgment is
improper 'where divergent ultimate inferences may reasonably be
drawn from the undisputed facts.'"  <u>Fresno Motors v. Mercedes Benz
USA, LLC</u>, 771 F.3d 1119, 1125 (9th Cir. 2014).  Instead, "the
inferences to be drawn from the underlying facts must be viewed in the
light most favorable to the party opposing the motion."  <u>Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986)
(internal quotation marks and ellipsis omitted).

# III. Discussion

## A.    Judicial Deception

Pozuelos moves for summary judgment on Grange's Second, Third, and Fourth claims for unreasonable seizure of person, excessive bail, and unreasonable seizure of property.  They are all brought pursuant to 42 U.S.C. § 1983 and the Fourth Amendment.  Grange claims that Pozuelos made false statements and deliberate omissions in her declarations that were relied on by the district attorney's office to obtain the arrest warrant, bail order, and temporary restraining order.[1]

---

[1] There is a dispute as to whether Pozuelos's ROI was submitted in conjunction with the declaration in support of the arrest warrant.  SGD ¶32.  Pozuelos's declarations purportedly submitted in support of the arrest warrant contain little to no factual detail regarding the alleged offenses and investigation.  See Dkt. 51-18 (Ex. 30); dkt. 51-19 (Ex. 31).  The parties dispute which declaration was operative for the arrest warrant.  SGD ¶32.  Pozuelos maintains that on the morning of February 27, 2020, her ROI was submitted by the district attorney's office as part of a discovery package and incorporated by reference into her declaration.  SUF ¶32. Grange argues that the discovery package was never submitted.  SGD ¶32.  For reasons that are unclear to the Court, apparently neither party has been able to obtain the discovery package.  SUF ¶48.  This creates a dispute of material fact as to what documents Judge Bilash looked at in issuing the arrest warrant.

In the interest of judicial economy, the Court will treat Grange's second claim as predicated on the same statements as the third and fourth claims.  The Court does not find that the ROI was in fact submitted with the application for the arrest warrant.  But for purposes of Grange's Second, Third, and Fourth claims, the Court will analyze the allegedly false statements and omissions in the ROI as the basis of Grange's judicial deception for all of the claims.

Grange contends that the ROI was never attached to Pozuelos's declaration in support of the arrest warrant, so the declaration failed to support probable cause.  If this fact is established at trial, it will change the legal issues underlying Grange's second claim and the nature of the purported judicial deception.  However, the Court questions whether a government investigator

"[G]overnment investigators may be liable for violating the Fourth Amendment when they submit false and material information in a warrant affidavit." Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002) (collecting cases). To bring a judicial deception claim against an investigator, the plaintiff must (1) make a substantial showing that the investigator made deliberately false statements or recklessly disregarded the truth in the affidavit and (2) that the falsifications were material to a finding of probable cause. See id. (citing Hervey v. Estes, 65 F.3d 784, 790 (9th Cir. 1995)); see also Spencer v. City of Spokane, No. 2:19-CV-100-RMP, 2019 WL 6118265, at *4 (E.D. Wash. Nov. 18, 2019), aff'd, 836 F. App'x 516 (9th Cir. 2020) ("To survive summary judgment on a judicial deception claim, the plaintiff must '(1) make a substantial showing of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred.'") (quoting Butler v. Elle, 281 F.3d 1014, 1024 (9th Cir. 2002)).

The first element may be satisfied by either a deliberate omission or affirmative misrepresentation. See Scanlon v. Cnty. of Los Angeles, 92 F.4th 781, 799 (9th Cir. 2024). "Omissions or misstatements resulting from negligence or good faith mistakes, or an officer's erroneous assumptions about the evidence he has received cannot be a basis for a judicial deception claim." Espinoza-Vermillion v. City of Ontario, No. CV 17-350-CBM-SP, 2018 WL 5906901, at *5 (C.D. Cal. Sept. 21, 2018) (quoting Ewing v. City of Stockton, 588 F.3d at 1227) (simplified). "A statement can also be misleading if, although technically true, it has been so wrenched from its context that the

---

can be liable for submitting false and material information when the declaration of the investigating officer contains virtually no information regarding the substantive offense and investigation. This issue was not briefed by the parties. The warrant application may have lacked probable cause, but that does not compel a finding of judicial deception. Failure to attach a supporting affidavit or declaration is negligent, but negligence is not actionable as judicial deception. See Ewing v. City of Stockton, 588 F.3d 1218, 1227 (9th Cir. 2009).

judicial officer will not comprehend how it fits into the larger puzzle." Scanlon, 92 F.4th at 799.

"The court determines the materiality of alleged false statements or omissions." KRL v. Moore, 384 F.3d 1105, 1117 (9th Cir. 2004). "A misrepresentation or omission is material if a court would have declined to issue the order had the defendant been truthful." Id. (quoting David v. Kaulukukui, 38 F.4th 792, 801 (9th Cir. 2022)) (simplified). Government employees are not entitled to qualified immunity on judicial deception claims. Chism v. Washington State, 661 F.3d 380, 393 (9th Cir. 2011).

Pozuelos argues that there is no evidence establishing she was deliberate or reckless in her alleged omissions or misstatements, as opposed to merely negligent. Mem. at 16. She also contends that if her allegedly false statements or omissions were removed from the declarations and ROI submitted to Judge Bilash, probable cause still existed to arrest Grange. Id. at 17–18.

Grange argues that Pozuelos made a series of material misrepresentations and omissions in her declarations and ROI submitted in support of the judge's orders. Opp'n at 11.

### 1.    False Statements and Omissions

First, Grange argues that the claim forms submitted to insurers accurately represent the services provided to each patient. AMF ¶6.[2]

---

[2] Pozuelos objects to paragraph 16 of Brownlow's declaration on the ground that it lacks foundation and constitutes speculation and inadmissible opinion testimony as to whether a claim form using billing code A0434 represents to a medical insurer that a patient has been transported. She also objects to the relevance of the paragraph as to the existence of probable cause or judicial deception. Dkt. 66 (Def. Evid. Obj.) 2; Fed. R. Evid. 401, 402, 602, 701.

"[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative . . . are all duplicative of the summary judgment standard itself." Burch v. Regents of Univ. of California, 433 F. Supp. 2d

None of the claim forms for the allegedly fraudulent ground transports included a mileage code, and some included the same pick-up and drop off address.  Id.  In light of this, Grange argues, there is a material dispute as to whether Pozuelos's statement that "the ground transports that were billed, (sic) did not occur" is a material misrepresentation.  Id. ¶11.  This statement appeared in her ROI and declarations submitted in support of the requested orders.  Id.

Grange also argues that the allegedly fraudulent air transport claims were accurate.  Symons personnel treated patients mid-air on helicopters, and provided emergency medical care and equipment for the air ambulance transports identified by Pozuelos.  Id. ¶¶ 12–13.  For the purposes of billing for air ambulance transports, owning or leasing the helicopter is not required.  Id. ¶14.[3]  Representatives from health insurance companies explained to Pozuelos that the billing code used for air ambulance transports does not imply lease or ownership.  Id.  In light of this, there is a material issue as to whether Pozuelos's statement in her ROI that "Symons is also billing for air ambulance services however they did not provide the service[,]" is a

---

1110, 1119 (E.D. Cal. 2006).  "A court . . . cannot rely on irrelevant facts, and thus relevance objections are redundant."  Id.

Where the Court relies on evidence, it has determined that the evidence is relevant.

Brownlow's declaration does not lack foundation.  Brownlow is a certified ambulance coder and oversaw claims for reimbursements by Symons as a billing manager.  Dkt. 59 (Brownlow Decl.) ¶4.  Brownlow's testimony regarding what was on the claim forms Symons submitted is rationally based on Brownlow's perception and personal knowledge.  Fed. R. Evid. 602, 701.  However, to the extent the meaning of ambulance codes is disputed, the Court makes no ruling on whether Brownlow is a qualified expert witness.

[3] Pozuelos objects to other portions of Brownlow's declaration for the same reasons that she objects to paragraph 16.  See fn. 1.  For the same reasons, Pozuelos's objections to the rest of the cited portions of Brownlow's declaration are OVERRULED.

misrepresentation.  Id. ¶15.  This statement was repeated in her
declarations submitted in support of the requested orders.  Id.

Second, Grange argues that Pozuelos did not adequately explain
to Judge Bilash that Symons relied on a staff of health care coders to
code and submit bills to insurers.  Id. ¶18.  Grange did not personally
submit bills, instruct staff on which code to use, or decide which claims
should be submitted to insurers.  Id.  There is a material dispute,
Grange argues, as to whether Pozuelos conflated Grange and Symons
in the temporary restraining order and bail application, stating that
Grange billed for the transportation costs when Symons was
responsible.  Opp'n 24–25; AMF ¶¶19, 21.

Third, Grange argues that Pozuelos misrepresented the
statements of witnesses.  For example, Pozuelos purportedly
misrepresented an interview with a third-party administrator for
Kaiser.  Pozuelos stated in her Report of Investigation that the
representative "stated that had [Kaiser] known Symons did not provide
the transports billed in the claims submitted [Kaiser] would not have
paid the claims."  Id. ¶22.  In actuality, the interviewee stated that
Kaiser may pay the bill and often pays "treat no transport" bills.  Id.

Fourth, Pozuelos allegedly omitted exculpatory information.
Grange claims that Pozuelos did not discover any evidence of Grange's
intent to deceive an insurer during her investigation.  Id. ¶25.[4]  This
was omitted from the report.  In addition, Pozuelos was actively
monitoring Grange's civil trial and in contact with the lawyers bringing

---

[4] Defendants object to Exhibit 24 on the ground that it is irrelevant, has not
been properly authenticated, is hearsay as to which no exception applies and
is inadmissible opinion testimony.  Def. Evid. Objs. at 11; see also Fed. R.
Evid. 401, 402, 901, 801, 802, 701.  The cited portions of the trial testimony
are directly relevant to whether the billing code used for the air ambulance
was misleading.  This is relevant to whether there was probable cause to
arrest Grange for fraud.  There is no hearsay issue because the exhibit is
used to prove that Pozuelos did not include potentially exculpatory
information, not the truth of the matter asserted.

the *qui tam* action.  Dkt. 53-1 (SGD) ¶7.  Exculpatory evidence from testimony in the *qui tam* trial was omitted from Pozuelos's statements in support of Judge Bilash's orders.  AMF ¶¶32–33, 46.[5]

Pozuelos also allegedly omitted exculpatory evidence from her interview with the former Vice President of Operations for the Baja 500.  SGD ¶17.  Pozuelos did not disclose that Grange was given permission by the Vice President to bill for air transport.  Id.

Grange argues that he has made a substantial showing that Pozuelos acted deliberately or recklessly.  Opp'n at 24–25.

Pozuelos contends that her statements that Symons billed for services it did not provide are not misleading, because they are not false.  Reply at 6.  However, Grange has made a substantial showing that there was nothing false or misleading about the ground and air claims submitted.  Dkt. 59 (Brownlow Decl.) ¶¶16, 20, 21.  The parties dispute whether the claims submitted by Symons implied ground transportation that did not occur or an ownership interest in the helicopter used, and Pozuelos's knowledge of such.  This is a disputed issue of fact.  Pozuelos concedes that her state of mind is also a factual issue.  Reply at 18.  A reasonable juror could conclude based on the evidence that Pozuelos recklessly or deliberately misled Judge Bilash as to the accuracy of the claims forms.

The Court also finds that these allegedly false statements were material.  The gravamen of Grange's alleged fraud was that Symons was billing for transportation services it did not provide.  If Symons was accurately billing insurers, and Judge Bilash knew this, he would

---

[5] Defendants object to Exhibit 40 on the ground that it is irrelevant, has not been properly authenticated, is hearsay as to which no exception applies and is inadmissible expert opinion testimony.  Def. Evid. Objs. at 11; Fed. R. Evid. 401, 402, 901, 801, 802, 702.  The cited portions of the trial testimony are directly relevant to whether the billing code used for the air ambulance was misleading.  There is no hearsay issue because the exhibit is used to prove judicial deception because Pozuelos did not include potentially exculpatory information, not the truth of the matter asserted.

not have issued the orders, because the central theory of the fraud would not be viable.

Next, the Court considers whether it was deliberately or recklessly misleading to conflate Grange and Symons in the bail application. Pozuelos argues that emails obtained from Symons showed Grange was directly involved in the billing process, and although the insurers' payments on purportedly fraudulent claims were initially deposited into Symons' bank accounts, they were then transferred to Grange's bank accounts and to his property acquisitions. SUF ¶¶22, 28.[6]

---

[6] Grange objects to the evidence underlying paragraph 22 of Pozuelos's statement of undisputed facts because the Declaration of Lori Pozuelos at paragraph 22 lacks foundation, authentication, and personal knowledge. Dkt. 53-2 (Grange Evid. Obj.) 7. The statement further includes inadmissible hearsay for which no exception applies. Fed. R. Evid. 801, 802. He objects to Exhibit Tab 26 on the grounds that the emails produced in the exhibit lack foundation and are not authenticated. Fed. R. Evid. 901.

Pozuelos's declaration and the emails at Exhibit 26 are not being used to establish the truth of the matter asserted. Fed. R. Evid. 801, 802. They are relied on to show that there was probable cause to arrest Grange and to show Pozuelos's state of mind. These are non-hearsay purposes. Pozuelos's declaration stating that these emails were obtained pursuant to a search warrant provides adequate authentication and foundation for purposes of summary judgment.

Grange also objects "to the use of his own deposition transcript on the grounds that the statement is irrelevant to Separate Statement Paragraph 22 as the testimony does not relate to what is alleged in that paragraph and it misstates Plaintiff Grange's testimony." Grange Evid. Objs. at 7. The portion of the transcript cited relates to Grange's direct involvement with and supervision of billing for helicopter transport. It is relevant to Pozuelos's claim that Grange was personally involved with billing medical insurers.

Grange also objects to the evidence underlying paragraph 28 of Pozuelos's statement of undisputed facts because "the Declaration of Lori Pozuelos at Paragraph 28, Lines 1-7 lacks foundation and contains inadmissible hearsay

However, the emails submitted by Pozuelos to prove this do not
show Grange involved in the submission of claim forms at the granular
level. Dkt. 51-17. There is no evidence that Grange directed staff as to
what codes to use or how to represent claims. The Court finds that if
Judge Bilash had known that Grange was not selecting the billing
codes and had a minimal role in submitting the claim forms that were
the basis of the purported fraud, there would not have been probable
cause to issue the orders. Grange's involvement in the submission of
the claim forms, which is the basis of the fraud charge, and Pozuelos's
knowledge of that presents a triable issue of fact.

The Court has reviewed the underlying documents regarding the
interview of John Martella, a representative of Ascension Insurance, a
third-party administrator for Kaiser. Grange has not raised a triable
issue of fact that Pozuelos misrepresented her interview with Martella.
The statement in the Report of Investigation that "had [Kaiser] known
Symons did not provide the transports billed in the claims submitted
[Kaiser] would not have paid the claims" is an accurate, or at worst
negligent, summary of the Martella Interview Report. AMF 22; dkt.
55-18 (Martella Int. Rep.). Martella said that the claims submitted by
Symons should not be billed with an ambulance transport code when a
patient is treated on site. Martella Int. Rep. at 2. Additionally,
Martella's statement in an email that he does not know how the claims
at issue should have been billed is not inconsistent with the Report of

---

not within an exception." Grange Evid. Objs. at 8; see also Fed. R. Evid. 901,
801, 802. Grange also objects to Sealed Exhibit Tab 29 "on the grounds that
the exhibit lacks foundation and was not properly authenticated." Fed. R.
Evid. 901.

Pozuelos states in her declaration that Sealed Exhibit Tab 29 is a true and
correct copy of the audit report that was prepared as part of the
investigation. This exhibit and the relevant portions of Pozuelos's
investigation are not relied on to prove the truth of the matter asserted, Fed.
R. Evid. 801, 802, but rather to establish probable cause to arrest Grange and
to prove Pozuelos's state of mind.

Grange's objections are OVERRULED.

Investigation.  Dkt. 52-10 (ROI) 8.  Even if it had been included in the
Report of Investigation that Kaiser paid "treat no transport" bills that
were properly coded and Martella did not know how Symons should
have billed its claims, the Court finds that these statements would not
have changed whether Judge Bilash issued any of his orders, and so are
not material.

Fourth, it is not true that Pozuelos discovered no evidence of
Grange's intent.  The Report of Investigation details a phone call with
Jenelle Lea, Grange's ex-wife, which provides evidence of Grange's
intent.  ROI at 17.  It was not misleading for Pozuelos to omit a legal
conclusion that she was not required to come to from the ROI and
declarations.

Finally, Grange argues that Pozuelos failed to include
exculpatory evidence from the civil trial and interview with the former
vice president of the organization responsible for the Baja 500.  AMF
¶¶32–33, 46; SGD ¶17.  Pozuelos contends that she was not monitoring
the civil trial, the purportedly exculpatory evidence is not exculpatory
at all, and she did not omit information from her interview with the
vice president – it was included in her notes to the district attorney.
Reply at 12, 14, 17.

Grange has produced sufficient evidence to raise a triable issue
as to whether Pozuelos was monitoring the civil trial and breached the
wall between it and the criminal investigation.  Pozuelos admits to
access to deposition transcripts from the *qui tam* matter. Ex.  1
(Pozuelos Tr.) at 26:10-24.  Pozuelos was in close contact with an
attorney at CDI handling Grange's civil case.  He provided Pozuelos
with excerpts from trial proceedings.  Dkts. 55-5–13 (Exs. 5–13).
Pozuelos contends that this information is not exculpatory because the
trial testimony concerned whether Symons' patient care records are
false, not whether the billing codes used were fraudulent.  Reply at 15.
However, the transcripts and trial testimony contained evidence that
the billing code used for the helicopter transport was not
misrepresentative.  AMF ¶¶ 32, 33.

15

Pozuelos contends that this evidence is not exculpatory because "the absence of any specific rules or regulations concerning the ownership or leasing of helicopters" does not vindicate Grange. Reply at 15. However, as explained above, it is material whether the billing code used was a misrepresentation. Whether Pozuelos had access to exculpatory evidence that the billing codes used for the air transport were in fact, not fraudulent, is a disputed issue of material fact.

Grange has not made a substantial showing that Pozuelos deliberately omitted material information regarding his interview with the vice president of operations for the Baja 500 organization. Grange has also not raised a triable issue as to whether Pozuelos provided this information to the district attorney. Pozuelos Decl. ¶53.

Pozuelos's Motion for Summary Judgment on Grange' Second, Third, and Fourth Claims is DENIED.

## B.    Fabrication of Evidence and Deliberate Withholding of Information

To make out a deliberate fabrication of evidence claim, Grange must point to evidence that Pozuelos (1) continued her investigation of Grange despite the fact that she knew or should have known that he was innocent; or (2) she used investigative techniques that were so coercive and abusive that she knew or should have known that those techniques would yield false information. See Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001). If there is "direct evidence that the investigator ha[s] fabricated evidence – for example, direct misquotation of witnesses in investigative reports[,]" then evidence that the investigator knew or should have known that the defendant was innocent is unnecessary. Spencer v. Peters, 857 F.3d 789, 799 (9th Cir. 2017).

Grange contends there is direct evidence that Pozuelos misquoted insurance representatives and fabricated evidence regarding payments to Grange. AMF ¶ 22; SGD ¶¶ 11, 23. As explained above, Grange has not raised a triable issue of fact that Pozuelos misrepresented her interview of Martella. See Section III.A.

Additionally, Pozuelos's summary of her interview with the Aetna representative also does not raise a triable issue of directly fabricated evidence.  In the interview report the representative states that "had Aetna known Symons did not provide the transport Aetna would not have paid the claim."  Dkt. 55-19 (Cote Rep.) 1.  Pozuelos's summary that "Cote stated that had Aetna known Symons did not provide the transports billed in the claims submitted Aetna would not have paid the claims" is not fabricated because that is almost verbatim what the representative said.  Compare ROI at 7 with Cote Rep. 1.

Grange also disputes Pozuelos's statement in the bail hold declaration that Grange received $2 million for fraudulent claims from insurance companies.  Opp'n 28–29.  Grange partially disputes this statement on the grounds that the claims "were not fraudulent but instead accurately represented the services provided."  SGD ¶23.  Under this theory, Pozuelos did not fabricate evidence, she drew the wrong conclusion based on it.  There is no legal support for the notion that a plaintiff may sue an investigator for reaching an improper conclusion under a fabrication of evidence claim.

Grange's statement that Pozuelos "knew or should have known– based on all of the evidence" that Grange was innocent is conclusory and without evidentiary or legal support.  Opp'n at 29.

Pozuelos's Motion for Summary Judgment on the Fifth Claim is GRANTED.

## C.   Malicious Prosecution and Retaliation

To claim malicious prosecution, a plaintiff must show "'that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right.'"  Lacey v. Maricopa Cnty., 693 F.3d 896, 919 (9th Cir. 2012) (quoting Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir.1995)).

Pozuelos has shown that there is no dispute as to malice.  In opposition, Grange cites no affidavits or evidence from which a

reasonable jury could find that Pozuelos acted with malice.  Opp'n 29–30.  Grange argues that because he was arrested the day before he intended to testify and the attorney in the *qui tam* matter allegedly tried to leverage dismissal of the criminal case to settle the civil matter, Pozuelos's improper motive may be inferred.  However, Grange has articulated no reason that Pozuelos would be motivated to settle the *qui tam* matter.  There is no evidence that Pozuelos was privy to this alleged offer or would have had the power to dismiss a criminal case had the offer been accepted.  Grange has not cited any evidence that Pozuelos acted with malice or the purpose of denying him a specific constitutional right.

Similarly, to prove his retaliation claim, Grange must show that Pozuelos's retaliatory animus was the cause of his injury.  Lacey, 693 F.3d at 917.  Grange cites no evidence in support of this element in his opposition.  Opp'n 30–31.  Instead, Grange offers a conclusory account of a conspiracy to prevent him from testifying in a civil matter.  But there is no evidence that allows the reasonable inference that Pozuelos had a motive to prevent Grange from testifying in his *qui tam* matter or had a retaliatory motive against Grange.

Pozuelos's Motion for Summary Judgment on the Sixth and Seventh Claim is GRANTED.

## D.     Punitive Damages

To allow a jury to assess punitive damages, Grange must show that Pozuelos's conduct was "motivated by evil motive or intent" or involved "reckless or callous indifference" to Grange's federally protected rights.  Smith v. Wade, 461 U.S. 30, 56 (1983).  Pozuelos has conceded that her state of mind is a factual issue, and the Court has already concluded that Grange has produced evidence from which a reasonable jury could conclude that Pozuelos acted recklessly with respect to Grange's Fourth Amendment rights.  See Section III.A.  Pozuelos's Motion for Summary Judgment on Punitive Damages is DENIED.

### E.      Unlawful Arrest

Wessely moves for summary judgment on Grange's section 1983 claim for unreasonable seizure of person.  Dkt. 48.  Wessely argues that there is no triable issue as to whether he violated Grange's constitutional rights and he is entitled to qualified immunity.  Id. at 2. He also moves for partial summary judgment on the issue of punitive damages, arguing that there is no evidence that he acted with callous disregard or reckless indifference to Grange's constitutional rights.  Id.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  Qualified immunity is an entitlement not to go to trial, not merely a defense from liability.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  It should be decided early in the proceedings.  Id.  Analysis of the qualified immunity defense is a two-prong inquiry.  The court asks whether, on the facts alleged, a constitutional right has been violated. If no such right has been violated, the plaintiff cannot prevail.  Id. at 200-01.

The court must also consider whether that right was "clearly established."  "Clearly established" means the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 201 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 201.  A "case on all fours" is not required, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'"  Rico v. Ducart, 980 F.3d 1292, 1298 (9th Cir. 2020) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).

A plaintiff bears the initial burden of proving that the rights allegedly violated by defendants were clearly established at the time of

the alleged misconduct. <u>Davis v. Scherer</u>, 468 U.S. 183, 197 (1984); <u>Houghton v. South</u>, 965 F.2d 1532, 1534 (9th Cir. 1992). If the plaintiff meets this burden, then the burden shifts to the defendant to establish his actions were reasonable, even if they violated the plaintiff's rights. <u>Doe v. Petaluma City Sch. Dist.</u>, 54 F.3d 1447, 1450 (9th Cir. 1995).

"[T]he proper fact-specific inquiry under <u>Anderson</u> is not whether the law is settled, but whether, in light of clearly established law and the information available to him, a reasonable person in [the defendant's] position could have objectively believed his actions to be proper." <u>Floyd v. Laws</u>, 929 F.2d 1390, 1394 (9th Cir. 1991) (citing <u>Anderson</u>, 483 U.S. at 641). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." <u>Rico</u>, 980 F.3d at 1298 (quoting <u>D.C. v. Wesby</u>, 583 U.S. 48, 61 (2018)).

The Court first analyzes the second prong of the qualified immunity inquiry – whether it was clearly established that the behavior at issue was unconstitutional. <u>Pearson</u>, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

It was clearly established at the time of Grange's arrest that a warrantless arrest violates the Fourth Amendment unless "the officer has probable cause to believe that the suspect committed a crime in the officer's presence." <u>Wesby</u>, 138 S. Ct. 577, 586 (2018).

Wessely does not argue that Grange committed a crime in his presence, so Wessely needed a warrant to arrest Grange. However, Wessely argues that Grange has not raised a triable issue as to whether the warrant was issued <u>after</u> Grange's arrest. Dkt. 48-1 (Mem.) 13–15. He also contends that even if the warrant were issued after Grange's arrest, he is entitled to qualified immunity because he was following the orders of a supervising officer. <u>Id.</u> at 15–16.

"The officers who lead the team that executes a warrant are responsible for . . . making sure that they have a proper warrant that in

fact authorizes the search and seizure they are about to conduct." Ramirez v. Butte-Silver Bow Cnty., 298 F.3d 1022, 1027 (9th Cir. 2002).   The commanding officer is responsible for reading the warrant. Id.

"Line officers, on the other hand, are required to do much less. They do not have to actually read or even see the warrant; they may accept the word of their superiors that they have a warrant and that it is valid." Id at 1028 (citing Guerra v. Sutton, 783 F.2d 1371, 1375 (9th Cir. 1986)).   However, line officers have a "duty to inquire as to the nature and scope of the warrant" and must have knowledge of the warrant's details.  Guerra, 783 F.2d at 1375.

It is undisputed that Wessely's supervising officer told him that a judge of the superior court had signed the warrant for the arrest of Grange.  Dkt. 54-1 (SGD II) ¶19.  Wessely was told to arrest Grange on sight.  Id.  Wessely approached Grange shortly after and told him there was a warrant for his arrest.  Id. ¶20; AMF II ¶6.  Wessely had no reason to believe that his supervising officer lied to him.  Wessely maintains that if he had not been told that there was a warrant for Grange's arrest, he would not have arrested Grange.  Id at ¶21.

There is evidence that midway through the arrest, Wessely's commanding officer said: "The judge is in the middle of signing it right now."  SGD II at ¶23; AMF II at ¶16.  The parties dispute whether this statement refers to the warrant or other orders being signed by the judge.  But even assuming that this statement concerned the warrant, Wessely is entitled to qualified immunity.  At the time that he engaged Grange, Wessely was reasonably following the orders of his supervising officer.  Wessely also properly understood the scope of the warrant, which was for Grange's arrest, and had no duty to inquire further.

Grange cites no cases for the proposition that a line officer has a legal duty to disengage mid-arrest on receiving evidence that a warrant may be deficient or lacking.  A rule requiring line officers to second-guess their supervisor's assessment of a warrant mid-arrest puts an undue burden on them and risks the safety of their colleagues.  The

constitutional sufficiency of a warrant is the commanding officer's responsibility.  Because there was no clearly established law requiring Wessely to discontinue the arrest, he is entitled to qualified immunity.

Wessely's motion for summary judgment is GRANTED.

## IV. Conclusion

Pozuelos's motion is GRANTED in part and DENIED in part. Wessely's motion is GRANTED.

IT IS SO ORDERED.

Date: June 24, 2024

Dale S. Fischer
United States District Judge